# EXHIBIT 2

EFiled:  May 19 2020 10:32AM EDT
Transaction ID 65644538
Case No. 2020-0380-

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

MANHATTAN TELECOMMUNICATIONS
CORP., D/B/A METROPOLITAN
TELECOMMUNICATIONS, A/K/A
METTEL,

        Plaintiff,

  v.

GRANITE TELECOMMUNICATIONS, LLC,

      Defendant.

C.A. No.

## PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER

Plaintiff Manhattan Telecommunications Corp., d/b/a Metropolitan Telecommunications, a/k/a MetTel ("MetTel" or "Plaintiff") respectfully moves this Court for an Order:

1.    Preliminarily enjoining Granite from making any statements about MetTel or its business operations to any current MetTel client; and

2.    Preliminarily and permanently enjoining Granite from making any false or misleading statements about MetTel or its business operations.

The complete grounds for this Motion are set forth in the Opening Brief in support of Plaintiff's Motion for a Temporary Restraining Order and Motion to Expedite filed concurrently with this Motion, as well as in the Plaintiff's Verified Complaint.

Dated: May 19, 2020                    **K&L GATES LLP**

/s/ *Steven L. Caponi*
Steven L. Caponi (No. 3484)
Matthew B. Goeller (No. 6283)
600 King Street, Suite 901
Wilmington, DE 19801
Phone: (302) 416-7000
steven.caponi@klgates.com
matthew.goeller@klgates.com

*Counsel for Plaintiff Manhattan
Telecommunications Corp.*

Words: 98

EFiled:  May 19 2020 10:32AM EDT
Transaction ID 65644538
Case No. 2020-0380-

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

MANHATTAN TELECOMMUNICATIONS
CORP., D/B/A METROPOLITAN
TELECOMMUNICATIONS, A/K/A
METTEL,

     Plaintiff,

    v.

GRANITE TELECOMMUNICATIONS, LLC,

    Defendant.

C.A. No.

## PLAINTIFF'S MOTION TO EXPEDITE

Plaintiff Manhattan Telecommunications Corp., d/b/a Metropolitan Telecommunications, a/k/a MetTel ("MetTel" or "Plaintiff") respectfully moves this Court for an Order: (1) shortening the time to answer the Verified Complaint; (2) scheduling a hearing for resolution of the issues raised in this motion, at the earliest time available to the Court; and (3) ordering expedited discovery relating to the issues raised in this motion.

The complete grounds for this Motion are set forth in the Opening Brief in Support of Plaintiff's Motion for a Temporary Restraining Order and Motion to Expedite filed concurrently with this Motion, as well as in the Plaintiff's Verified Complaint.

Dated: May 19, 2020               **K&L GATES LLP**

_/s/ Steven L. Caponi_
Steven L. Caponi (No. 3484)
Matthew B. Goeller (No. 6283)
600 King Street, Suite 901
Wilmington, DE 19801
Phone: (302) 416-7000
steven.caponi@klgates.com
matthew.goeller@klgates.com

_Counsel for Plaintiff Manhattan
Telecommunications Corp._

Words: 102

2

EFiled:  May 27 2020 04:52PM EDT
Transaction ID 65660589
Case No. 2020-0380-JRS

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

MANHATTAN TELECOMMUNICATIONS
CORP., D/B/A METROPOLITAN
TELECOMMUNICATIONS, A/K/A
METTEL,

        Plaintiff,

   v.

GRANITE TELECOMMUNICATIONS, LLC,

    Defendant.

C.A. No.

