# EXHIBIT 3

EFiled: Jun 04 2020 04:46PM EDT
Transaction ID 65677741
Case No. 2020-0380-JRS

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

MANHATTAN TELECOMMUNICATIONS )
CORP. D/B/A METROPOLITAN )
TELECOMMUNICATIONS, )
A/K/A METTEL )
　 )
      Plaintiff, ) C.A. No. 2020-0380-JRS
　 )
  v. ) **PUBLIC VERSION EFILED ON**
　 ) **JUNE 4, 2020**
GRANITE TELECOMMUNICATIONS, LLC )
　 )
      Defendant. )

**DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR
A TEMPORARY RESTRAINING ORDER AND MOTION TO EXPEDITE**

DONNELLY, CONROY &
GELHAAR, LLP
T. Christopher Donnelly (admitted
*pro hac vice*)
Joshua N. Ruby (admitted *pro hac
vice* )
260 Franklin Street, Suite 1600
Boston, MA 02110
(617) 720-2880

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
R. Judson Scaggs, Jr. (#2676)
Barnaby Grzaslewicz (#6037)
A. Gage Whirley (#6707)
1201 N. Market Street
Wilmington, DE 19801
(302) 658-9200


*Counsel for Defendant Granite
Telecommunications, LLC*

May 28, 2020

# **TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT..................................................................1

II.  RELEVANT BACKGROUND ...............................................................4

   A. MetTel's Allegations Against Granite...............................................4

      ■ ██████████████ ...............................................5

      ■ ██████████████...............................................5

      3.   The Unspecified Customer.......................................................7

      4.   Speculation About Other Customers.......................................8

   B. MetTel's ████████ ...................................................................8

     1.  The Highly Competitive Telecommunications Market ................9

     2.  MetTel's ███████...................................................10

     3.  MetTel's █████████████...........................................11

III.  LEGAL STANDARD ........................................................................13

IV.  METTEL'S MOTION FOR A TRO SHOULD BE DENIED ........................14

   A. Preliminary Injunctive Relief Is Unconstitutional And Unavailable Here .....14

   B. MetTel Has Not Shown That It Will Suffer Irreparable Harm .......................20

   C. The Balance Of Equities Favors Granite .......................................22

   D. MetTel Has Not Pleaded Colorable Claims .................................25

     1.  MetTel's Tortious Interference And Trade Libel Claims...........................26

     2.  MetTel's Defamation Claim .......................................29

     3.  MetTel's Claim Under The Delaware Deceptive Trade Practices Act........33

V.   METTEL'S MOTION TO EXPEDITE SHOULD BE DENIED ....................36

VI.  CONCLUSION ...............................................................................40

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*Agar v. Judy*,
   151 A.3d 456 (Del. Ch. 2017) ............................................................32

*Alexander v. United States*,
   509 U.S. 544 (1993)..................................................................14, 20

*Alpha Builders, Inc. v. Sullivan*,
   2004 WL 5383570 (Del. Ch. Nov. 5, 2004) ................................................13, 21

*Aquila, Inc. v. Quanta Servs., Inc.*,
   805 A.2d 196 (Del. Ch. 2002) .............................................................13, 21, 23

*Auburn Police Union v. Carpenter*,
   8 F.3d 886 (1st Cir. 1993)............................................................14, 16

*State ex rel. Brady v. Pettinaro Enters.*,
   870 A.2d 513 (Del. Ch. 2005) ..........................................................34-35

*CapStack Nashville 3 LLC v. MACC Venture Partners*,
   2018 WL 3949274 (Del. Ch. Aug. 16, 2018) (Glasscock, V.C.) ...............*passim*

*Conduent Business Servs., LLC v. Sky View Capital, LLC*,
   C.A. No. 2020-0232-JTL (Del. Ch. Mar. 30, 2020)............................................39

*DeBonaventura v. Nationwide Mut. Ins. Co.*,
   419 A.2d 942 (Del. Ch. 1980) ..........................................................27

*Doe v. Delaware, Dep't of Servs. for Children, Youth & Their Families, Div. of Family Servs.*,
   2016 WL 5416679 (D. Del. Sept. 27, 2016).................................................31

*EDIX Media Grp., Inc. v. Mahani*,
   2006 WL 3742595 (Del. Ch. Dec. 12, 2006)................................................34

*Eureka Resources, LLC v. Range Resources-Appalachia, LLC*,
   62 A.3d 1233 (Del. Super. Ct. 2012)....................................................26

ii

*In re Frontier Communications Corporation*,
  Case No. 20-22476, ECF No. 1 (Bankr. S.D.N.Y. Apr. 14, 2020) ....................9

*Gannett Co. v. State*,
  571 A.2d 735 (Del. 1989) ...................................................................14

*Golden Cycle, LLC v. Allan*,
  1998 WL 892631 (Del. Ch. Dec. 10, 1998) ......................................24

*Grand Ventures, Inc. v. Whaley*,
  632 A.2d 63 (Del. 1993) ...................................................................35

*Incyte Corp. v. Flexus Biosciences, Inc.*,
  2017 WL 7803923 (Del. Super. Ct. Nov. 1, 2017)....................27, 29

*Irgau v. Christiana Care Health Servs.*,
  2008 WL 1724250 (Del. Super. Ct. Apr. 9, 2008) ............................28

*Ivanhoe Partners v. Newmont Mining Corp.*,
  533 A.2d 585 (Del. Ch. 1987) ..........................................................24

*J.C. Pitman & Sons v. Pitman*,
  47 A.2d 721 (Del. Ch. 1946) ....................................................... 17-19

*Lipson v. Anesthesia Servs., P.A.*,
  790 A.2d 1261 (Del. Super. Ct. 2001)...............................................23

*Nakahara v. NS 1991 Am. Trust*,
  718 A.2d 518 (Del. Ch. 1998) ..........................................................25

*Ninespots, Inc. v. Jupai Holdings, Ltd.*,
  2018 WL 3626325 (D. Del. July 30, 2018) .......................................33

*Nyer v. Munoz-Mendoza*,
  385 Mass. 184, 188, 430 N.E.2d 1214, 1217 (1982).........................26

*Opportunity Partners L.P. v. Blackrock N.Y.*,
  2011 WL 1379066 (Del. Ch. Mar. 28, 2011) ....................................36

*Organovo Holdings, Inc. v. Dimitrov*,
  162 A.3d 102 (Del. Ch. 2017) (Laster, V.C.) ........................ 16, 21-22

*Overdrive, Inc. v. Baker & Taylor, Inc.*,
2011 WL 2448209 (Del. Ch. June 17, 2011)......................................................28

*Parsons v. Digital River, Inc.*,
2015 WL 139760 (Del. Ch. Jan. 12, 2015).........................................................36

*Perlman v. Vox Media, Inc.*,
2019 WL 2647520 (Del. Ch. June 27, 2019) (Slights, V.C.) ................ 21, 29-30

*Preston Hollow Capital LLC v. Nuveen LLC*,
216 A.3d 1 (Del. Ch. 2019) (Glasscock, V.C.)...................................... 18-19, 30

*Regal Home Distribs. v. Gordon*,
66 A.2d 754 (Del. Super. Ct. 1949)...................................................................23

*Riley v. Moyed*,
529 A.2d 248 (Del. 1987) ..................................................................................30

*Rosenberg Diamond Dev. Corp. v. Appel*,
290 A.D.2d 239, 735 N.Y.S.2d 528 (1st Dep't 2002) .......................................26

*Sherwood v. Ngon*,
2011 WL 6355209 (Del. Ch. Dec. 20, 2011).....................................................25

