# EXHIBIT 4

1

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

```
MANHATTAN TELECOMMUNICATIONS CORP.,    :
D/B/A METROPOLITAN TELECOMMUNICATIONS, :
A/K/A METTEL,                          :
                                       :
              Plaintiff,               :
                                       :
     v                                 :  C. A. No.
                                       :  2020-0380-JRS
GRANITE TELECOMMUNICATIONS, LLC,       :
                                       :
              Defendant.               :
```

- - -

Chancery Court Chambers
417 South State Street
Dover, Delaware
Wednesday, June 3, 2020
11:05 a.m.

- - -

BEFORE:   HON. JOSEPH R. SLIGHTS III, Vice Chancellor

- - -

<u>TELEPHONIC ORAL ARGUMENT AND RULINGS OF THE COURT ON</u>
<u>PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND</u>
<u>MOTION TO EXPEDITE</u>

- - -

------------------------------------------------------------
CHANCERY COURT REPORTERS
New Castle County Courthouse
500 North King Street - Suite 11400
Wilmington, Delaware 19801
(302) 255-0533

                                                                    2

1   APPEARANCES:  (via telephone)

2        STEVEN L. CAPONI, ESQ.
         MATTHEW B. GOELLER, ESQ.
3        K&L Gates LLP
                 -and-
4        ANTHONY P. LA ROCCO, ESQ.
         DANA B. PARKER, ESQ.
5        CHARLES F. RYSAVY, ESQ.
         of the New Jersey Bar
6        K&L Gates LLP
            for Plaintiff
7
         R. JUDSON SCAGGS, JR., ESQ.
8        BARNABY GRZASLEWICZ, ESQ.
         A. GAGE WHIRLEY, ESQ.
9        Morris, Nichols, Arsht & Tunnell LLP
                 -and-
10       JOSHUA N. RUBY, ESQ.
         of the Massachusetts Bar
11       Donnelly, Conroy & Gelhaar, LLP
            for Defendant
12                             - - -

13

14

15

16

17

18

19

20

21

22

23

24

1   that's an action for damages.
2           I'd, again, point you to the *Perlman*
3   case where the Vice Chancellor held that even though a
4   plaintiff may try to cast the alleged harm as lost
5   business opportunities, or what have you, as
6   irreparable -- and I'll quote -- "those losses, if
7   proven, are readily and historically compensable by
8   damages."  There simply is an adequate remedy at law
9   here in the form of an action for damages.
10          And that is not changed by any
11  circumstances surrounding this case, notwithstanding
12  MetTel's emphasis on the alleged facts.  But to put it
13  simply, MetTel's remedy here is a damages one.
14          The second point is that on the facts
15  here that have been alleged, there isn't any harm of
16  any kind that's been pleaded.  The allegations in the
17  complaint are of two sophisticated business customers
18  of MetTel who were allegedly contacted and who took no
19  action whatsoever to leave MetTel.  There isn't any
20  allegation in the complaint that any of those
21  customers had done anything.  There isn't any
22  allegation in the complaint that MetTel has lost or
23  will lose a single dollar as a result of anything that
24  Granite allegedly did.

1               We just now learned on this telephone
2   call about an allegation involving Quest Diagnostics,
3   which is, again, not in the complaint and which,
4   Mr. La Rocco I think said in so many words earlier, is
5   not before the Court at this time.  But even that
6   allegation, leaving aside that MetTel pointedly did
7   not say that Granite was involved in any type of
8   communication to Quest about any alleged statement
9   about MetTel's financial condition, that was left out
10  of the presentation.
11              But even then, there's been no harm
12  alleged.  There's going to be a meeting this week.
13  That's it.  That's not harm.  It's certainly not
14  irreparable harm.
15              There is also an allegation in
16  paragraph 27 of the complaint about an unnamed
17  customer that hasn't returned MetTel's phone calls.
18  Again, there's pure speculation about what Granite
19  supposedly said to that customer.
20              If you read Exhibit B to the
21  complaint -- which says what it says, the Court can
22  examine it -- any communication to that customer was
23  about cost-savings analysis.  And paragraph 27 of the
24  complaint, as far as I read that that allegation,

61

1  there's no proof of a pattern existing.  Well, as far
2  as I'm concerned, where there are two and now possibly
3  three, that's a pattern to me.  But, again, Your
4  Honor, there has been no denial that they -- that
5  Granite has not contacted a number of other customers.
6  And the proof is contrary to that.  And let's not fool
7  ourselves in that regard.  If it didn't happen, there
8  would be a bald-faced denial in the form of multiple
9  affidavits.
10              On that, Your Honor, I want to thank
11 you for your indulgence, and thank you for allowing
12 the *pro hac vice* admission of Mr. Rysavy and myself.
13              THE COURT:  Well, thank you very much
14 for the helpful presentations.  I think, given the
15 nature of the application, it makes some sense to give
16 you my rulings now.
17              For reasons I'll explain in a moment,
18 I'm going to deny the motion for a temporary
19 restraining order and deny the motion to expedite, at
20 least as filed.  But I am going to move this case
21 along, and I'll explain that further in a moment.
22              By way of brief background, plaintiff
23 Manhattan Telecommunications Corp., or "MetTel,"
24 provides communication services for business clients.

