IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| MANHATTAN TELECOMMUNICATIONS CORP. D/B/A METROPOLITAN TELECOMMUNICATIONS, A/K/A METTEL | : : : : : : : | C.A. 1:20-cv-00857-CFC |
| Plaintiff, | : : : | |
| v. | : : | **PUBLIC VERSION** |
| GRANITE TELECOMMUNICATIONS, LLC, | : : : : | |
| Defendant. | : | |

## <u>DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS</u>

OF COUNSEL:

DONNELLY, CONROY &
GELHAAR, LLP
T. Christopher Donnelly (admitted
*pro hac vice*)
Joshua N. Ruby (admitted *pro hac
vice*)
260 Franklin Street, Suite 1600
Boston, MA 02110
(617) 720-2880

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
R. Judson Scaggs, Jr. (#2676)
Barnaby Grzaslewicz (#6037)
A. Gage Whirley (#6707)
1201 N. Market Street
Wilmington, DE 19801
(302) 658-9200

*Counsel for Defendant Granite
Telecommunications, LLC*

Dated:      July 22, 2020

## **TABLE OF CONTENTS**

**Page**

I.  NATURE AND STAGE OF THE PROCEEDINGS ..........................................1

II.  SUMMARY OF ARGUMENT ...........................................................1

III.  RELEVANT BACKGROUND ..........................................................2

   A.  Customers In The Relevant Market, Including The Only Three Identified In Plaintiff's Complaint ..........................................................2

   B.  ███████████████ ..........................................................3

   C.  ████████████████████████████████ .......4

   D.  MetTel's Sparse Allegations Concerning Granite's Inconsequential Communications ..........................................................5

   E.  MetTel's Failed Attempt To Obtain A Temporary Restraining Order ........9

IV.  ARGUMENT .........................................................................9

   A.  Legal Standard ..........................................................10

   B.  New York Law Applies To MetTel's Claims ........................................10

   C.  MetTel's Defamation Claim Should Be Dismissed .................................12

   D.  MetTel's Tortious Interference Claims Should Be Dismissed .................15

   E.  MetTel's Trade Libel Claim Should Be Dismissed .................................19

   F.  MetTel's DTPA Claim Should Be Dismissed ..........................................20

V.  CONCLUSION ........................................................................22

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Am. Bldg. Maint. Co. of New York v. Acme Prop. Servs., Inc.*,
   515 F. Supp. 2d 298 (N.D.N.Y. 2007) ............................................................17, 18

*Angio-Medical Corp. v. Eli Lilly & Co.*,
   720 F. Supp. 269 (S.D.N.Y. 1989) ...................................................................20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .........................................................................................10

*Burrowes v. Combs*,
   25 A.D.3d 370, 808 N.Y.S.2d 50 (1st Dep't 2006) ...........................................16

*Calhoun v. Yamaha Motor Corp., U.S.A.*,
   216 F.3d 338 (3d Cir. 2000) .............................................................................11

*Cardali v. Slater*,
   167 A.D.3d 476, 89 N.Y.S.3d 176 (1st Dep't 2018) ...................................13, 15

*Carvel Corp. v. Noonan*,
   3 N.Y.3d 182, 818 N.E.2d 1100 (2004) .............................................................19

*Dillon v. City of N.Y.*,
   261 A.D.2d 34, 704 N.Y.S.2d 1 (1st Dep't 1999) .............................................14

*DiLorenzo v. Edgar*,
   2004 WL 609374 (D. Del. Mar. 24, 2004) .........................................................4

*EDIX Media Grp., Inc. v. Mahani*,
   2006 WL 3742595 (Del. Ch. Dec. 12, 2006) .....................................................21

*Eureka Resources, LLC v. Range Resources-Appalachia, LLC*,
   62 A.3d 1233 (Del. Super. Ct. 2012) ................................................................11

*Gardner v. Alexander Rent-A-Car, Inc.*,
   28 A.D.2d 667, 280 N.Y.S.2d 595 (1st Dep't 1967) ....................................12, 15

*Grand Ventures, Inc. v. Whaley*,
    632 A.2d 63 (Del. 1993) .................................................................21

*Gross v. N.Y. Times Co.*,
    82 N.Y.2d 146, 623 N.E.2d 1163 (1993)........................................13

*GS Plasticos Limitada v. Bureau Veritas*,
    84 A.D.3d 518, 922 N.Y.S.2d 365 (1st Dep't 2011) .........................14