███████████████

**PUBLIC VERSION
FILED MAY 27, 2020**

---

## OPENING BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND MOTION TO EXPEDITE

**K&L GATES LLP**
Steven L. Caponi (No. 3484)
Matthew B. Goeller (No. 6283)
600 King Street, Suite 901
Wilmington, DE 19801
Phone: (302) 416-7000
steve.caponi@klgates.com
matthew.goeller@klgates.com

*Counsel for Plaintiff Manhattan
Telecommunications Corp.*

Dated: May 19, 2020

# **TABLE OF CONTENTS**

**Page(s)**

I.  INTRODUCTION ................................................................. 1

II.  FACTUAL BACKGROUND................................................. 2

    A.  MetTel and Granite ................................................. 2

    B.  The COVID-19 Pandemic ...................................... 3

    C.  Granite's Ongoing Campaign of Lies.................... 4

    D.  The Harm to MetTel............................................... 8

III.  ARGUMENT..................................................................... 9

    A.  Legal Standards ..................................................... 9

    B.  MetTel Has Asserted Colorable Claims............... 11

        1.  Defamation................................................ 11

        2.  Tortious Interference with Prospective Economic Advantage ................................................ 12

        3.  Tortious Interference with Contractual Relations.................. 13

        4.  Trade Libel................................................ 14

        5.  Deceptive Trade Practices........................ 15

    C.  MetTel Is Suffering and Will Continue to Suffer Irreparable Harm............................................................ 17

    D.  The Balance of Equities Favors an Injunction .................... 20

    E.  The Court Should Grant Expedition ..................... 21

IV.  CONCLUSION.................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allen v. News Corp.*,
   2005 WL 415095 (Del. Ch. Feb. 3, 2005) ...................................................10, 21

*Arkema Inc. v. Dow Chem. Co.*,
   2010 WL 2334386 (Del. Ch. May 25, 2010)....................................................9

*Bancroft Life & Cas. ICC, Ltd. v. Intercontinental Mgmt. Ltd.*,
   456 F. App'x 184 (3d cir. 2012) ..........................................................19

*Box v. Box*,
   697 A.2d 395 (Del. 1997) ................................................................10

*CapStack Nashville 3 LLC v. MACC Venture Partners*,
   2018 WL 3949274 (Del. Ch. Aug. 16, 2018) ...................................................20

*Dieleuterio v. Pennell*,
   1985 WL 4567 (Del. Ch. Dec. 13, 1985)........................................................17

*Horizon Pers. Commc'ns, Inc. v. Sprint Corp.*,
   WL 2337592 (Del. Ch. Augu. 4, 2006) ............................................................18

*IMO Daniel Kloiber Dynasty Trust*,
   98 A.3d 924 (Del. Ch. 2014) ..............................................................17

*J. C. Pitman & Sons v. Pitman*,
   47 A.2d 721 (1946) ......................................................................18

*Morton v. Am. Mktg. Indus. Holdings, Inc.*,
   1995 WL 1791090 (Del. Ch. Oct. 5, 1995) .......................................................10

*Organovo Holdings, Inc. v. Dimitrov*,
   162 A.3d 102 (Del. Ch. 2017) ........................................................12, 14, 19, 20

*Police & Fire Ret. Sys. of City of Detroit v. Bernal*,
   2009 WL 1873144 (Del. Ch. June 26, 2009).....................................................11

*Preston Hollow Capital LLC v. Nuveen LLC*,
   216 A.3d 1 (Del. Ch. 2019) ........................................................11, 14

*Renco Grp., Inc. v. MacAndrews AMG Holdings*,
   2013 WL 209124 (Del. Ch. Jan. 18, 2013)......................................................10

*T. Rowe Price Recovery Fund, L.P. v. Rubin*,
   770 A.2d 536 (Del. Ch. 2000) ..........................................................................20

*Trilogy Portfolio Co., LLC v. Brookfield Real Estate Fin. Partners, LLC*,
   2012 WL 120201 (Del. Ch. Jan. 30, 2012)..........................................................9

*WaveDivision Holdings, LLC v. Highland Capital Mgmt., L.P.*,
   49 A.3d 1168 (Del. 2012) ..................................................................................13

## Statutes

6 *Del. C.* § 2531 *et seq.* ........................................................................15, 16, 17, 18

## I.    INTRODUCTION

During these unprecedented times, when Americans are being exhorted to join together, to use their resources to help one another and defeat a common enemy, Defendant Granite Telecommunications, LLC ("Granite") has taken the lowest of roads.  It is taking advantage of the legitimate fear and uncertainty gripping the nation by using an ongoing campaign to spread *even more—but completely false—fear and uncertainty* about a competitor, Plaintiff Manhattan Telecommunications Corp., d/b/a Metropolitan Telecommunications, a/k/a MetTel ("MetTel").  Granite has orchestrated this campaign in order to steal MetTel's current and potential clients and thereby increase its own profits.