*Singer v. Magnavox Co.*,
380 A.2d 969 (Del. 1977), *overruled on other grounds*,
*Weinberger v. UOP, Inc.*, 457 A.2d 701 (Del. 1983).........................................33

*Snow Phipps Grp., LLC v. KCake Acquisition, Inc.*,
C.A. No. 2020-0282-KSJM (Del. Ch. Apr. 17, 2020)........................................39

*Sonet v. Plum Creek Timber Co.*,
1998 WL 749445 (Del. Ch. Sept. 23, 1998) ................................................. 37-38

*Southeastern Promotions, Ltd. v. Conrad*,
420 U.S. 546 (1975)............................................................................. 15-16

*Stevens v. Independent Newspapers, Inc.*,
1988 WL 25377, at *4 (Del. Super. Ct. Mar. 10, 1988)....................................31

*In re TriQuint Semiconductor, Inc. Stockholders Litig.*,
2014 WL 2700964 (Del. Ch. June 13, 2014)......................................................36

iv

*UbiquiTel Inc. v. Sprint Corp.*,
    2005 WL 3533697 (Del. Ch. Dec. 14, 2005)..................................................26, 34

*The We Co. v. Softbank Grp. Corp.*,
    C.A. No. 2020-0258-AGB (Del. Ch. Apr. 17, 2020) ..........................................39

*In re Williams Cos., Inc. Stockholder Litig.*,
    2016 WL 197177 (Del. Ch. Jan. 13, 2016).........................................................36

**Rules and Statutes**

6 *Del. C.* 2633(a).......................................................................................................13

**Other Authorities**

*In re Registration of Security Certificate of Metropolitan
    Telecommunications Corp. d/b/a MetTel*,
    Docket No. S-2017-2589999 (Pa. Pub. Utility Comm'n, Feb. 22,
    2017) ..................................................................................................................10

Defendant Granite Telecommunications, LLC ("Granite") submits this Opposition to the Motion for a Temporary Restraining Order and Motion to Expedite of Plaintiff Manhattan Telecommunications Corp., d/b/a Metropolitan Telecommunications, a/k/a MetTel ("MetTel").

## I.    PRELIMINARY STATEMENT

MetTel has rushed into this Court seeking a TRO that is *literally unprecedented*.  MetTel has not cited a single case—from Delaware or anywhere else—where a court issued a TRO enjoining a competing business from making allegedly false statements to customers.  Nor could any such authority exist, for such a TRO would impose a prior restraint in violation of the Constitutions of the United States and Delaware.  Such a TRO would further violate the long-standing rule that equity will not enjoin a libel.

Moreover, MetTel revealingly does not seek a TRO limiting Granite from making certain specific statements about MetTel.  Instead, MetTel has asked this Court to enjoin "Granite from making any statements about MetTel or its business operations to any current MetTel client." (Mot. for TRO at 1.)  Such a wildly overbroad TRO would stop Granite from communicating at all with any MetTel customer about anything concerning MetTel.  In effect, MetTel asks this Court to muzzle Granite from making even unquestionably true statements about MetTel

1

and end Granite's ability to compete with MetTel.  Such a sweeping injunction is plainly unconstitutional and unwarranted here.

Even leaving aside that MetTel has asked this Court for unconstitutional relief that this Court has no power to award, MetTel has not met the familiar elements for issuing a TRO.  First, and most importantly, MetTel has not shown that it has suffered or will suffer the irreparable harm—or any harm at all— necessary to issue a TRO.  MetTel has not alleged—and cannot allege—that it sustained any *actual* loss related to anything Granite purportedly did.  And even if such losses had been pleaded—and they have not—lost customers and business opportunities are harms which Delaware courts routinely address by awarding damages.

Nor has MetTel shown that the balance of equities tilts in its favor.  MetTel seeks a wildly overbroad TRO that would eliminate Granite's free speech rights and its right to compete with MetTel, which would ultimately result in less competition in the marketplace and concomitant harm to consumers.  █████████ ████████████████████████████████████████████████████

MetTel's unconstitutional attempt to stifle legitimate competition coupled with its unclean hands on these matters foreclose any argument that the balance of the equities favors MetTel.

Furthermore, MetTel has not come to this Court with even colorable claims. At best, it alleges isolated, imprecise statements of opinion by two line-level Granite salespeople to two MetTel customers resulting in no harm to MetTel. Such bare-bones allegations do not make a colorable claim under any legal theory.

Moreover, even assuming arguendo the challenged opinions concerning MetTel's █████████ could be construed as factual statements—which they cannot—those words are not untrue. MetTel shows unmistakable signs of a ███████████████ Even before the current economic crisis, █████ ████████████████████████████████ ████████████████████████████████ ███████████████████ █████████████ ████████████████████████ And Granite understands that, also around the same time, MetTel may have ████████████████████ ██████████████████████ Given the highly competitive telecommunications market—█████████████████ ████████████████████—Granite had good reason to believe that MetTel ████████████ Opining as much to MetTel's customers is therefore not actionable and provides no basis for issuing a

3

TRO to preclude Granite personnel from discussing that risk—or anything else about MetTel—with the businesses that would be most directly impacted.

MetTel has also failed to clear the threshold required to expedite these proceedings.  MetTel's claims are not colorable, and it has not alleged even a reasonable possibility of irreparable injury that would warrant imposing the extra costs of expedited proceedings on both Granite and this Court.

Accordingly, and as discussed in more detail below, MetTel's Motion for TRO and Motion to Expedite should be denied.

## II.    RELEVANT BACKGROUND

### A. MetTel's Allegations Against Granite

Although MetTel's Complaint is filled with rhetoric accusing Granite of "tak[ing] the lowest of roads" to exploit the pandemic and orchestrating an "[o]ngoing [c]ampaign of [l]ies" (Compl. at 6), the few specific, non-speculative factual allegations in the Complaint tell a decidedly different story.  According to MetTel, out of its entire nationwide customer base, Granite personnel contacted *two* customers—both current or former Granite customers—and made vague statements of opinion about ███████████████████ during the course of ordinary sales calls.  And, again according to MetTel, neither customer changed its relationship with MetTel in any way as a result of these vague statements of opinion.

4

1. ██████████████

First, MetTel alleges that one customer—████████████ a former Granite customer—received one vague voicemail from a Granite salesperson in late April 2020.  (*Id.*, ¶ 19 & Ex. A.)  According to an unverified transcription of the message, the Granite salesperson referred to ██████████████ ██████████████ and said that he "would like to bring that to your attention."  (*Id.*, Ex. A.)

MetTel pointedly does not allege that anyone from ████████████ ever returned this phone call or ever found out ██████████████ (*See id.*, ¶ 19 & Ex. A.)  Instead, ████████████ affirmatively stated that it would rely on MetTel—not Granite—for information about MetTel.  (*See id.*, Ex. A (email from ████████████ to MetTel stating, "[if there's anything to know, I want your input, not his.").)  Nor does MetTel allege that its business with ████████ ██████ has changed in any way since this contact.

2. ██████████████

MetTel also alleges that Granite contacted another customer—████████ ██████ which is also a current Granite customer, Easton Decl., ¶¶ 5-6— on May 11, once via email and once via phone.  In the email contact, Granite salesperson James Easton explained that he is attempting to set up a meeting between Granite's CEO and a senior ██████ executive to discuss "cost savings projects that [Granite

5

has] run" for other businesses similar to ██████ (Compl., Ex. B.)  Mr. Easton also expressed his opinion that an unnamed "current partner . . . ████████████

████████████████████████████████████████

(*Id.*)

As for the phone call contact, MetTel claims that an unidentified person—not necessarily even a Granite employee—called an unspecified person at █████ and said something, which a different ████ employee summarized as ███████████

██████████████ (*Id.*, ¶ 24 & Ex. C.)  Mr. Easton has no memory of ever saying that MetTel ██████████████████ to anyone at █████ Easton Decl., ¶ 7.