1  request for a TRO risks restraining speech before this
2  court determines whether it is constitutionally
3  protected, the application must be denied.
4              In this regard, I'll note that,
5  contrary to MetTel's assertions, there are disputes
6  regarding the factual accuracy of the alleged
7  statements that give rise to the claims here.  Granite
8  has not admitted that they are false.  In fact, it
9  contests that allegation.  I have no basis on this
10 record to adjudicate that claim, certainly not to
11 adjudicate it to a degree that would allow the Court
12 to satisfy the constitutional protections that are at
13 issue here.
14             I'll also note that, in reading the
15 complaint, there's not one factual allegation that
16 Granite's alleged defamation has actually caused any
17 harm to MetTel.  The one customer MetTel identifies as
18 not responding to MetTel's outreach is not
19 specifically alleged to have been contacted by
20 Granite.  The complaint just notes "MetTel has
21 concluded that it most likely lost the client's future
22 business due to Granite's campaign."  Again, a quote.
23             That kind of speculative harm is
24 insufficient to carry MetTel's burden at this stage.

69

1 TRO.
2                    The Court moved the matter along
3 because there was at least a bases to be concerned
4 that there was ongoing wrongful conduct.  The Court
5 was not looking in the rear-view mirror at conduct
6 that had occurred and stopped.  So the Court, in that
7 case, did expedite the proceedings, really as a matter
8 of scheduling and exercising its inherent authority to
9 control its docket without really pointing as much to
10 the traditional elements for a motion to expedite.
11                    In my view, that approach is
12 appropriate here.  I note that there have been some
13 previews given to the Court in the opposition to the
14 motion for TRO that the defendant here will seek to
15 dismiss some or all of the complaint at the pleading
16 stage.  It seems to me that motion should be teed up
17 promptly.
18                    While subject matter jurisdiction
19 concerns have been raised with respect to the
20 defamation claim, I note there are other claims pled
21 here.  Whether the Court has subject matter
22 jurisdiction to entertain those claims remains to be
23 seen, but it seems to me that decision should be made
24 sooner than later.

70

1       I'll also note that, as I think has
2  been conceded here, there is a basis to enjoin, for
3  instance, trade libel if the Court adjudicates on a
4  full record that statements in the past meet the
5  elements of trade libel in that there is harm that
6  those statements will continue in the absence of
7  injunctive relief.  But there is a basis here,
8  perhaps, for the Court to invoke equity.  It just
9  can't be invoked on this preliminary record.
10      So what I'm going to ask the parties
11 to do is confer on a schedule that moves the matter
12 along.  I would contact my chambers looking for a
13 trial date in late October-ish, November-ish, and then
14 work backwards from there.
15      To the extent that we do have some
16 predicate pleading-stage motion practice that the
17 parties envision, we should get that teed up right
18 away.  I don't think there's any need to do a standard
19 30-30-15 briefing schedule.  I think it can be
20 submitted to the Court much more quickly than that so
21 that we can determine what claims will remain in this
22 court, what claims are viable, and then go from there.
23      I don't think discovery should occur
24 while that motion practice is ongoing if the defendant

```
                                                              74


   1                          CERTIFICATE

   2

   3              I, KAREN L. SIEDLECKI, Official Court

   4   Reporter for the Court of Chancery of the State of

   5   Delaware, Registered Merit Reporter, and Certified

   6   Realtime Reporter, do hereby certify that the

   7   foregoing pages numbered 3 through 73 contain a true

   8   and correct transcription of the proceedings as

   9   stenographically reported by me at the hearing in the

  10   above cause before the Vice Chancellor of the State of

  11   Delaware, on the date therein indicated, except for

  12   the rulings at pages 61 through 71, which were revised

  13   by the Vice Chancellor.

  14              IN WITNESS WHEREOF I have hereunto set

  15   my hand at Wilmington, this 5th day of June, 2020.

  16

  17

  18

  19
                  /s/ Karen L. Siedlecki
  20              ------------------------------
                       Karen L. Siedlecki
  21                 Official Court Reporter
                    Registered Merit Reporter
  22               Certified Realtime Reporter

  23

  24
```