*In re Frontier Communications Corporation*,
    Case No. 20-22476, ECF No. 1 (Bankr. S.D.N.Y. Apr. 14, 2020) .....................3

*In re Fusion Connect, Inc.*, Case No. 19-11811, ECF No. 1 (Bankr.
    S.D.N.Y. June 3, 2019).........................................................................3

*In re Windstream Holdings, Inc.*, Case No. 19-22312, ECF No. 1
    (Bankr. S.D.N.Y. Feb. 25, 2019) .........................................................3

*James v. City of Wilkes-Barre*,
    700 F.3d 675 (3d Cir. 2012) ..............................................................10

*Manhattan Telecommunications Corp. v. Granite*
    *Telecommunications, LLC*,
    C.A. No. 2020-0380-JRS, June 3, 2020 (Hr'g Tr.) ....................................*passim*

*Mann v. Abel*,
    10 N.Y.3d 271, 885 N.E.2d 884 (2008).............................................12

*Meyers v. Heffernan*,
    740 F. Supp. 2d 637 (D. Del. 2010)......................................................3

*Murganti v. Weber*,
    248 A.D.2d 208, 669 N.Y.S.2d 818 (1st Dep't 1998)........................13

*NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc.*,
    87 N.Y.2d 614, 664 N.E.2d 492 (1996).............................................16

*Ninespots, Inc. v. Jupai Holdings, Ltd.*,
    2018 WL 3626325 (D. Del. July 30, 2018) .......................................21

*Schmidt v. Skolas*,
    770 F.3d 241 (3d Cir. 2014) ................................................................3

*Singer v. Magnavox Co.*,
  380 A.2d 969 (Del. 1977) ...................................................................20

*Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*,
  181 F.3d 410 (3d Cir.1999) ................................................................9

*Sturgeon v. PharMerica Corp.*,
  2020 WL 586978 (E.D. Pa. Feb. 5, 2020) ..........................................4

*Thome v. Alexander & Louisa Calder Found.*,
  70 A.D.3d 88, 890 N.Y.S.2d 16 (1st Dep't 2009) .............................17

*Turk v. Angel*,
  293 A.D.2d 284, 740 N.Y.S.2d 50 (1st Dep't 2002) .........................18

*UbiquiTel Inc. v. Sprint Corp.*,
  2005 WL 3533697 (Del. Ch. Dec. 14, 2005) ...............................11, 12

*Waste Distillation Tech., Inc v. Blasland & Bouck Eng'rs, P.C.*,
  136 A.D.2d 633, 523 N.Y.S.2d 875 (2d Dep't 1988) ...................19, 20

*Wolf v. Imus*,
  170 A.D.3d 563, 96 N.Y.S.3d 54 (1st Dep't 2019) ...........................16

**Other Authorities**

██████████████████████████████████████
███████████████████████████ ...........................................................5

Restatement (Second) of Conflicts of Laws § 145 ................................11

**Rules and Statutes**

15 U.S.C. § 645 ....................................................................................5

18 U.S.C. § 1001 ..................................................................................5

18 U. S. C. 1014 ...................................................................................5

6 *Del. C.* § 2532 .................................................................................9

Fed. R. Civ. P. 12(b)(6) .......................................................................10

# I.    NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Manhattan Telecommunications Corp., d/b/a Metropolitan Telecommunications, a/k/a MetTel ("MetTel") filed an action against Defendant Granite Telecommunications, LLC ("Granite") in the Delaware Court of Chancery on May 19, 2020, seeking injunctive relief and damages (the "First Action"). MetTel also sought a temporary restraining order and expedited proceedings, both of which the Court of Chancery (Slights, V.C.) denied after a hearing on June 3, 2020.  Granite removed to this Court, and MetTel voluntarily dismissed the First Action on June 15, 2020.

MetTel thereafter commenced this case in the Delaware Court of Chancery on June 15, 2020, asserting the same claims based on the same facts and seeking similar relief.  Granite removed this action to this Court on June 26, 2020 and now moves to dismiss all of MetTel's claims.

# II.    SUMMARY OF ARGUMENT

1.    Notwithstanding MetTel's overheated, conclusory rhetoric, its claims rest solely on isolated, imprecise statements by three line-level Granite salespeople to three MetTel customers.  Those statements are non-actionable opinion and contain no representations of fact.  Because those statements cannot be false or defamatory, none of MetTel's claims survive.