MetTel has discovered that Granite has undertaken a coordinated effort, which appears to stretch from entry level sales personnel all the way to the CEO, to contact current and potential MetTel clients and tell them that MetTel ████████████ ████████████████████████████  These statements are completely false without any basis in fact, and Granite either knows they are false or is recklessly indifferent to whether they are true or false.  Granite is making these false statements to sow doubt with MetTel's existing and potential clients about ██████  ███  ████  ████████  and generate fear of losing essential telecommunications services in the near future.

Granite's conduct is even more despicable because many of MetTel's clients ████████████████████████  ████████████████████████████.

are in healthcare, public service, public safety, and federal, state and local governments.  MetTel provides essential services for its clients—a service all the more essential under the current circumstances, when the majority of employees in the U.S. who are able to do so are working solely by telecommuting, and telecommunications is the only practical way to remain connected to patients, customers, and the public.  Even more so during these times, clients need to know that ███████████████████████████████████████████████████████ ███████████████████████████████████████ False word of ███████████████████████████████████ is the kind of rumor that will spread throughout the market and poison MetTel's prospects, particularly among those for whom an interruption in telecommunications services would be the most devastating at this time: healthcare and government operations on the front lines of the pandemic.

Without this Court's immediate intervention, there is a high probability that Granite's malicious campaign will succeed, and MetTel's business and its reputation will be irreparably damaged.

## II.   FACTUAL BACKGROUND

### A.   MetTel and Granite

Plaintiff MetTel is a privately-held corporation organized under the laws of Delaware, with its principal place of business in New York, New York.  Defendant

████████████████████████████████
███████████████████████████████████████.

Granite is a limited liability company organized under the laws of Delaware, with its principal place of business in Quincy, Massachusetts.

MetTel provides customized, integrated and managed communications solutions for enterprise clients.   By converging all communications over a proprietary network, MetTel enables clients to deploy and manage technology-driven voice, data, wireless, and cloud solutions globally.  Its MetTel Portal® enables clients to manage their inventory, usage, spend, and repairs from one simple, user-friendly interface.  Granite describes itself as one of the premier telecommunications solutions providers for businesses across the United States and Canada, and the leading corporate phone service provider to multi-location companies.

MetTel has spent more than twenty years building a reputation for reliability among its clients and in the marketplace.  Reliability is a critical characteristic for telecommunications companies.  One key to reliability is the ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ That, in turn, makes the ▮▮▮▮▮▮▮▮▮▮▮▮ critically important to its clients.

### B.    The COVID-19 Pandemic

The global crisis caused by the COVID-19 pandemic is without parallel since the Spanish Flu pandemic of a century ago.  To date, approximately 1.5 million people in the United States have contracted the virus and approximately 90,000 have

died.  Of those numbers, approximately 153,000 nursing home residents and workers have been infected and approximately 28,100 have died.

The COVID-19 pandemic has had a devastating economic impact as well. The U.S. economy suffered its most severe contraction in more than a decade in the first quarter of the year.  To date, more than 36 million American workers have filed for unemployment benefits since the pandemic took hold and the national unemployment rate is nearly 15 percent.  The Dow Jones Industrial Average is down approximately 17% year to date.

COVID-19 has also caused unprecedented disruptions in the daily lives of all Americans, resulting in major changes in behavioral patterns with the usual day-to-day functioning being put on hold for an indefinite period.  Not surprisingly, experts have reported a significant increase in depression, post-traumatic stress disorder, substance abuse, domestic violence, and child abuse.

It is this grim reality that Granite saw as a shameful opportunity to enrich itself by capitalizing on the public's fears.  Not content to simply capitalize on the public's existing, well-founded fears, Granite took an even lower step by generating *new* fears with misinformation about MetTel.

C.    **Granite's Ongoing Campaign of Lies**

Granite has begun telling MetTel's current and potential clients—falsely—

████████████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████ .