MetTel pointedly does not allege that either of these contacts have resulted in any change in its business relationship with ██████ To the contrary, Tim Hanley, a MetTel senior vice president, contacted ██████ chief information officer and reported to others at MetTel that the phone call had resolved any concerns █████ might have.  (Compl., Ex. C ("[The chief information officer] is going to level set. He was very appreciative of the call.").)

Moreover, MetTel's senior management responded to word of the alleged phone call by directing Mr. Hanley to spread false information to ██████ about ██████████████ Andoni Economou, MetTel's chief operating

officer, directed Mr. Hanley to "to call in and figure this out."  (*Id.*)  Mr. Economou further directed:



Make sure you give them a firm assurance that ▮▮▮▮▮

(*Id.* (emphasis added).)  The implication is clear: Mr. Economou ordered Mr. Hanley to call the customer and reassure them as to ▮▮▮▮▮▮▮ while simultaneously spreading the false and baseless rumor that ▮▮▮▮▮ ▮▮▮▮▮▮▮▮ (*See id.*); *see also* Hogle Decl., ¶ 5 ("At no time during my employment at Granite has Granite ever ▮▮▮▮▮▮ ▮▮▮▮▮").

### 3.  The Unspecified Customer

MetTel attempts to link the two customers that Granite salespeople did contact to a different, unnamed customer, who "has not returned MetTel's calls and has rejected efforts to set up a meeting with MetTel since being contacted by Granite."  (Compl., ¶ 27.)  MetTel pointedly fails to plead this customer's name, so Granite has no way of even beginning to investigate this allegation.  Nor does MetTel plead any facts to suggest that this customer actually was recently contacted by Granite or, if so, what Granite personnel allegedly communicated to the customer.  Indeed, the only information present in MetTel's pleadings shows

7

that any Granite communication to this customer was about "cost savings projects that [Granite has] run" for them, not about MetTel.  (*See id.*, Ex. B.)  Moreover, even MetTel concedes that this customer is still a MetTel client, and MetTel provides no factual basis for its speculative, conclusory assertion that it is likely to lose the customer's business.  (*Id.*, ¶ 27 ("MetTel has concluded that it *most likely* lost that client's *future* business. . . .") (emphasis added).)

### 4.  Speculation About Other Customers

Finally, MetTel speculates that Granite salespeople made similarly vague statements of opinion about MetTel's ▮▮▮▮▮▮▮▮▮▮ to customers mentioned in Mr. Easton's email.  (*Id.*, ¶ 26.)  MetTel admits it makes this accusation "upon information and belief" with no supporting evidence.  (*Id.*)  Again, the only available evidence is that any contact from Granite to any of these businesses was solely in connection with "cost savings projects that [Granite has] run" for them (*id.*, Ex. B), not about MetTel or ▮▮▮▮▮▮▮

### B.  MetTel's ▮▮▮▮▮▮▮

Not only has MetTel come to this Court alleging a few vague statements of opinion that have not caused MetTel to lose a single customer or suffer any other harm, but the statements of opinion are based on an entirely reasonable view of the facts.  MetTel and Granite participate in a competitive market where ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

██████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████   Taken together, these facts signal that MetTel ██

█████████████████████

## 1.  *The Highly Competitive Telecommunications Market*

MetTel and Granite are head-to-head competitors in the marketplace for

telecommunications solutions for businesses.  This market is saturated, and several

of Granite's and MetTel's other competitors ██████████████████████████ in

recent years, █████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████

9

2. *MetTel's* ███████████

Even before ██████████████████████████████████████████████████

███ In 2017, MetTel █████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████

In 2019, MetTel █████████████████████████████████████████████

███████▌ ██████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████

---
[1] It is not clear from the publicly available documents whether the 2019 transaction

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████

3.  *MetTel's* 

Given the unstable nature of the telecommunications market dating back

several years, ███████████████████████████████████████████████████

██████████████████████████████████ MetTel could be expected to ██████████

████████████████ In April 2020, MetTel came to Granite ███████████████████

████████

█████████████████████████████████████████████████████████████████████

████████████████ At some locations—mostly shopping malls—Granite controls the

telephone and data infrastructure, and MetTel purchases access services from

Granite to resell to MetTel's own customers.  *See* Balestraci Decl., ¶¶ 4-5.  Facing

the prospect that one of its major retail customers ████████████████████████████

█████████████████████████████████████████████ MetTel affirmatively

approached Granite and pressed Granite to ████████████████████████████████

████████████  *See id.*, ¶¶ 6-8.  The parties exchanged proposals but have not yet

come to terms.  *Id.*, ¶ 9.[2]

---

[2] Emails exchanged between the parties about MetTel's ██████████████████████████
show that even before the statements MetTel complains of here, Granite was
appropriately evaluating ████████████████████████████████████████████████
███████  *See* Balestraci Decl., ¶¶ 10-11; Balestraci Decl., Exs. A-B (showing that
Mr. Balestraci advised MetTel that █████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
████████████

Second, MetTel asked for Granite's help in negotiating for ██████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████ Sean Sullivan, a senior MetTel executive in charge of relationships with carriers, asked Geoff Cookman, a senior Granite executive with similar responsibilities, about ████████████████████████████████████████████. *See* Cookman Decl., ¶¶ 6-8. ████████████████████████████████████████████ ████████████████████████████████████████████, Granite did not pursue MetTel's proposal.  *Id.*, ¶ 9.

Third, Granite recently received reports that MetTel ████████████ ████████████████████████████████████████████ Pagliazzo Decl., ¶ 6.  That MetTel would ████████████████████████████ ████████████████████████████████████████████ ████  *Id.*, ¶ 7.  ████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████  *Id.*, ¶ 8.



---

[3] Agents are non-employee sales personnel frequently used by telecommunications providers.  Pagliazzo Decl., ¶ 4.

## III.   LEGAL STANDARD

A temporary restraining order may be issued only "when the movant demonstrates that: [1] it has a colorable claim, [2] faces a likelihood of imminent, irreparable harm if relief is not granted, and [3] will suffer greater hardships if the TRO is not granted than the defendants would if the relief were granted." *CapStack Nashville 3 LLC v. MACC Venture Partners*, 2018 WL 3949274, at *3 (Del. Ch. Aug. 16, 2018) (Glasscock, V.C.) (quotations omitted).  "Of the three factors, irreparable harm is the most important; it is the *sine qua non* for this form of relief."  *IMO Daniel Kloiber Dynasty Trust*, 98 A.3d 924, 937 (Del. Ch. 2014). "Mere apprehension of uncertain damage or insufficient remedy will not support a finding of irreparable harm."  *Alpha Builders, Inc. v. Sullivan*, 2004 WL 5383570, at *5 (Del. Ch. Nov. 5, 2004).  "To demonstrate irreparable harm, . . . [t]he alleged injury must be imminent and genuine, as opposed to speculative."  *Aquila, Inc. v. Quanta Servs., Inc.*, 805 A.2d 196, 208 (Del. Ch. 2002).

The standard for granting a TRO is the same regardless of whether the underlying claims for relief are common law claims or claims under the Delaware Deceptive Trade Practices Act ("DTPA").  *See* 6 *Del. C.* 2633(a) (authorizing injunctive relief "under the principles of equity and on terms that the court considers reasonable").