1

2.      In addition, MetTel has not alleged any damages that Granite's alleged statements have supposedly caused.  MetTel does not identify any customers or prospective customers purportedly lost as a result of any of Granite's alleged conduct.  The only three customers identified in the Complaint remain MetTel customers, and MetTel has not alleged that Granite's statements affected their relationship with MetTel.  With no specific, non-conclusory allegation that anything Granite has supposedly done has caused any harm, dismissal of MetTel's claims is proper.

## III.   RELEVANT BACKGROUND

### A. Customers In The Relevant Market, Including The Only Three Identified In Plaintiff's Complaint

MetTel and Granite are head-to-head competitors in the marketplace for telecommunications solutions for businesses around the country.  Compl., ¶¶ 10-11.  The customers are sizable businesses making deliberate decisions.  Out of its "countless" customers[1] nationwide, MetTel's Complaint has identified by name only two such enterprises: ███████████, a publicly traded lender headquartered in Indiana, *id.*, ¶ 19 and Ex. A, and ███████████, an operator

---

[1] "Recognized for our flexible and customer-driven approach, MetTel services countless universal brands, Fortune 500 organizations, and the US government, developing and implementing their tech strategies while revamping all operations with our proprietary cloud-platform."  MetTel, Careers, Senior Talent Acquisition, https://mettel.catsone.com/careers/42816-General/jobs/9757158-Senior-Talent-Acquisition (last visited July 14, 2020).

of senior living facilities headquartered in Kentucky, *id.*, ¶¶ 20, 25 and Ex. B.

MetTel also refers to, but does not identify, a third customer. *Id.*, ¶ 22.

This market for business telecommunications services is saturated, and

several major providers ███████████████████████████████████

███████████████████████████. Frontier Communications, a prominent

competitor, █████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████ Two other competitors █████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████.[2] Another large competitor, GTT Communications, Inc.,

recently reported ████████████████████████████████████████

█████████████████████████. A061-105.[3]

## B. MetTel's Rising Debt

Even before the current economic crisis, MetTel had started ███████████

████. In 2017, MetTel established a ████████████████████████████

---

[2] "The court may take judicial notice of documents from the docket of a bankruptcy proceeding in considering a motion to dismiss under Rule 12(b)(6)." *Meyers v. Heffernan*, 740 F. Supp. 2d 637, 640 n.4 (D. Del. 2010)

[3] "SEC filings . . . are matters of public record of which the court can take judicial notice." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).



█████████████████████. A001-28.[4]  At the time, MetTel

affirmatively represented that it did not ███████████████. A018 ("█████

███████████████

In 2019, MetTel established a ████████████████████████████

████.[5]  A029-60.  Unlike the 2017 transaction, in 2019 MetTel could no longer

affirmatively represent █████████████████████. A046.

████████████████████████████████████████

On April 9, 2020, Metropolitan Telecommunications Holding Company

("MetTel Holding")—a MetTel affiliate—████████████████████████

████████████████████████████████████████

████████████ ██████████████████████████

████████████████████████

████████████████████████████████████████

██████████████████████████ As part of its

_____

[4]████████████████████████████████████████. *See*
*DiLorenzo v. Edgar*, 2004 WL 609374, *2 (D. Del. Mar. 24, 2004) ("[T]he court
may take judicial notice of the contents of documents required by law to be filed,
and actually filed, with federal or state officials.").
[5] The publicly available documents do not make clear whether the 2019 transaction
████████████████████████████████████████
████████████████.  *See generally* A029-60.
[6] "[I]nformation found on government websites is widely considered both self-
authenticating and subject to judicial notice."  *Sturgeon v. PharMerica Corp.*, 2020
WL 586978, at *6 (E.D. Pa. Feb. 5, 2020).

, MetTel Holding was required to certify that ████████

████).

### D. MetTel's Sparse Allegations Concerning Granite's Inconsequential Communications

In conclusory fashion, under an attention-grabbing label "Granite's Ongoing Campaign Of Lies," MetTel conjures rampant pandemic-induced irrationality among business customers in the marketplace, and then accuses Granite of saying ████████████████ t." Compl. at ¶ 17. But MetTel's ████████████ and the few specific, non-speculative factual allegations in the Complaint tell a different story than its fanciful headline. According to MetTel, out of its countless nationwide customers, Granite personnel contacted *three* customers and made vague statements of opinion about ████████ during ordinary sales calls. None of these customers breached its contract or otherwise changed its relationship with MetTel as a result.

MetTel alleges that one customer—███████████████—received one vague voicemail from a Granite salesperson in late April 2020—less than three weeks after approval of MetTel Holding's PPP loan. *Id.*, ¶ 19 & Ex. A. According to an unverified transcription of the message, the Granite salesperson referred to ███████████████████████████████ and said that he "would like to bring that to your attention." *Id.*, Ex. A.