███   The purpose of the campaign is to convince MetTel's clients and potential clients that MetTel is a decidedly unreliable telecom provider that will likely leave them without essential services when they are needed most.

Granite has executed this ongoing campaign via e-mails, voice mail messages, and telephone conversations with MetTel clients for the specific purpose of damaging MetTel's business and harming its reputation.

In late April 2020, MetTel learned for the first time that Granite might be spreading false information about MetTel. MetTel received an email from one of its clients that was concerned and confused about a voice mail it had received on April 24, 2020, from a client relations professional at Granite. The caller indicated that he had some unsettling information about MetTel that he would share when the client returned the call. ████████████████████████████

████████████████████████████████████████████

████████████████████████ *See* Compl. Ex. A.

On May 12, 2020, MetTel learned that Granite had contacted another MetTel client, this one an operator of assisted living and memory care retirement communities. The client forwarded to MetTel an email by the Senior Director of Healthcare at Granite, who was attempting to schedule a call between Granite's Chief Executive Officer and the Chairman of the Board and CEO of the client. In a follow-up email of the same date explaining the purpose for the call, the Senior

████████████████████████████

████████████████████████████████████████.

Director made it clear that Granite wanted to take the client's business away from MetTel.  As a rationale for why the client would be interested in leaving MetTel and taking its business to Granite, he said that ███████████████████████ ███████████████████████████████████ *See* Compl. Ex. B.   The client was understandably confused and concerned about this information and sought reassurances from MetTel.

These statements were blatantly false.  MetTel is not ███████████ ████████████████████████████████████████ ███████████████ ████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ███████████ Granite was spreading harmful "facts" about MetTel with a gross indifference to whether those "facts" were true or false.  Obviously, the truth or falsity of these statements did not matter to Granite because the statements benefitted Granite.

6

The Chief Information Officer of the same client that was contacted on May 11, 2020, informed MetTel that around the same time as the Granite Senior Director's email, Granite personnel called the client's CEO's assistant with the message that MetTel was ███████████████. *See* Compl. Ex. C. The client's CIO reported that the CEO was *very* concerned by this information and that the news had spread very quickly within the client's organization. *Id.*

Again, this information was false. ████████████████████. And Granite was not privy to any valid information that would have allowed it to reach that conclusion legitimately.

Finally, in his May 11, 2020, email, the Granite Senior Director stated that Granite had made presentations to some of MetTel's other clients, all of whom were in the healthcare field. Upon information and belief, Granite made the same misrepresentations about MetTel's ███████████ to those clients.

One of these clients has not returned MetTel's calls and has rejected efforts to set up a meeting with MetTel since being contacted by Granite. MetTel has concluded that it most likely lost that client's future business due to Granite's campaign.

Granite's campaign of misinformation against MetTel cannot be excused as the actions of one or two rogue employees. The Granite Senior Director was attempting to set up a call between the client's CEO *and the CEO of Granite*. Thus,

███████████████████████████
███████████████████████████████.

the campaign apparently is being orchestrated with the knowledge, approval, and participation of the highest level executives at Granite.

### D.     The Harm to MetTel

MetTel believes that Granite personnel have contacted many, if not all, of MetTel's other current clients, as well as its prospective clients, and disseminated the same or similar false, misleading, and defamatory statements about MetTel.  This belief is based on the fact that: (i) MetTel has received these reports from two different clients, who have no relationship to one another; (ii) one of the emails from Granite reveals that it has met with several MetTel customers; (iii) the apparent involvement of Granite's CEO indicates that this was not a one-off incident; and (iv) the messages to MetTel's clients involved different Granite personnel in different geographic regions.

Given the critical nature of telecommunications services, once a doubt has been raised about a provider's reliability, a client would be duty-bound to investigate; it could not ignore an assertion of risk to its critical infrastructure.  Once that seed has been planted, the client will undertake a critical look at a provider with which it had been perfectly happy.  The client may terminate the contract based on a pretext when the termination is actually caused by unresolved doubts about ██

████████████

████████████ means that there is a real risk that MetTel will be asked to bid on fewer and fewer contracts going forward as Granite's lies circulate throughout the marketplace. Thus, the irreparable harm to MetTel's reputation and business will continue, most likely increasing substantially, if Granite is not brought to task and ordered to terminate its campaign immediately. Moreover, MetTel's reputation and goodwill in the industry has already been harmed. It appears likely that it has already lost clients or potential clients. Granite must be held liable to compensate MetTel for these losses.