13

## IV.   METTEL'S MOTION FOR A TRO SHOULD BE DENIED

### A.  Preliminary Injunctive Relief Is Unconstitutional And Unavailable Here

MetTel seeks an Order enjoining Granite from "making any statements about MetTel or its business operations to any current MetTel client." (Mot. for TRO at 1.)  In short, MetTel seeks a TRO forbidding Granite's speech activity. MetTel does not cite a single case holding that this Court may issue such a TRO. Nor could any such authority exist, because such a TRO would be both unconstitutional and violate the maxim that a court of equity will not enjoin a libel. This Court therefore cannot grant the sweeping, unconstitutional, and unprecedented TRO that MetTel seeks here.

First, the TRO MetTel is requesting constitutes a prior restraint in violation of both the First Amendment to the United States Constitution and Article I of the Delaware Constitution.[4]  "Temporary restraining orders and permanent injunctions—*i.e.*, court orders that actually forbid speech activities—are classic examples of prior restraints." *Alexander v. United States*, 509 U.S. 544, 550 (1993); *see also Auburn Police Union v. Carpenter*, 8 F.3d 886, 903 (1st Cir. 1993)

---

[4] *See Gannett Co. v. State*, 571 A.2d 735, 740 n.9 (Del. 1989) ("We have previously noted that [Article I, Section 5] has the same scope as the federal first amendment."); *CapStack*, 2018 WL 3949274, at *4 ("the Delaware Constitution appears to explicitly prohibit prior restraints, providing that 'any citizen may print on any subject, being responsible for the abuse of that liberty.'").

14

("[A] judicial injunction that prohibits speech prior to a determination that the speech is unprotected . . . constitutes a prior restraint.") (citation omitted). "Any system of prior restraint . . . comes to this Court bearing a heavy burden against its constitutional validity." *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558 (1975) (quotation and citation omitted).

Moreover, at the TRO stage, MetTel seeks a prior restraint on the barest of records, prior to any adjudication that the speech is seeks to enjoin is unprotected. As explained in *CapStack*,

> the Plaintiffs ask me to temporarily enjoin future speech based solely on a finding that the Complaint pleads a *colorable claim* for defamation or trade libel. Colorability, in the TRO context, requires only that the claim not be frivolous; if a plaintiff pleads a non-frivolous claim of wrongful conduct and shows a threat of resulting imminent irreparable harm, a TRO may issue. A finding that the plaintiff's claim is *likely* to prevail is not required. In my view, to enjoin speech upon such a showing would amount to an unconstitutional prior restraint.

2018 WL 3942974, at *4 (emphasis in original). Indeed, granting MetTel's requested TRO could enjoin speech "that may ultimately prove to be protected." *See id.* (quotation omitted). And because a TRO requires a far lower evidentiary showing than a final adjudication on the merits, "the danger that the court will get it wrong and mistakenly restrict protected speech is even greater." *Id.* (quotations

15

omitted).  It follows that a TRO imposing prior restraint on speech activities is constitutionally impermissible and may not issue at all.  *See id.*

Second, MetTel's request runs afoul of the "traditional maxim that equity will not enjoin a libel." *CapStack*, 2018 WL 3949274, at *4 (quoting *Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 115 (Del. Ch. 2017) (Laster, V.C.)). "Traditionally, the reason for the special rule was jurisdictional," but the rule is now grounded on additional considerations, primarily "the importance afforded to the constitutional protections of speech." *Organovo Holdings*, 162 A.3d at 115. "Regardless of the rationale supporting the rule, '[t]he upshot is the same: a court of equity generally cannot issue an injunction in a defamation case.'" *CapStack*, 2018 WL 3949274, at *4 (quoting *Organovo Holdings*, 162 A.3d at 119).

In certain circumstances, a *permanent* injunction enjoining speech is permissible, but only after a final adjudication that the speech to be enjoined is defamatory or otherwise unprotected.  *See, e.g.*, *Organovo Holdings*, 162 A.3d at 124-25; *see also Auburn Police Union*, 8 F.3d at 903.  But that is not what MetTel seeks here.  MetTel would have the Court restrain Granite's speech, including forbidding it from making *any* statements about MetTel to *any* of MetTel's customers, without first determining—or even hearing *evidence* regarding—what, exactly, Granite said, the truth of its statements, and whether the statements

16

constitute opinion or were otherwise privileged. The relief sought is simply not available.

In its opening brief, MetTel entirely skips over the fact that its request for a TRO is constitutionally infirm and asks for relief outside the power of a court of equity. MetTel does not cite a single case—from Delaware or anywhere else— holding that a TRO may issue solely to stop allegedly false and defamatory statements. And MetTel offers no argument that the prior restraint doctrine or the limitations on equity's power to enjoin alleged libels do not apply here.

Rather than engage with the constitutional problems with its request for a TRO imposing unconstitutional prior restraint, MetTel cherry-picks quotations from certain factually inapposite cases discussing a non-binding doctrine that simply does not apply here. In *J.C. Pitman & Sons v. Pitman*, 47 A.2d 721 (Del. Ch. 1946), the Court denied a demurrer to a counterclaim seeking to enjoin a course of conduct that included, as one component, alleged trade libel. The Court concluded that, notwithstanding that a court of equity cannot enjoin a trade libel, "a continued course of wrongful action may, ordinarily, be stopped by injunction, although it includes a trade libel. Intimidating possible customers by baseless threats to sue, should they deal with the complainant, comes within that rule." *Id.* at 726 (citation omitted). Stated differently, the mere presence of a trade libel claim does not necessarily deprive the court of the power to enjoin other, separate

17

acts of alleged unfair competition—such as baseless threats of litigation—that may be related to the alleged trade libel.  *See id.*; *see also Preston Hollow Capital LLC v. Nuveen LLC*, 216 A.3d 1, 5 (Del. Ch. 2019) (Glasscock, V.C.) (holding that, under *Pitman*, an injunction is only permissible where plaintiff alleges "other tortious activity where tradition and constitutional considerations do not require the findings of a jury").

Even were *Pitman* binding authority,[5] the doctrine it applied simply has nothing to do with MetTel's allegations here.  All of MetTel's claims are based on the allegations that Granite made false, misleading, and/or defamatory statements about MetTel to third parties.  (*See generally* Compl.)  In support of its claims for tortious interference and violations of the DTPA, MetTel alleges no *separate* acts other than the alleged false statements to customers.  (*See generally id.*)  MetTel makes no claim that Granite has engaged in unfair competition in any other way, such as by baselessly threatening litigation against MetTel customers, improperly using MetTel's confidential information or trade secrets, employing a former MetTel employee in violation of a restrictive covenant, or infringing on MetTel's

---

[5] *Pitman* was decided by a vice-chancellor nearly 75 years ago and has never been formally adopted by the Delaware Supreme Court.  Accordingly, this Court is free to disagree with the analysis in *Pitman*.

intellectual property rights.  The rule applied in *Pitman* therefore simply does not apply.[6]

Moreover, even if *Pitman* did apply—and it does not—simply pleading that alleged false statements *also* constitute a separate business tort does not transform *Pitman* into an all-purpose exception to the constitutional prohibition on prior restraints.  As Vice Chancellor Glasscock recognized in *CapStack*, such a reading of the law is impermissible:

> By characterizing a defamation claim as one for trade libel (and including in her complaint a separate tort, perhaps for intentional infliction of emotional distress), a plaintiff could circumvent the well-established prohibition on prior restraints. The exception would come nigh to swallowing the rule. Such an outcome could chill protected speech.

*CapStack*, 2018 WL 3949274, at *6.