MetTel does not allege that anyone from ██████████████ ever returned this phone call or ever found out "what's going on with MetTel." *See id.*, ¶ 19 & Ex. A. Instead, ████████████ affirmatively stated that it would rely on MetTel—not Granite—for information about MetTel. *See id.*, Ex. A (████████ ████████████████████████████████████████████ ████████.").  MetTel does not allege that ██████████ breached its contract with MetTel, nor does MetTel allege that its business with ████████ ███l has changed in any way since this contact.

MetTel also alleges that Granite contacted ████ on May 11, once via email and once via telephone. In the email contact, Granite salesperson James Easton explains that he is attempting to set up a meeting between Granite's CEO and a senior ████ executive to discuss "cost savings projects that [Granite has] run" for other businesses similar to ████. *Id.*, Ex. B. Mr. Easton also expressed his

opinion that an unnamed ███████████████████████████████

█████████████████████████████████." *Id.*

     As for the telephone contact, MetTel claims that an unidentified person—not

necessarily even a Granite employee—called an unspecified person at ███ and

said something, which a different ████employee paraphrased as "████████

███████████." *Id.*, ¶ 25 & Ex. C.  The precise words allegedly used in this

phone call are never set forth in the Complaint.

     MetTel does not allege that either of these contacts have resulted in any

change in MetTel's business relationship with ███.  Instead, a MetTel senior vice

president contacted ████ chief information officer and resolved any concerns

████ might have.  *Id.*, Ex. C ("[The chief information officer] is going to level set.

He was very appreciative of the call.").

     Finally, MetTel alleges that Granite contacted an unspecified person at "one

of [MetTel's] largest customers" (the "June 2 Customer")[7] and said something that

MetTel paraphrases as ███████████████████████." *Id.*, ¶ 22.

MetTel does not plead anything about the communication, including: who made it,

what he or she said, to whom, when, or in what medium.  *See id.*

---

[7] During the TRO Hearing in the First Action, MetTel identified the June 2
Customer as ███████████.  *See Manhattan Telecommunications Corp. v.
Granite Telecommunications, LLC*, C.A. No. 2020-0380-JRS, June 3, 2020
Hearing Tr. ("June 3 Hr'g Tr.") at 6:19-7:3.

MetTel attempts to link ████████████████, and the June 2 Customer to a different, unnamed customer, who "has not returned MetTel's calls and has rejected efforts to set up a meeting with MetTel since being contacted by Granite." *Id.*, ¶ 28. MetTel does not plead this customer's name, so Granite has no way of investigating this allegation. Nor does MetTel plead any facts to suggest that this customer actually was recently contacted by Granite or, if so, the words or substance of what Granite personnel allegedly communicated to the customer. Indeed, MetTel's pleadings suggest that any Granite communication to this customer was about "cost savings projects that [Granite has] run" for them, not about MetTel. *See id.*, Ex. B. Moreover, MetTel does not allege that this customer has breached its contract with MetTel, and MetTel alleges no facts to support its speculative assertion that it is likely to lose the customer's business. *See id.*, ¶ 28.

Finally, MetTel speculates that Granite salespeople made similarly vague statements of opinion to other customers mentioned in Mr. Easton's email. *Id.*, ¶ 27. MetTel admits it makes this accusation "upon information and belief" with no supporting factual allegations or evidence. *Id.* Again, the only *factual* allegation is that any contact from Granite to these businesses was about "cost savings projects that [Granite has] run" for them, *id.*, Ex. B, not about MetTel.

8

### E. MetTel's Failed Attempt To Obtain A Temporary Restraining Order

MetTel commenced the First Action on May 19, 2020 and simultaneously moved for a temporary restraining order and for expedited proceedings. After a hearing on June 3, the Court of Chancery denied MetTel's motion for a temporary restraining order because it would impose an unconstitutional prior restraint on Granite's potentially protected speech. *See* June 3 Hr'g Tr., at 66:24-67:3.[8] The Court also held that MetTel had alleged only speculative harm and had not met its burden to show irreparable harm, warranting denial of both MetTel's request for a temporary restraining order and its request for expedited proceedings. *See id.* at 67:14-24 (noting, among other things, that "in reading the complaint, there's not one factual allegation that Granite's alleged defamation has actually caused any harm to MetTel.").