## III.   ARGUMENT

### A.   Legal Standards

"A TRO is a special remedy of short duration designed primarily to prevent imminent irreparable injury pending a preliminary injunction or final resolution of a matter." *Trilogy Portfolio Co., LLC v. Brookfield Real Estate Fin. Partners, LLC*, 2012 WL 120201, at *4 (Del. Ch. Jan. 30, 2012). To obtain a Temporary Restraining Order, the applicant need only demonstrate: (1) a colorable claim on the merits; (2) a threat of irreparable harm if relief is not granted; and (3) a balance of the hardships that favors the applicant. *Arkema Inc. v. Dow Chem. Co*., 2010 WL 2334386, at *3 (Del. Ch. May 25, 2010) (citation omitted).

In addition, this Court has broad power to expedite proceedings. Delaware courts are "always receptive to expediting any type of litigation in the interests of affording justice to the parties." *Box v. Box*, 697 A.2d 395, 399 (Del. 1997). The threshold for obtaining expedited proceedings is low—plaintiffs seeking expedited proceedings need only show that their claims are "sufficiently colorable" and that "there is the possibility of a threatened irreparable injury." *Allen v. News Corp.*, 2005 WL 415095, at *1 (Del. Ch. Feb. 3, 2005). Whether that showing is met is assessed on the face of the pleadings—when considering whether to grant expedition, the Court does not judge the merits of the case or "even the legal sufficiency of the pleadings." *Morton v. Am. Mktg. Indus. Holdings, Inc.*, 1995 WL 1791090, at *2 (Del. Ch. Oct. 5, 1995).

As this Court has instructed, "[t]he burden on a plaintiff in seeking an expedited proceeding is not high. 'A party's request to schedule an application for a preliminary injunction, and to expedite the discovery related thereto, is normally routinely granted. Exceptions to that norm are rare.'" *Renco Grp., Inc. v. MacAndrews AMG Holdings*, 2013 WL 209124, at *1 (Del. Ch. Jan. 18, 2013) (quoting *In re Ness Technologies, Inc.*, 2011 WL 3444573, at *2 (Del. Ch. Aug. 3, 2011)).

The Court should grant the Motion for a Temporary Restraining Order because MetTel has demonstrated "a sufficiently colorable claim and the possibility

of irreparable harm in the absence of relief." *See Police & Fire Ret. Sys. of City of Detroit v. Bernal*, 2009 WL 1873144, at *1 (Del. Ch. June 26, 2009).  The verified allegations set forth in the Complaint justify the relative expense and inconvenience of expedited proceedings in this action.

### B.   MetTel Has Asserted Colorable Claims

#### 1.   Defamation

MetTel has asserted a valid claim for defamation.  "Defamation is generally understood as 'a false publication calculated to bring one into disrepute.' Ordinarily, the elements of defamation are: (1) defamatory communication; (2) publication; (3) reference to the plaintiff; (4) third party's understanding of the communication's defamatory character; and (5) injury." *Preston Hollow Capital LLC v. Nuveen LLC*, 216 A.3d 1, 9 (Del. Ch. 2019) (internal citations omitted).  As MetTel explains in its Complaint, Granite published and continues to publish to third persons false and defamatory statements about MetTel.  These third parties have understood the nature of these statements, that they referred to MetTel, and that they were damaging to MetTel's reputation.  These statements also constitute defamation *per se* in that they were and are made with actual malice and contain false and defamatory information about MetTel's business.

As a direct and proximate result of Granite's defamation and defamation *per se*, MetTel has suffered damages, including the loss of future business from current

clients and prospective clients, and irreparable harm to its business reputation and goodwill.  Without judicial intervention, MetTel will continue to suffer such harm in the future.