*CapStack* is materially indistinguishable from this case.  There, the defendants accused the plaintiffs—their partners in a joint venture—of lying in a

---

[6] Even if *Pitman* applied here and could be read as broadly as MetTel implies—and, as discussed above, neither is true—*Pitman* still would not warrant granting MetTel's requested TRO.  First, *Pitman* was decided at the demurrer—*i.e.* the motion to dismiss—stage and awarded no injunctive relief to anyone.  47 A.2d at 726.  It does not stand for the proposition that preliminary or interim injunctive relief against allegedly false statements is constitutional, appropriate, or warranted.  *See CapStack*, 2018 WL 3949274, at *5.  Moreover, recent cases have limited *Pitman* to "traditional" claims of "trade libel," *i.e.*, disparagement of goods, as opposed to the types of statements alleged here.  *See, e.g.*, *Preston Hollow*, 216 A.3d at 4-5; *CapStack*, 2018 WL 3949274, at *6.

private placement memorandum and threatened to reveal the alleged lies unless the plaintiffs withdrew from the venture. *Id.* at \*2. The plaintiffs moved for a TRO seeking to enjoin their partners' threatened disclosure of these accusations of lying. *Id.* at \*3-4. Because the requested TRO sought to enjoin the defendants' speech—and *only* their speech—Vice Chancellor Glasscock held that a TRO would constitute unconstitutional prior restraint and could not issue. *See id.* at \*3-6.

The result should be the same here. As in *CapStack*, MetTel asks that this Court enjoin Granite's speech—and *only* its speech—to MetTel's customers. A TRO that does so is unconstitutional prior restraint and cannot be issued. *See CapStack*, 2018 WL 3949274, at \*6; *see also Alexander*, 509 U.S. at 550.

At bottom, MetTel has come to this Court seeking to stop Granite from saying anything about MetTel to any MetTel customers, speech which is constitutionally protected and which Granite is privileged to engage in. The Constitutions of Delaware and the United States do not permit such prior restraint, so MetTel's requested TRO must be denied.

## B. MetTel Has Not Shown That It Will Suffer Irreparable Harm

Even if MetTel sought a constitutionally permissible TRO—and, as shown above, it does not—MetTel also cannot satisfy the second, and most important, requirement for obtaining a TRO: irreparable harm. The Motion for a TRO should also be denied on this separate basis.

20

MetTel only alleges that Granite has contacted two customers out of its entire nationwide customer base, neither of which have altered their relationships with MetTel in any way as a result of the alleged false statements MetTel complains of here.  (Compl., ¶¶ 19-20, 24.)  At most, MetTel speculates that one unspecified customer "most likely" will move "future" business away from MetTel as a result of Granite's alleged false statements, but MetTel alleges such merely "upon information and belief."  (*Id.*, ¶¶ 26-27.)  Such speculation about uncertain future harm is not enough to warrant a TRO.  *See, e.g.*, *Alpha Builders*, 2004 WL 5383570, at *5 ("Mere apprehension of uncertain damage or insufficient remedy will not support a finding of irreparable harm."); *Aquila*, 805 A.2d at 208 ("To demonstrate irreparable harm, . . . [t]he alleged injury must be imminent and genuine, as opposed to speculative.").

Nor can MetTel show that it has no adequate remedy at law.  "Generally, a party injured as a result of a tort has a complete and adequate remedy at law in the form of an action for damages."  *Organovo Holdings*, 162 A.3d at 114 (quotation omitted).  This case is no exception.  MetTel's musings on the unique nature of the telecommunications industry notwithstanding, MetTel's allegations of harm boil down to (1) lost business and (2) damage to its reputation and goodwill.  (*See* Compl., ¶¶ 30-31, 33.)  To the extent MetTel has lost current and future business, that harm can be redressed through an award of damages. *See Perlman v. Vox*

*Media, Inc.*, 2019 WL 2647520, at \*6 (Del. Ch. June 27, 2019) (Slights, V.C.)

("Although Plaintiffs try to dress their allegations of 'lost business opportunities

and lost investments' as irreparable harm, those losses, if proven, are readily and

historically compensable by damages.").  And to the extent its reputation has been

harmed, courts routinely quantify reputational harm into monetary damages

awards.  *See Organovo Holdings*, 162 A.3d at 114 n.51 ("Imperfect though it is, an

action for damages is the only hope for vindication or redress the law gives to a

man whose reputation has been falsely dishonored.") (quoting *Milkovich v. Lorain*

*Journal Co.*, 497 U.S. 1, 23 (1990)).  Calculating such damages is neither

impractical nor impossible.  *See id.* at 114.

Accordingly, MetTel's bare-bones allegations simply do not make out the

irreparable harm necessary to issue a TRO.  MetTel's Motion for a TRO should be

denied on this independent basis as well.

### C. The Balance Of Equities Favors Granite

MetTel is also not entitled to a TRO here because the balance of equities tips

in favor of Granite rather than MetTel.  A TRO is separately unwarranted for this

reason too.

First, as shown above, the requested TRO would act as a prior restraint on

protected speech, which is all the more troubling given the high likelihood that

statements of two sales representatives were non-actionable statements of opinion.

22

*See* Section IV.D.2, *infra*.  The requested TRO will also have a chilling effect on

Granite's ability to compete with MetTel for customers, which it is privileged to

do.  *See Lipson v. Anesthesia Servs., P.A.*, 790 A.2d 1261, 1287 (Del. Super. Ct.

2001) ("[T]he Court must be mindful of the privilege enjoyed by competitors in the

same market to compete aggressively for market share"); *Regal Home Distribs. v.

Gordon*, 66 A.2d 754, 754-55 (Del. Super. Ct. 1949) ("One is privileged purposely

to cause a third person not to enter into or continue a business relation with a

competitor of the actor if (a) the relation concerns a matter involved in the

competition between the actor and the competitor, and (b) the actor does not

employ improper means, and (c) the actor does not intend thereby to create or

continue an illegal restraint of competition, and (d) the actor's purpose is at least in

part to advance his interest in his competition with the other.").

Second, the TRO MetTel seeks is wildly overbroad and would compound

the chilling effect and harm on Granite's speech and competition rights.  MetTel

would have the Court enjoin Granite from making "*any* statements about MetTel

or its business operations to *any* current MetTel client."  (Mot. for TRO at 1

(emphasis added).)  Granting MetTel's requested TRO would thus enjoin entirely

truthful speech and legitimate, everyday competitive activities.  It would even

constrain Granite if a dissatisfied MetTel customer contacted Granite.  Such an

overbroad TRO is impermissible.  *See*, *e.g.*, *Aquila,* 805 A.2d at 202-203 ("[A]

23

preliminary injunction is an extraordinary remedy, which will not issue unless it has been earned and will be denied where the remedy sought is excessive in relation to, or unnecessary to prevent, the injury threatened."); *Ivanhoe Partners v. Newmont Mining Corp.*, 533 A.2d 585, 609 (Del. Ch. 1987) ("[A]n injunctive remedy should not be disproportionate or excessive in relation to the specific harm that it is intended to prevent.").

Third, MetTel has tools at its disposal to mitigate and even cure any alleged harm without the need for a court order restraining Granite's speech and competition rights.  MetTel explains in its own Brief that it is willing to share confidential information about ████████████ with customers upon execution of a non-disclosure agreement.  (MetTel Br. at 6.)  If MetTel's ████ ████████████████████████████████████████ ████████████████████████  The existence of this remedy, and the relative ease with which MetTel could implement it, weighs heavily against granting an unwarranted and unconstitutional TRO.  *See Golden Cycle, LLC v. Allan*, 1998 WL 892631, at *17 (Del. Ch. Dec. 10, 1998) (noting existence of non-legal remedies and holding "[t]he availability of this self-help strongly suggests that there is no need for injunctive relief here.").