## IV. ARGUMENT

MetTel alleges that Granite's conduct constitutes defamation, tortious interference with prospective economic advantage, tortious interference with contract, trade libel, and violations of the Delaware Deceptive Trade Practices Act, 6 *Del. C.* § 2532 (the "DPTA"). But MetTel has not pleaded sufficient *facts* to

---

[8] The transcript of the June 3 hearing in the First Action is also the proper subject of judicial notice. *See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir.1999) ("To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint.").

state any claims, relying instead on speculation and conclusory allegations. All MetTel's claims should be dismissed.

## A. Legal Standard

Dismissal is proper if the Complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotations omitted). The court must "disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012).

## B. New York Law Applies To MetTel's Claims

As a threshold matter, New York law governs MetTel's claims. MetTel's principal place of business is in New York, one of the allegedly defamatory statements was made by a Granite salesperson based in New York, and nothing about this dispute bears any substantial relationship to Delaware or any other forum. New York law therefore applies here.

Delaware[9] follows the Restatement (Second) of Conflicts of Laws to determine choice-of-law questions, with consideration given to "(1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered." *Eureka Resources, LLC v. Range Resources-Appalachia, LLC*, 62 A.3d 1233, 1237 (Del. Super. Ct. 2012).

Each of these factors weighs in favor of applying New York law:

- "*[P]lace where the injury occurred*."  MetTel's alleged injury—loss of customers and business opportunities—"occurred" at its principal place of business in New York.  *See UbiquiTel Inc. v. Sprint Corp.*, 2005 WL 3533697, at *3 (Del. Ch. Dec. 14, 2005) ("The effect of the loss, which is pecuniary in its nature, will normally be felt most severely at the plaintiff's headquarters or principal place of business.") (quoting Restatement (Second) of Conflicts of Laws § 145(2) cmt. f (1971)).

- "*[P]lace where the conduct causing the injury occurred*."  The alleged conduct giving rise to MetTel's claims occurred in New York and Florida—where the Granite salespeople alleged to have made the complained-of statements are based—and in the locations of the respective customers which Granite allegedly contacted, none of which are alleged to be in Delaware.  Compl., Ex. A & Ex. B.

- "*[D]omicile, residence, nationality, place of incorporation and place of business of the parties*."  MetTel is a Delaware corporation headquartered in New York.  *Id.*, ¶ 6.  Granite is a limited liability

---

[9] "[A] federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits."  *Calhoun v. Yamaha Motor Corp., U.S.A.*, 216 F.3d 338, 343 (3d Cir. 2000).

company organized in Delaware, with its headquarters in Massachusetts, and is a citizen of Florida, Massachusetts, and New Hampshire. (*Id.* ¶ 7); D.I. 2, ¶ 18. The most important of these relationships is MetTel's principal place of business: New York. *See UbiquiTel Inc.*, 2005 WL 3533697, at *4 ("[T]he plaintiff's principal place of business is the single most important contact for determining the state of the applicable law as to most issues in situations involving . . . financial [or economic] injury. . . .") (quotation omitted).

- "*[P]lace where the relationship, if any, between the parties is centered*." MetTel and Granite compete for customers nationwide, including in New York. In addition, MetTel is a wholesale customer of Granite's at multiple locations, including in New York.

Each of these factors suggests that New York law applies here, and none points to any other jurisdiction as an appropriate source of law. Accordingly, New York law applies to MetTel's claims.

### C. MetTel's Defamation Claim Should Be Dismissed

MetTel's defamation claim relies on four alleged statements to three of its customers. All four are non-defamatory as a matter of law.

"Expressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation." *Mann v. Abel*, 10 N.Y.3d 271, 276, 885 N.E.2d 884, 886 (2008). "The complaint in an action for slander is required to state *In haec verba* the particular defamatory words claimed to have been uttered by defendants. This requirement is strictly enforced and the exact words must be set forth." *Gardner v. Alexander Rent-A-Car, Inc.*, 28 A.D.2d 667, 667, 280 N.Y.S.2d 595, 595 (1st

12

Dep't 1967).  Where the allegedly defamatory words are "paraphrased," "dismissal

is required." *Murganti v. Weber*, 248 A.D.2d 208, 208, 669 N.Y.S.2d 818, 819

(1st Dep't 1998).