### 2.    Tortious Interference with Prospective Economic Advantage

MetTel has asserted a valid claim for tortious interference with prospective economic advantage.  To state such a claim, MetTel must plead "(a) the reasonable probability of a business opportunity, (b) the intentional interference by the defendant with that opportunity, (c) proximate causation, and (d) damages." *Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 122 (Del. Ch. 2017).

As explained in the Complaint, Granite's false and misleading statements have interfered with MetTel's prospective economic advantage.  Upon information and belief, one or more clients were prepared to enter into a business relationship with MetTel, but were persuaded not to do so by Granite's dissemination of false information.  The false and misleading statements by Granite interfered with MetTel's prospective economic advantage by also inducing a currently unknown number of prospective clients to not enter into business relationships with MetTel. The number and identities of these additional prospective clients are known only to Granite and will be revealed in discovery.  Granite's actions were intentional and without justification, leveraging a national emergency for personal gain.

### 3.   Tortious Interference with Contractual Relations

MetTel has asserted a valid claim for tortious interference with contractual relations.  To prevail on a claim for tortious interference with contractual relations, MetTel must show that: "(1) there was a contract, (2) about which the particular defendant knew, (3) an intentional act that was a significant factor in causing the breach of contract, (4) the act was without justification, and (5) it caused injury." *WaveDivision Holdings, LLC v. Highland Capital Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012).

MetTel has various existing contractual relations with its customers and clients.  Granite was, and is, aware of these contractual relationships.  MetTel has a reasonable expectation that its business and contractual relationships with its clients will continue.  As described in the Complaint, Granite's intentional interference with MetTel's rights has deprived, and continues to deprive, MetTel of the benefit of its bargains, and impaired the value of its contractual relationships with its clients.  Granite's ongoing campaign to interfere with MetTel's business and contractual relationships with its clients is designed for an improper purpose, uses improper means, and is not legally justified.  Granite's ongoing interference with MetTel's business and contractual relationships has directly and proximately caused, and will in the future directly and proximately cause, significant harm to MetTel.

### 4.     Trade Libel

MetTel has asserted a valid claim for trade libel.  Trade libel is "a libelous statement to consumers that falsely disparages a plaintiff's goods or services." *Preston Hollow Capital LLC*, 216 A.3d at 13.  Plaintiffs are entitled to relief under the concept of trade libel for "any injury to economic advantage arising from false derogatory statements." *Organovo Holdings, Inc.*, 162 A.3d at 120.

As explained in the Complaint, Granite has made, published, and transmitted statements directed to MetTel's *existing* clients that Granite knows are false or were made with reckless disregard for the truth or falsity of the statements, and that were intended to result in harm to MetTel.  And Granite continues to do so.  Upon information and belief, Granite has also made, published, and transmitted statements directed to MetTel's *potential* clients that Granite knows are false, that were made with reckless disregard for the truth or falsity of the statements, and that were intended to result in harm to MetTel.  And Granite continues to do so.

Granite's conduct was undertaken with the specific intent of prejudicing MetTel in the conduct of its business, disparaging its goods and services, and causing it monetary and reputational harm.  Granite does not enjoy any privilege to make false, misleading and/or disparaging statements about MetTel.  As a direct and proximate result of Granite's actions, MetTel has suffered significant harm and will

continue to suffer significant harm in the future, which may not be adequately compensable with monetary damages.

### 5.   Deceptive Trade Practices

MetTel has asserted a valid claim that Granite has violated Delaware's Uniform Deceptive Trade Practices Act.  6 *Del. C.* § 2531 *et seq.*  Under this statute,

> (a) A person engages in a deceptive trade practice when, in the course of a business, vocation, or occupation, that person:
>
> \*   \*   \*
>
> (8)   Disparages the goods, services, or business of another by false or misleading representation of fact;
>
> \*   \*   \*
>
> (12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

6 *Del. C.* § 2532(a).