Finally, MetTel comes to the Court with unclean hands.  MetTel's own evidence shows that it engaged in the same conduct it accuses Granite of engaging

24

in here.  Mr. Economou, a senior MetTel executive, advised Mr. Hanley, the MetTel salesperson with the high-level contacts at ███ to use his contacts to reassure ████ that MetTel was ████████████████████

████████████████████████████

███████████████ (Compl. Ex. C.)  MetTel's agenda is clear: while reassuring ████ Mr. Hanley was being ordered to sow doubt about Granite's

██████████████ (*See id.*)  In these circumstances, "where the litigant's own acts offend the very sense of equity to which he appeals," the court should refuse equitable relief.  *Nakahara v. NS 1991 Am. Trust*, 718 A.2d 518, 522 (Del. Ch. 1998).

### D. MetTel Has Not Pleaded Colorable Claims

Even if injunctive relief were constitutionally permissible here—and it is not—and even if MetTel had satisfied the irreparable harm and balance of the equities elements for issuance of a TRO—and it has not—MetTel would still not be entitled to a TRO.  A TRO will not issue unless the underlying claim is "colorable."  *Sherwood v. Ngon*, 2011 WL 6355209, at *6 (Del. Ch. Dec. 20, 2011).  Because MetTel cannot make even a colorable showing on its claims, its Motion for a TRO should be denied.

25

### 1.  MetTel's Tortious Interference And Trade Libel Claims

MetTel's Complaint purports to state common law claims for tortious

interference with prospective economic advantage (Count Two), tortious

interference with contractual relations (Count Three), and trade libel (Count Four).[7]

---

[7] Granite assumes, solely for purposes of opposing MetTel's Motion for a TRO, that Delaware law applies to MetTel's common law claims.  But it is far from clear that this is the case.  Delaware follows the Restatement (Second) to determine choice-of-law questions, with consideration given to "(1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered." *Eureka Resources, LLC v. Range Resources-Appalachia, LLC*, 62 A.3d 1233, 1237 (Del. Super. Ct. 2012).  MetTel is headquartered in New York, and Granite is headquartered in Massachusetts.  None of the allegedly false statements were made either by or to any individuals located in Delaware.  The only conceivable connection to Delaware is that MetTel and Granite are both organized under Delaware law, a connection that typically does not suffice to apply Delaware law to business torts.  *See*, *e.g.*, *UbiquiTel Inc. v. Sprint Corp.*, 2005 WL 3533697, at *4 (Del. Ch. Dec. 14, 2005) (applying Pennsylvania law to claim brought by Delaware corporation headquartered in Pennsylvania and noting, "the plaintiff's principal place of business is the single most important contact for determining the state of the applicable law as to most issues in situations involving . . . financial [or economic] injury. . . .") (quotations omitted, alteration in original).  Both New York and Massachusetts law proscribe prior restraints.  *See*, *e.g.*, *Nyer v. Munoz-Mendoza*, 385 Mass. 184, 188, 430 N.E.2d 1214, 1217 (1982) ("[E]ven allegedly false and defamatory statements are protected from prior injunctive restraint by the First Amendment and art. 16 of the Massachusetts Declaration of Rights."); *Rosenberg Diamond Dev. Corp. v. Appel*, 290 A.D.2d 239, 239, 735 N.Y.S.2d 528, 529 (1st Dep't 2002) ("Prior restraints on speech are strongly disfavored. . . .  Free speech is protected from censorship unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance or unrest.  Prior restraints are not permissible, as here, merely to enjoin the publication of libel.") (citations omitted).

Even accepting all of MetTel's well-pleaded allegations as true, these claims are not even colorable because MetTel does not adequately allege causation or damages, which are essential elements of each of these claims.[8]

In its Complaint, MetTel identifies only two MetTel customers to whom Granite allegedly made false, misleading, and/or defamatory statements about MetTel.  (Compl. ¶¶ 19, 20, 24.)  Based on these two isolated incidents, and without any evidence, MetTel speculates that it "*believes* that Granite personnel have contacted many, if not all, of MetTel's other current clients, as well as its prospective clients," and made similar statements.  (*Id.* ¶ 29 (emphasis added).) Tellingly, MetTel does not identify even a single customer or prospective customer it claims to have lost as a result of any Granite statement.  As a result, MetTel

---

[8] *DeBonaventura v. Nationwide Mut. Ins. Co.*, 419 A.2d 942, 947 (Del. Ch. 1980) ("interference with an existing contract requires (a) an intent to induce a breach (b) of an existing contract, (c) proximate causation, and (d) damages; a showing of deliberate interference with a prospective business opportunity requires (a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with that opportunity, (c) proximate causation, and (d) damages, all of which must be considered in light of a defendant's privilege to compete or protect his business interests in a fair and lawful manner"); *Incyte Corp. v. Flexus Biosciences, Inc.*, 2017 WL 7803923, at *7 (Del. Super. Ct. Nov. 1, 2017) (noting that no Delaware court has defined the elements of trade libel, but using the following definition: "Regardless of the label, the publication of a disparaging statement concerning the business of another is actionable where: (1) the statement is false; (2) the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss; (3) pecuniary loss does in fact result; and (4) the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity.") (quotation omitted).

27

cannot point to any actual, concrete damages that have been caused by Granite's alleged conduct.

The closest MetTel comes is alleging that one of its *other* customers—not one of the two customers to whom Granite allegedly made false statements—"has not returned MetTel's calls and has rejected efforts to set up a meeting with MetTel since being contacted by Granite." (*Id.* ¶ 27.) Such speculation alleges nothing actionable. This unnamed customer presumably remains a MetTel customer—and MetTel has not alleged otherwise—so MetTel cannot claim to have lost that one customer's business. Nevertheless, MetTel apparently "conclude[s]" from the customer's silence that it has lost this customer's "future" business. (*Id.*) This alleged "injury" is purely speculative.

These allegations are insufficient to state colorable common law claims for tortious interference and trade libel. As shown above, MetTel "has not identified a single customer or prospective business relationship or opportunity that [Granite] interfered with; nor has [MetTel] pled any facts supporting proximate causation or alleging specific damages." *See Overdrive, Inc. v. Baker & Taylor, Inc.*, 2011 WL 2448209, at *9 (Del. Ch. June 17, 2011) (dismissing tortious interference claim); *see also See Irgau v. Christiana Care Health Servs.*, 2008 WL 1724250, at *6 (Del. Super. Ct. Apr. 9, 2008) (holding a tortious interference claim inadequately pleaded where "the injury is not actual, it is merely speculative."). Similarly, as to

trade libel, MetTel has not alleged facts sufficient to show that "pecuniary loss does [or will] in fact result." *Incyte Corp.*, 2017 WL 7803923, at *7 (addressing elements of trade libel).

Finally, as discussed in more detail below with respect to MetTel's defamation claim, the various statements MetTel attributes to Granite were either statements of pure opinion—not fact—or made no representations of fact whatsoever. *See* Section IV.D.2, *infra*. Moreover, to the extent that any of these statements implied any assertions of fact, MetTel cannot show that any such assertions were "false." *See id.* The requisite elements of improper means and falsity are therefore also not colorably alleged with respect to MetTel's tortious interference and trade libel claims.

### 2. *MetTel's Defamation Claim*

As a threshold matter, this Court has no jurisdiction to entertain MetTel's defamation claim or award preliminary injunctive relief based on the defamation claim. As this Court held in *Perlman*:

> In connection with a claim for defamation, the Court of Chancery, in all instances, lacks subject matter jurisdiction to adjudicate the questions of whether a defendant made a false statement about the plaintiff and whether it did so with actual malice. A defendant alleged to have committed the tort of defamation is entitled, should she wish, to have a jury decide those threshold questions. If the jury declares that the defendant is liable for defamation, then the plaintiff may seek to enforce that

29

> declaration of defamation with mandatory injunctive
> relief in Chancery, but only in the event the declaration is
> not enough to prompt the defendant to remove the
> defamatory content from the offending site.