MetTel's allegations do not plausibly allege defamation under these

standards.  First, MetTel alleges that ██████████ received a voice message

from a Granite employee inquiring whether the customer was aware of "██████

████████████████████████████."  Compl., ¶ 19 & Ex. A.  But this

statement makes no representation of fact.  Because "only statements alleging facts

can properly be the subject of a defamation action," MetTel cannot state a claim

for defamation based on this voice message.  *See Gross v. N.Y. Times Co.*, 82

N.Y.2d 146, 152-53, 623 N.E.2d 1163, 1167 (1993) (quotation omitted).

Second, MetTel alleges that ████ received an email from Granite stating

that its ████████████████████████████████████████

████████████████████████."  Compl., ¶ 20 & Ex. B.  This

statement does not mention MetTel, and, as explained above, more than one carrier

has recently ████████████████.  *See* Section III.A, *supra*.

Moreover, even generously construing the statement to refer to MetTel, it is

mere opinion.  Asserting that a business is ████████████████" is a subjective and

imprecise assessment.  *See, e.g.*, *Cardali v. Slater*, 167 A.D.3d 476, 477, 89

N.Y.S.3d 176, 177 (1st Dep't 2018) (holding that statement that plaintiff "was

nothing more than a common criminal" was a nonactionable statement of opinion). A statement that MetTel ███████████████████████ similarly expresses the author's opinion. *See, e.g.*, *GS Plasticos Limitada v. Bureau Veritas*, 84 A.D.3d 518, 519, 922 N.Y.S.2d 365, 367 (1st Dep't 2011) ("Based on use of the words 'it is likely' and 'may' when describing defendant's purported misconduct, an average reader would understand these words as mere *allegations* to be investigated rather than as *facts*.") (quotation omitted) (emphasis in original). And a statement that MetTel is ████████████████," is both a subjective assessment and non-actionable hyperbole. *See, e.g.*, *Dillon v. City of N.Y.*, 261 A.D.2d 34, 38, 704 N.Y.S.2d 1, 5 (1st Dep't 1999) ("Loose, figurative or hyperbolic statements, even if deprecating the plaintiff, are not actionable."). No defamation claim may stand based on the statements in the email to Atria.

*Third*, MetTel alleges that an unspecified Granite employee told an unnamed Atria employee something about MetTel but fails to allege what the purported Granite employee actually said. Compl., ¶ 25 & Ex. C. Instead, the characterization ███████████████████████" is the summary that an ████ employee—not the employee who took the alleged call—provided to MetTel. *Id.*, Ex. C. Exhibit C to the Complaint plainly shows that this alleged statement is paraphrased and was conveyed secondhand. *Id.* Accordingly, MetTel has not plausibly alleged that anyone at Granite said—verbatim—that MetTel is "████

14

███████████," so any claim based on this statement fails.  *See Gardner*, 28 A.D.2d at 667.  Moreover, even if the statement was made and alleged properly, it is likewise a non-actionable statement of opinion.  *See*, *e.g.*, *Cardali*, 167 A.D.3d at 477.

*Fourth*, MetTel alleges that an unspecified Granite employee told an unnamed employee of the unnamed June 2 Customer something that *MetTel* characterizes as "████████████████████."  Compl., ¶ 22. Again, MetTel fails to allege the words or substance that any Granite employee supposedly communicated to the June 2 Customer, so any claim based on this statement fails for this reason alone.  *See Gardner*, 28 A.D.2d at 667.  Moreover, to the extent it is possible to make any assessment of the alleged statement, it too is likewise a non-actionable statement of opinion.  *See*, *e.g.*, *Cardali*, 167 A.D.3d at 477.

Because none of the four statements MetTel complains of can constitute defamation as a matter of law, dismissal of MetTel's defamation claim is proper.

### D.  MetTel's Tortious Interference Claims Should Be Dismissed

Met Tel alleges that Granite's conduct constitutes both tortious interference with contract and tortious interference with prospective business relations.  Neither one is plausibly alleged, so both should be dismissed.

15

### 1. *MetTel's Tortious Interference With Contract Claim Fails To Allege Breach Of Any Contract*

A claim for tortious interference with contract requires actual breach of a contract. *NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc.*, 87 N.Y.2d 614, 620-21, 664 N.E.2d 492, 495 (1996). MetTel has not alleged that any customer has breached any relevant contract with MetTel, so this claim fails.

In its Complaint, MetTel identifies only three MetTel customers to whom Granite allegedly made defamatory statements about MetTel. Compl., ¶¶ 19, 20, 22, 25. Without any supporting factual allegations, MetTel speculates that it "has a reasonable basis to believe that Granite's efforts have extended, or will extend, beyond these customers." *Id.*, ¶ 30.