As explained in the Complaint, Granite and MetTel are in commercial competition in the market for telecommunications solutions.  As part of an ongoing campaign to influence clients to purchase Granite's services, Granite has disparaged MetTel through false and misleading statements in emails, voice mails, and in telephone calls to MetTel's *existing* clients regarding ███████████████

████████████████████████████████████████

█████████████████████████

Upon information and belief, as part of an ongoing campaign to influence clients to purchase Granite's services, Granite has disparaged MetTel through false

and misleading statements in emails, voice mails, and in telephone calls to MetTel's *prospective* clients regarding ███████████████████████████

███████████████████████████████████████████████████

███████████████████████ Granite's false and misleading statements have violated 6 *Del. C.* §§ 2532(a)(8) and (a)(12) by misrepresenting and disparaging MetTel's business operations.

Granite's false and misleading statements have deceived and/or have the tendency to deceive MetTel's clients and potential clients and the public in general regarding the characteristics and qualities of MetTel's services and commercial activities. Granite's false and misleading statements are material because they are likely to influence the decisions of clients and potential clients of MetTel's services, and/or have the tendency to deceive MetTel's clients and potential clients and the public in general regarding the critical issue of ████████████████████ ████████████████████████ Granite's actions have been intentionally and deliberately undertaken for the purposes of causing confusion, mistake and deception and for the purpose of enabling Granite to profit unfairly and at the expense of MetTel. As a direct and proximate result of Granite's actions, MetTel has suffered significant harm to date, including monetary damages, and will continue to cause significant harm in the future.

These allegations present a valid claim for a violation of Delaware's Deceptive Trade Practices Act. Under 6 *Del C.* § 2533(a), "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable." Granite's violation of the Deceptive Trade Practices Act may also result in referral to the Delaware Attorney General. *See* 6 *Del. C.* § 2533(e) ("If a court of competent jurisdiction finds that any person has willfully violated this subchapter, upon petition to the court by the Attorney General in the original complaint or at any time following the court's finding of a willful violation, the person shall forfeit and pay to the State a civil penalty of not more than $10,000 for each violation.").

## C.   MetTel Is Suffering and Will Continue to Suffer Irreparable Harm

Of the three factors necessary for this Court to issue a temporary restraining order, irreparable harm is the most important: "it is the *sine qua non* for this form of relief." *IMO Daniel Kloiber Dynasty Trust*, 98 A.3d 924, 937 (Del. Ch. 2014). "The purpose of a temporary restraining order is to preserve the *status quo* to enable the plaintiff to adequately . . . prepare his case and demonstrate his entitlement to ultimate relief." *Dieleuterio v. Pennell*, 1985 WL 4567, at *2 (Del. Ch. Dec. 13, 1985). "[Courts] usually enjoin the continued publication of a trade libel incident thereto. That is true when the libel is accompanied by some act of unfair business

competition, if irreparable damage is imminent." *J. C. Pitman & Sons v. Pitman*, 47 A.2d 721, 725 (1946).  Injunctive relief is also appropriate and necessary to address Granite's tortious interference and violations of the Deceptive Trade Practices Act. *See Organovo Holdings, Inc.*, 162 A.3d at 122; 6 *Del. C.* § 2533(a) ("A person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable.").

Here, Granite has caused, and, without judicial intervention, will continue to cause imminent and irreparable harm to MetTel's business reputation and its relationship with its customers.  "The loss of control of reputation, loss of trade, and loss of goodwill constitute irreparable injury."  *Horizon Pers. Commc'ns, Inc. v. Sprint Corp.*, 2006 WL 2337592, at *24 (Del. Ch. Aug. 4, 2006).  Injunctive relief is necessary to enjoin Granite from continuing to disparage MetTel's services and cause harm to its business reputation and relations with clients.

As explained throughout the Complaint, MetTel has a reasonable basis to believe that Granite personnel have contacted many, if not all, of MetTel's current clients, as well as its prospective clients, and disseminated false, misleading, and defamatory statements about MetTel's services, impugning its reliability and misrepresenting that ██████████████████████.  MetTel has received reports from at least two different clients, and emails MetTel has obtained

18

reveal that Granite has met with several other MetTel customers. This ongoing campaign appears to have been orchestrated by Granite's top management.