*Perlman*, 2019 WL 2647520, at *1; *accord Preston Hollow Capital LLC*, 216 A.3d

at 16 ("[T]his Court is without jurisdiction to determine whether slander has

occurred here.").

Even if this Court has jurisdiction over the defamation claim, it is still not

colorably pleaded.  "Ordinarily, the elements of defamation are: (1) defamatory

communication; (2) publication; (3) reference to the plaintiff; (4) third party's

understanding of the communication's defamatory character; and (5) injury."

*Preston Hollow Capital*, 216 A.3d at 4.  Leaving aside that MetTel has not

colorably alleged injury or damages for the reasons discussed above, MetTel

cannot make a colorable showing that any of the alleged statements on which its

claims are based are defamatory in the first place.

First, MetTel alleges that ████████████ received a voice message

from a Granite employee inquiring whether the customer was aware of ███████

████████████████████████ (Compl. ¶ 19 & Ex. A.)  But this

statement has no defamatory content—it does not even make a representation of

fact.  *See Riley v. Moyed*, 529 A.2d 248, 251 (Del. 1987) (to determine whether a

30

statement is actionable as defamation, the court must determine, among other things, "whether the statement can be objectively verified as true or false").

Second, MetTel alleges that ███████ received an email from Granite stating that its "service provider … ████████████████████████████████ ████████████████████████████████ This is a classic statement of opinion. (Compl. ¶ 20 & Ex. B.) Nowhere on the face of the challenged statement is MetTel expressly mentioned and, as explained above, more than one carrier ███ ████████████████████████ *See* Section II.B.1, *supra* (listing four carriers who ████████████████████████████████████ ████████████). Even if the statement could be interpreted as referring to MetTel, asserting that it is also ██████████████████ is a subjective and imprecise assessment. *See, e.g.*, *Stevens v. Independent Newspapers, Inc.*, 1988 WL 25377, at *4 (Del. Super. Ct. Mar. 10, 1988) ("The word 'abuse' is not fact-laden, but rather reflects the subjective perceptions of the speaker. Indeed, the term 'abuse' is so imprecise that the Delaware Supreme Court has held the phrase 'abuse of office' to be an expression of opinion and not a word of art."). A statement that MetTel ██████████████████████████████ clearly expresses the author's opinion. *See, e.g.*, *Doe v. Delaware, Dep't of Servs. for Children, Youth & Their Families, Div. of Family Servs.*, 2016 WL 5416679, at *7 (D. Del. Sept. 27, 2016) ("The words 'appear coerced' indicate that Quinn was describing her belief about

31

the veracity of the children's statements").  And a statement that MetTel is

████████████████████████ is both a subjective assessment and non-actionable

hyperbole.  *See, e.g.*, *Agar v. Judy*, 151 A.3d 456, 486 (Del. Ch. 2017) ("None of

these statements are defamatory. The statement of being 'forced kicking and

screaming to settle' is indeed nonsensical, which is also why it would be

understood by a reader as hyperbole and not literal truth."); *Stevens*, 1988 WL

25377, at *4.

     Third, MetTel alleges that Granite told an unnamed ████ employee that

MetTel is ███████████████ (Compl. ¶ 24 & Ex. C.)  But there is no

evidence of what Mr. Easton or any other Granite employee allegedly said on the

relevant telephone call.  Instead, the characterization ███████████████████

████████ is the summary that an ████ employee—not the same ████ employee

who spoke to the unidentified person on the telephone—provided to MetTel.  (*Id.*)

To the extent it is possible to make any assessment of the alleged statement—

which, as is clear from Exhibit C to the Complaint, is paraphrased and, at best for

MetTel, was conveyed secondhand—it is likewise a non-actionable statement of

opinion.

     Moreover, as discussed at length above, MetTel is currently ███████████

█████████████████████  *See* Section II.B, *supra*.  Accordingly, to the

extent any of the alleged statements actually implicate any verifiable statements of

fact about MetTel's ████████████ Granite personnel had every reason to believe that those statements were factually accurate and could not have acted with the requisite reckless disregard for the truth.  *See*, *e.g.*, *CapStack*, 2018 WL 3949274, at *6 (listing elements of defamation).

Accordingly, MetTel's defamation claim is not colorable.

### 3.  MetTel's Claim Under The Delaware Deceptive Trade Practices Act

MetTel's claim under the DTPA fares no better, for the statute does not apply to conduct taking place entirely outside Delaware which causes no harm inside Delaware.  And even if the statute did apply, MetTel has not alleged the requisite pattern of conduct necessary to warrant an injunction under its terms.

First, MetTel has not shown that the DTPA even applies to any of the conduct alleged in its complaint.  "[T]he [DTPA] is not available to litigants who cannot show any evidence of wrongful conduct or injury taking place in Delaware."  *Ninespots, Inc. v. Jupai Holdings, Ltd.*, 2018 WL 3626325, at *13 (D. Del. July 30, 2018) (citing *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 663 F. Supp. 2d 1138 (D.N.M. 2009)).  This principle is consistent with the well-established presumption that "a law is not intended to apply outside the territorial jurisdiction of the State in which it is enacted."  *Singer v. Magnavox Co.*, 380 A.2d 969, 981 (Del. 1977), *overruled on other grounds*, *Weinberger v. UOP, Inc.*, 457 A.2d 701 (Del. 1983).

33

Here, none of the allegedly false or misleading statements occurred in Delaware because neither the speakers nor the recipients were located in Delaware. Nor could MetTel allege that it suffered any harm in Delaware.  Instead, MetTel's principal place of business is in New York, and "the plaintiff's principal place of business is the single most important contact for determining the state of the applicable law as to most issues in situations involving . . . financial [or economic] injury. . . ."  *UbiquiTel Inc. v. Sprint Corp.*, 2005 WL 3533697, at *4 (Del. Ch. Dec. 14, 2005) (quotation omitted).  It follows that the DTPA simply does not apply here, and MetTel's allegations do not state colorable claims under the statute.

Second, even if the DTPA did apply, MetTel's allegations still do not make out colorable claims.  "The DTPA was designed to prevent patterns of deceptive conduct, not isolated incidents."  *EDIX Media Grp., Inc. v. Mahani*, 2006 WL 3742595, at *12 (Del. Ch. Dec. 12, 2006) (quotation omitted).  As such, "the failure of a party to be able to state a claim for injunctive relief at the time the suit is brought is fatal to claims under the Deceptive Trade Practices Act."  *State ex rel. Brady v. Pettinaro Enters.*, 870 A.2d 513, 537 (Del. Ch. 2005).

Again, here MetTel only alleges the three isolated statements discussed above.  While MetTel contends that Granite made similar statements to other MetTel customers, this allegation is purely speculative and based on nothing more

34

than "information and belief."  (*See* Compl. ¶¶ 26, 29.)  Thus, any purported

"pattern[] of deceptive conduct" is founded solely on surmise and conjecture,

which is insufficient to state a claim under the DTPA.  *See State ex rel. Brady*, 870

A.2d at 536 ("[A] claim for injunctive relief must be supported by the allegation of

facts that create a reasonable apprehension of a future wrong.") (quotation

omitted).  Accordingly, MetTel cannot obtain a TRO based on its DTPA claim.

Third, because MetTel's common law tort claims are not colorable for the

reasons discussed above, MetTel also cannot state colorable statutory claims.