But MetTel has not alleged that any of its customers have breached their contracts as a result of Granite's alleged conduct, and its speculation that it *might* have lost an unspecified customer's "future" business, *see* Compl., ¶ 28, will not suffice, *see, e.g.*, *Burrowes v. Combs*, 25 A.D.3d 370, 373, 808 N.Y.S.2d 50, 53 (1st Dep't 2006) ("[T]o avoid dismissal of a tortious interference with contract claim a plaintiff must support his claim with more than mere speculation."). Moreover, loss of a customer's future business—*i.e.*, nonrenewal—involves no breach of contract and cannot support a tortious interference with contract claim. *See, e.g.*, *Wolf v. Imus*, 170 A.D.3d 563, 564, 96 N.Y.S.3d 54, 55 (1st Dep't 2019) ("Plaintiff's claim for tortious interference with contractual relations . . . was not

16

viable because . . . his employer did not breach his employment contract, but declined to exercise its contractual right to renew the contract for an additional year.").

MetTel's tortious interference with contract claims are inadequately pleaded and should be dismissed.

### 2. MetTel's Tortious Interference With Prospective Business Advantage Claim Fails To Allege Interference With Any Specific Relationship Or Unlawful Means

"A claim for tortious interference with prospective business advantage must allege that: (a) the plaintiff had business relations with a third party; (b) the defendant interfered with those business relations; (c) the defendant acted with the sole purpose of harming the plaintiff or by using unlawful means; and (d) there was resulting injury to the business relationship." *Thome v. Alexander & Louisa Calder Found.*, 70 A.D.3d 88, 108, 890 N.Y.S.2d 16, 29 (1st Dep't 2009). "[T]he complaint must allege interference with a specific identified business relationship with a third party." *Am. Bldg. Maint. Co. of New York v. Acme Prop. Servs., Inc.*, 515 F. Supp. 2d 298, 316 (N.D.N.Y. 2007) (internal quotations omitted). MetTel does not adequately allege interference with a *specific* business relationship, nor does it allege interference, causation, or damages, so this claim similarly fails.

Again, MetTel does not identify even a single customer or prospective customer it claims to have lost and so cannot point to any actual, concrete injury

17

purportedly caused by Granite's alleged conduct.  The closest MetTel comes is alleging that an unspecified customer—not one of the three customers to whom Granite allegedly made false statements—"has not returned MetTel's calls and has rejected efforts to set up a meeting with MetTel since being contacted by Granite." Compl., ¶ 28.  This allegation does not plead the "specific identified business relationship with a third party" required to state a claim.  *See Am. Bldg. Maint. Co. of New York*, 515 F. Supp. 2d at 316.

Even if an allegation of harm to MetTel's relationship with an unspecified customer could suffice—and it does not—MetTel's speculative allegation still does not adequately plead interference, causation, or injury.  As the Court of Chancery summarized, "in reading the complaint, there's not one factual allegation that Granite's alleged defamation has actually caused any harm to MetTel."  June 3 Hr'g Tr. at 67:14-17.  And without a single allegation that any of Granite's alleged conduct has caused MetTel any harm,[10] MetTel cannot have plausibly pleaded that any interference with its business relationships has happened, that it suffered any

---

[10] MetTel instead excuses its failure to make such an allegation by asserting that MetTel can "never know[] with certainty which customers and business opportunities were lost."  Compl., ¶ 34.  MetTel must plead that Granite's alleged conduct was the proximate cause of any harm it suffered.  *See, e.g.*, *Turk v. Angel*, 293 A.D.2d 284, 284, 740 N.Y.S.2d 50, 51 (1st Dep't 2002).  By affirmatively alleging that it cannot identify any purportedly lost customers or business opportunities, MetTel concedes that its allegations do not meet this burden.

injury to any business relationship, or that any damages are attributable to any of Granite's alleged conduct.

Finally, a claim of intentional interference with prospective business advantage must allege an independent tort (or crime) as the improper means of interference. *See, e.g.*, *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190, 818 N.E.2d 1100, 1103 (2004) ("[W]here a suit is based on interference with a nonbinding relationship . . . as a general rule, the defendant's conduct must amount to a crime or an independent tort."). Because the statements MetTel attributes to Granite were either statements of opinion or made no representations of fact, the statements were not false or defamatory. *See* Section IV.C, *supra*. MetTel therefore cannot allege the requisite improper means.

MetTel's tortious interference with prospective business relations claim should therefore be dismissed.