MetTel's reputation and goodwill in the industry have already been harmed. It appears likely that it has already lost clients and potential clients, and that it will continue to lose clients and potential clients in the future if Granite is not stopped. Given the importance of ███████ ███████ █ ██ ██████ ███████ ██ █ ████████████████████████ MetTel risks losing out on contracts going forward as Granite's lies about ███████████████ spread rapidly throughout the marketplace. The irreparable harm to MetTel's reputation and business will continue if Granite is not brought to task and ordered to terminate its campaign immediately.

In addition, Granite's intentional interference with MetTel's contracts has deprived, and continues to deprive, MetTel of the benefit of its bargains, and impaired the value of its contractual relationships with its clients. This misconduct cannot be remedied by monetary damages alone. *See Organovo Holdings, Inc.*, 162 A.3d at 122 ("Courts have recognized that a request for equitable remedies for tortious interference with prospective economic advantage can provide the requisite basis for equitable jurisdiction that can justify a related injunction against future speech."); *see also Bancroft Life & Cas. ICC, Ltd. v. Intercontinental Mgmt. Ltd.*, 456 F. App'x 184, 190 (3d Cir. 2012) (ruling that injunction for tortious interference

was warranted). Granite's ongoing interference with MetTel's business and contractual relationships has directly and proximately caused, and will in the future directly and proximately cause, irreparable harm to MetTel without judicial intervention.

### D.     The Balance of Equities Favors an Injunction

Where the absence of an injunction would cause "substantial, imminent, and irreparable harm" to the movant, and the nonmovant is "not threatened with any harm," the balance of the equities favors the issuance of injunctive relief. *T. Rowe Price Recovery Fund, L.P. v. Rubin*, 770 A.2d 536, 558-59 (Del. Ch. 2000). Delaware courts have noted that speech could be used as a bludgeon to destroy competition without effective redress at law and are "receptive to the idea that such malicious business falsehoods were subject to injunctive restraint, particularly when the statements invoked another tort doctrine as well." *CapStack Nashville 3 LLC v. MACC Venture Partners*, 2018 WL 3949274, at *6 (Del. Ch. Aug. 16, 2018) (citing *Organovo Holdings, Inc.*, 162 A.3d at 120).

The balance of the equities clearly favors MetTel. Through its ongoing efforts to disparage MetTel, Granite continues to impugn MetTel's services and impair MetTel's contractual relationships with customers, clients, and business partners. In that way, Granite's case is not like *CapStack Nashville 3 LLC*, which involved merely lying in an offering memorandum, thereby harming the plaintiffs' pecuniary

interests.  2018 WL 3949274, at *6 (Del. Ch. Aug. 16, 2018).  Here, Granite is directly harming MetTel's services and disrupting MetTel's ongoing contractual relations with its clients.  In contrast, Granite would suffer no harm if the requested injunctive relief is ordered.  A temporary restraining order would not risk restraining free speech, as Granite would being enjoined only from continuing tortious conduct that also violates the Deceptive Trade Practices Act and may result in referral to the Delaware Attorney General.

### E.   The Court Should Grant Expedition

Plaintiffs seeking expedited proceedings need only show that their claims are "sufficiently colorable" and that "there is the possibility of a threatened irreparable injury." *Allen*, 2005 WL 415095, at *1. For all of the same reasons that the Court should grant the requested injunctive relief, MetTel urges this Court to expedite these proceedings.  Expedited proceedings are especially critical in order to determine the full extent of the harm caused by Granite so that MetTel can act quickly to correct and mitigate the damage before MetTel's customers leave MetTel based on Granite's false statements.  In the absence of judicial intervention, MetTel will continue to suffer irreparable injury as a result of Granite's misconduct.

## IV.   CONCLUSION

For the foregoing reasons, MetTel respectfully requests that the Court grant the Motion for a Temporary Restraining Order and Motion to Expedite and enter an order in the proposed form filed with this Motion.

Dated: May 19, 2020

**K&L GATES LLP**

*/s/ Steven L. Caponi*
Steven L. Caponi (No. 3484)
Matthew B. Goeller (No. 6283)
600 King Street, Suite 901
Wilmington, DE 19801
Phone: (302) 416-7000
steve.caponi@klgates.com
matthew.goeller@klgates.com

*Counsel for Plaintiff Manhattan Telecommunications Corp.*

Words: 4,689