"[T]he [DTPA] was not intended to create a new cause of action distinct from the

common law protections designed to secure businesses against the deceptive trade

practices of others."  *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 68 (Del. 1993).

Because MetTel has not alleged colorable common law claims, it has also not

alleged colorable claims under the DTPA, for the DTPA cannot serve as a

substitute where MetTel's other common law claims fail.

*          *          *

Simply put, MetTel has come to this Court seeking unconstitutional

emergency relief based on flimsy, speculative allegations.  This Court therefore

could not issue MetTel's requested TRO even if all the standard elements for

issuing a TRO were met, and MetTel has certainly not met those elements here.

MetTel's Motion for TRO should therefore be denied.

35

## V.   METTEL'S MOTION TO EXPEDITE SHOULD BE DENIED

MetTel's claims are so weak, the claimed injury so speculative, and the requested remedy so drastic that it has not even met the comparatively lower standard required for expediting these proceedings.  MetTel's Motion to Expedite should therefore also be denied.

"[M]otions to expedite are not granted automatically," rather, plaintiffs must "earn expedition." *In re Williams Cos., Inc. Stockholder Litig.*, 2016 WL 197177, at *2 (Del. Ch. Jan. 13, 2016).  "Plaintiffs bear the burden of showing good cause for expedited proceedings." *In re TriQuint Semiconductor, Inc. Stockholders Litig.*, 2014 WL 2700964, at *2 (Del. Ch. June 13, 2014).  "To prevail on a motion to expedite, a plaintiff must demonstrate a sufficiently colorable claim and show a sufficient possibility of threatened irreparable injury, as would justify imposing on the defendants and the public the extra (and substantial) costs of an expedited preliminary injunction proceeding." *Parsons v. Digital River, Inc.*, 2015 WL 139760, at *1 (Del. Ch. Jan. 12, 2015) (quotation omitted).  MetTel has not made this showing.  As discussed above, MetTel's claims are not colorable, and MetTel has not shown that it will suffer irreparable harm.

"The colorable claim prong measures the substantive merits of the dispute and assures that the claim is worthy of the effort and expense of expedition." *Opportunity Partners L.P. v. Blackrock N.Y.*, 2011 WL 1379066, at *2 n.2 (Del.

36

Ch. Mar. 28, 2011).  As shown above, MetTel's purported claims are not colorable.

As a threshold and gating item, MetTel seeks to expedited proceedings to pursue

preliminary relief—prior restraint of allegedly false statements—that is

unconstitutional and that this Court lacks subject matter jurisdiction to grant.  *See*

Sections IV.A and IV.D.2, *supra*.  Moreover, MetTel fails to allege causation or

damages, because it does not identify even a single customer or prospective

customer it claims to have lost as a result of Granite's statements.  *See* Section

IV.D.1, *supra*.  MetTel also fails to adequately plead the pattern of conduct

necessary for a claim under the DTPA.  *See* Section IV.D.3, *supra*.  And MetTel's

defamation and trade libel claims also fail because Granite's alleged statements

were either statements of pure opinion or made no representations of fact

whatsoever (and, to the extent they did involve implied statements of fact, Granite

had ample reason to believe such statements were true).  *See* Section IV.D.2,

*supra*.

       As for irreparable harm, MetTel must establish that, absent expedition, it

will suffer "immediate, discernible harm for which there is no adequate remedy at

law."  *Sonet v. Plum Creek Timber Co.*, 1998 WL 749445, at *2 (Del. Ch. Sept. 23,

1998) (quotation omitted).  Expedited proceedings should not be granted if "the

injury is speculative or if the injury can be fully compensated after a full trial on

the merits, either by an award of damages or by any other form of final equitable

relief." *Id.* at *2 (quotation omitted).  As shown above, any future or ongoing harm to MetTel is purely speculative.  *See* Section IV.B, *supra*.  And the injury MetTel alleges—lost profits and damage to its reputation and goodwill—can be fully compensated by an award of damages.  *See id.*

Expedition is also not warranted here because of the substantial burden it will impose on Granite and the Court.  Even in normal times, it would be difficult for this case to proceed on an expedited schedule.  In addition to ordinary discovery, adjudication of MetTel's claims—to the extent such claims have more substance than the Complaint conveys—will require extensive third-party discovery.  For example, such third-party discovery will include obtaining documents and live testimony from numerous third-party witnesses located around the country—both the MetTel customers identified in the Complaint and other customers MetTel "believes" were contacted by Granite—in order to determine who Granite spoke with, the circumstances of those communications, the precise content of Granite's statements, whether and how MetTel's customers reacted to those communications, and any communications those customers received from MetTel.  In addition, the parties will require significant discovery of MetTel's ▮▮▮▮▮ in order to determine the extent and cause of any lost profits, as well as whether Granite's alleged statements about MetTel's ▮▮▮▮▮▮▮ were substantially true.

38

These are not normal times.  The myriad closures and restrictions aimed at addressing the COVID-19 pandemic, as well as the resulting delays and disruption for individuals and businesses of all types, are by now all too familiar to the Court. Given that the evidence and witnesses in this case are spread across the country— indeed, it is not clear that *any* of the witnesses are located in Delaware—the current office closures and travel restrictions will make proceeding on even a normal schedule challenging.  Proceeding on an expedited basis would be substantially more difficult.  Indeed, this Court has denied several recent requests for expedition, recognizing that the COVID-19 pandemic has made the cost of expedition even greater than usual.  *See, e.g.*, *Snow Phipps Grp., LLC v. KCake Acquisition, Inc.*, C.A. No. 2020-0282-KSJM (Del. Ch. Apr. 17, 2020); *The We Co. v. Softbank Grp. Corp.*, C.A. No. 2020-0258-AGB (Del. Ch. Apr. 17, 2020); *Conduent Business Servs., LLC v. Sky View Capital, LLC*, C.A. No. 2020-0232- JTL (Del. Ch. Mar. 30, 2020).

Given the Complaint's thin allegations, the speculative nature of the alleged injury, and the substantially higher costs of proceeding on an expedited basis in these times, MetTel's Motion to Expedite is unwarranted.  Granite respectfully submits that this Court should deny the motion and order this matter to proceed in the ordinary course.

39

## VI.   CONCLUSION

For all of these reasons, Granite respectfully requests that the Court deny

MetTel's Motion for a Temporary Restraining Order and Motion to Expedite.

<table>
<tr><td></td><td>MORRIS, NICHOLS, ARSHT<br>  & TUNNELL LLP</td></tr>
<tr><td>OF COUNSEL:<br>DONNELLY, CONROY &<br>GELHAAR, LLP<br>T. Christopher Donnelly (admitted<br>*pro hac vice* )<br>Joshua N. Ruby (admitted *pro hac vice*)<br>260 Franklin Street, Suite 1600<br>Boston, MA 02110<br>(617) 720-2880<br><br>May 28, 2020</td><td>*/s/ R. Judson Scaggs, Jr.*<br>R. Judson Scaggs, Jr. (#2676)<br>Barnaby Grzaslewicz (#6037)<br>A. Gage Whirley (#6707)<br>MORRIS, NICHOLS, ARSHT &<br>TUNNELL LLP<br>1201 N. Market Street<br>Wilmington, DE  19899-1347<br>(302) 658-9200<br><br>Words: 9,287</td></tr>
</table>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 4, 2020, the foregoing document was

served by File & Serve*Xpress* on the following attorneys of record:

> Steven L. Caponi
> Matthew B. Goeller
> K&L Gates
> 600 N. King St., Suite 901
> Wilmington, DE 19801


*/s/ A. Gage Whirley*
A. Gage Whirley (#6707)

3