### E.  MetTel's Trade Libel Claim Should Be Dismissed

The same pleading failures that require dismissal of MetTel's other claim also foreclose MetTel's trade libel claim. It should be dismissed as well.

Under New York law, a trade libel plaintiff must plead special damages. "In pleading special damages, actual losses must be identified and causally related to the alleged tortious act." *Waste Distillation Tech., Inc v. Blasland & Bouck Eng'rs, P.C.*, 136 A.D.2d 633, 634, 523 N.Y.S.2d 875, 877 (2d Dep't 1988).

19

MetTel has not identified any "actual losses . . . causally related to" Granite's alleged conduct, so this claim must be dismissed.  *See id.*; *see also* June 3 Hr'g Tr. at 67:14-17 ("[I]n reading the complaint, there's not one factual allegation that Granite's alleged defamation has actually caused any harm to MetTel.").

Moreover, as discussed above, MetTel also does not plausibly allege that any of the complained-of statements were "false" because each of the statements was either pure opinion or made no factual representations.  *See* Section IV.C, *supra*.  MetTel's trade libel claim therefore should be dismissed.[11]

### F.  MetTel's DTPA Claim Should Be Dismissed

Finally, MetTel fails to state a claim under the DTPA for several reasons, so its DTPA claim is similarly implausible and should be dismissed.

*First*, as discussed above, New York law—and not Delaware law—applies to this dispute.  *See* Section IV.B, *supra*.  Because Delaware law does not apply here, the DTPA also does not apply.

Even if Delaware law applied at all, the DTPA would still not apply because MetTel has not alleged that any relevant conduct or harm happened in Delaware. "There is some case support . . . that the [DTPA] is not available to litigants who cannot show any evidence of wrongful conduct or injury taking place in

---

[11] To the extent that MetTel's trade libel claim should be analyzed as one for defamation, *see, e.g.*, *Angio-Medical Corp. v. Eli Lilly & Co.*, 720 F. Supp. 269, 274 (S.D.N.Y. 1989), it fails for the reasons set forth in Section IV.C, *supra*.

Delaware." *Ninespots, Inc. v. Jupai Holdings, Ltd.*, 2018 WL 3626325, at *13 (D. Del. July 30, 2018); *see also Singer v. Magnavox Co.*, 380 A.2d 969, 981 (Del. 1977), *overruled on other grounds*, *Weinberger v. UOP, Inc.*, 457 A.2d 701 (Del. 1983) ("[A] law is not intended to apply outside the territorial jurisdiction of the State in which it is enacted.").

Here, none of the allegedly false statements described in MetTel's Complaint occurred in Delaware, and MetTel suffered no harm in Delaware. The DTPA therefore does not apply here, and this claim must be dismissed.

*Second*, even if the DTPA did apply, MetTel's allegations still do not state a claim. "The DTPA was designed to prevent patterns of deceptive conduct, not isolated incidents." *EDIX Media Grp., Inc. v. Mahani*, 2006 WL 3742595, at *12 (Del. Ch. Dec. 12, 2006) (quotation omitted). Again, MetTel has only alleged the isolated statements to three customers discussed above and merely speculates that there may be others. MetTel therefore alleges only "isolated incidents," and not the "pattern[] of deceptive conduct" necessary to plead a DTPA claim. *See id.*

*Third*, MetTel cannot state a claim under the DTPA because MetTel's common law tort claims are fatally deficient. Because the DTPA cannot serve as a substitute where MetTel's other common law claims fail, MetTel's statutory claim similarly fails. *See Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 68 (Del. 1993).

## V.    CONCLUSION

For all of these reasons, Granite respectfully requests that the Court dismiss

MetTel's Complaint in its entirety, with prejudice.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/ R. Judson Scaggs, Jr.*
R. Judson Scaggs, Jr. (#2676)
Barnaby Grzaslewicz (#6037)
A. Gage Whirley (#6707)
OF COUNSEL:                          1201 N. Market Street
                                     Wilmington, DE 19801
DONNELLY, CONROY &                   (302) 658-9200
GELHAAR, LLP
T. Christopher Donnelly              *Counsel for Defendant*
(admitted *pro hac vice*)            *Granite Telecommunications, LLC*
Joshua N. Ruby (admitted *pro
hac vice*)
260 Franklin Street, Suite 1600
Boston, MA 02110
(617) 720-2880

Dated:        July 22, 2020

## __CERTIFICATE OF SERVICE__

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 22, 2020.


*/s/ Barnaby Grzaslewicz*
Barnaby Grzaslewicz (#6037)