# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | : | |
| MANHATTAN | : | |
| TELECOMMUNICATIONS CORP. D/B/A | : | |
| METROPOLITAN | : | |
| TELECOMMUNICATIONS, | : | |
| A/K/A METTEL | : | C.A. 1:20-cv-00857-CFC |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **PUBLIC REDACTED VERSION** |
| | : | |
| GRANITE TELECOMMUNICATIONS, | : | |
| LLC, | : | |
| | : | |
| Defendant. | : | |

## DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND, OR ALTERNATIVELY, FOR EXPEDITED JURISDICTIONAL DISCOVERY

OF COUNSEL:

DONNELLY, CONROY &
GELHAAR, LLP
T. Christopher Donnelly (admitted
*pro hac vice*)
Joshua N. Ruby (admitted *pro hac
vice*)
260 Franklin Street, Suite 1600
Boston, MA 02110
(617) 720-2880

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
R. Judson Scaggs, Jr. (#2676)
Barnaby Grzaslewicz (#6037)
A. Gage Whirley (#6707)
1201 N. Market Street
Wilmington, DE 19801
(302) 658-9200

*Counsel for Defendant Granite
Telecommunications, LLC*

Dated:    July 31, 2020

# **TABLE OF CONTENTS**

**Page**

I.   NATURE AND STAGE OF THE PROCEEDINGS .........................................1

II.   SUMMARY OF ARGUMENT ..........................................................................2

III.   RELEVANT BACKGROUND ..........................................................................3

   A.   MetTel's Sparse Allegations Concerning Granite's Conduct.....................3

   B.   The Value of MetTel's Goodwill And Its Relationships With The Customers Granite Allegedly Contacted .................................................5

   C.   ██████ ████████████████████████████████ .......5

IV.   ARGUMENT ......................................................................................................7

   A.   Legal Standard...........................................................................................7

   B.   The Amount In Controversy Plainly Exceeds $75,000 .............................9

   C.   MetTel Confuses The Validity Of Its Claims With The Value Of Its Claims ......................................................................................................17

   D.   MetTel Misstates Granite's Burden And Fails To Offer Any Competent Evidence Regarding The Amount In Controversy ...............................19

   E.   Expedited Jurisdictional Discovery Is Not Warranted Because The Relevant Evidence About MetTel's Damages Is In MetTel's Possession..........21

V.   CONCLUSION ................................................................................................22

# TABLE OF AUTHORITIES

*Case(s)*                                                                                          *Page(s)*

*Archer v. Kelly*,
   271 F. Supp. 2d 1320 (N.D. Okla. 2003)............................................................18

*Cordero v. Bank of Am.*,
   2013 WL 4590826 (C.D. Cal. Aug. 28, 2013) ...................................................18

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
   574 U.S. 81 (2014) (*Dart Cherokee*)....................................................9, 11, 14, 20

*DSF Advanced Staffing, Inc. v. Advantage Resourcing Am., Inc.*,
   2010 WL 11530959 (E.D. Tex. Nov. 18, 2010)..................................................10

*Dynahealth, LLC. v. Altapoint Data Sys., LLC.*,
   2003 WL 22097787 (E.D. Pa. Aug. 14, 2003) ...................................................14

*Ferrante v. Amgen, Inc.*,
   2014 WL 1092555 (D.N.J. Mar. 18, 2014) ........................................................18

*Fetters v. United Parcel Serv., Inc.*,
   2006 WL 2375493 (S.D. Ind. Aug. 16, 2006) ....................................................10

*Gonzalez v. State Farm Mut. Auto. Ins. Co.*,
   2006 WL 8433552 (S.D. Fla. Aug. 21, 2006) ....................................................18

*Huber v. Taylor*,
   532 F.3d 237 (3d Cir. 2008) ...............................................................................18

*In re Corestates Tr. Fee Litig.*,
   39 F.3d 61 (3d Cir. 1994) ............................................................................13, 19

*In re Frontier Communications Corporation*,
   Case No. 20-22476, ECF No. 1 (Bankr. S.D.N.Y. Apr. 14, 2020) ......................7

*JTH Tax, Inc. v. Frashier*,
   624 F.3d 635 (4th Cir. 2010) ..............................................................................10

*Judon v. Travelers Prop. Cas. Co. of Am.*,
   773 F.3d 495 (3d Cir. 2014) ....................................................................8, 17, 20

*Lewis v. Verizon Commc'ns, Inc.*,
  627 F.3d 395 (9th Cir. 2010) ...............................................................18

*Manhattan Telecommunications Corp. v. Granite
  Telecommunications, LLC*,
  C.A. No. 2020-0380-JRS, June 3, 2020 Hr'g Tr. ..............................11

*Mithril GP Employee Feeder LLC v. McKellar*,
  2020 WL 3206555 (D. Del. June 15, 2020) ......................................21

*Morgan v. Gay*,
  471 F.3d 469 (3d Cir. 2006) .............................................................7, 8

*Murchison v. Progressive N. Ins. Co.*,
  564 F. Supp. 2d 1311 (E.D. Okla. 2008) ...........................................22

*Remede Consulting Grp. Inc. v. Hamer*,
  2020 WL 1062963 (E.D.N.Y. Mar. 5, 2020).......................................14

*S. Fla. Wellness, Inc. v. Allstate Ins. Co.*,
  745 F.3d 1312 (11th Cir. 2014) .........................................................18

*Schering Corp. v. Sun Ray Drug Co.*,
  320 F.2d 72 (3d Cir. 1963) ................................................................13

*Suber v. Chrysler Corp.*,
  104 F.3d 578 (3d Cir. 1997) ........................................................16, 18

**Other Authorities**

█████████████████████████████████████████████
██████████████████████████████████████ ......................................6

**Rules and Statutes**

6 *Del. C.* § 2533 .................................................................................16

15 U.S.C. § 645 ......................................................................................6

18 U.S.C. §1001 .....................................................................................6

18 U.S.C. § 1014 ....................................................................................6

28 U.S.C. § 1332.................................................................................7, 8

28 U.S.C. § 1441 ..................................................................................................7

28 U.S.C. § 1446 ...................................................................................8, 19, 20

Fed. R. Civ. P. 12(b)(6) .......................................................................................18

Fed. R. Civ. P. 41(d) .............................................................................................1

## I.      NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Manhattan Telecommunications Corp., d/b/a Metropolitan Telecommunications, a/k/a MetTel ("MetTel") filed an action against Defendant Granite Telecommunications, LLC ("Granite") in the Delaware Court of Chancery on May 19, 2020, seeking injunctive relief and damages (the "First Action"). MetTel also sought a temporary restraining order and expedited proceedings, both of which the Court of Chancery (Slights, V.C.) denied after a hearing on June 3, 2020.  After Granite removed the First Action to this Court, MetTel did not move to remand or otherwise assert that this Court lacked jurisdiction.  Instead, MetTel voluntarily dismissed the First Action on June 15, 2020.

MetTel thereafter commenced this case in the Delaware Court of Chancery on June 15, 2020, asserting the same claims based on the same facts and seeking similar relief.  Ten days later, on June 25, 2020, MetTel moved to expedite the state court proceedings and sought a trial date in October 2020.

Granite removed this action to this Court on June 26, 2020 and has moved (1) to dismiss MetTel's claims; (2) to transfer this case to the District of Massachusetts, or, in the alternative, to the Southern District of New York; and (3) for its costs of the First Action pursuant to Rule 41(d) of the Federal Rules of Civil Procedure.  On July 10, 2020—fourteen days after removal—MetTel moved to

1

remand this action to the Court of Chancery or, in the alternative, for expedited jurisdictional discovery to determine the amount in controversy.

## II.     SUMMARY OF ARGUMENT

1.     On its face, MetTel's Complaint seeks (1) up to $75,000 in compensatory damages, and (2) a broad permanent injunction "[p]ermanently enjoining Granite from making any false or misleading statements about MetTel's ███████████████████████████████████." Compl. at 18.  Unless the injunction is worth nothing at all, the amount in controversy here is at least $75,001.  MetTel does not—and cannot—argue that its requested injunction is worthless, so federal jurisdiction is proper here.

2.     Moreover, MetTel's requested injunction and its damages allegations each *alone* put more than $75,000 in controversy.  MetTel's motion to remand should also be denied on these independent bases.

3.     MetTel's only argument in support of remand confuses two separate issues:  the *validity* of MetTel's claims, *i.e.*, whether the elements of each claim are adequately pleaded, and the *amount in controversy*, *i.e.*, the value of MetTel's claims *to MetTel*.  Under settled law, Granite's contention that MetTel has failed to allege any actual harm has no bearing on the amount in controversy.

4.     MetTel also misstates the applicable legal standard.  Because MetTel seeks nonmonetary relief, and because the jurisdictional facts concerning MetTel's

damages allegations are disputed, Granite's burden is limited to showing the amount in controversy by a preponderance of the evidence.  Granite's evidence easily satisfies that threshold, and MetTel has not submitted any competent evidence to the contrary.

5.     Finally, no basis exists for MetTel's jurisdictional discovery request. Any information relevant to the amount in controversy—*i.e.*, MetTel's own damages and the value of the requested injunction to MetTel—is clearly within MetTel's possession.

## III.   RELEVANT BACKGROUND[1]

### A. MetTel's Sparse Allegations Concerning Granite's Conduct

Although MetTel accuses Granite of orchestrating an "[o]ngoing [c]ampaign of [l]ies," Compl. at 6, its Complaint contains only a few specific, non-speculative factual allegations regarding Granite's alleged conduct.  According to MetTel, out of its "countless" customers[2] nationwide, Granite personnel contacted three MetTel customers and made vague statements of opinion about MetTel's █████████

---

[1] Granite discusses the factual background of this matter in more detail in its brief in support of its motion to dismiss.  *See* D.I. 17 at 2-9.  Granite incorporates that discussion herein by reference.

[2] "Recognized for our flexible and customer-driven approach, MetTel services countless universal brands, Fortune 500 organizations, and the US government, developing and implementing their tech strategies while revamping all operations with our proprietary cloud-platform."  MetTel, Careers, Data Business Analyst-Bruin, https://mettel.catsone.com/careers/42816-General/jobs/11510186-Data-Business-Analyst (last visited July 24, 2020).

███████ during the course of ordinary sales communications.  None of these customers breached its contract or otherwise changed its relationship with MetTel in any way as a result of these vague statements of opinion.

Nonetheless, MetTel alleges that its "reputation and goodwill in the industry has already been harmed" as a result of Granite's alleged conduct.  *See id.*, ¶ 36. According to MetTel, based solely on the information available concerning Granite's alleged conduct since April 2020, "the combined value of the monetary and reputational harm it has suffered . . . does not exceed $75,000."  *See id.*, ¶ 37. Finally, MetTel alleges that "[i]t has hard evidence of only three customers, but MetTel has a reasonable basis to believe that Granite's efforts have extended, or will extend, beyond these customers."  *Id.*, ¶ 30.

Based on these allegations, MetTel asserts claims for defamation, trade libel, tortious interference with contract, tortious interference with business relations, and violations of the Delaware Deceptive Trade Practices Act ("DTPA").  In its prayer for relief, MetTel asks the Court to "[p]ermanently enjoin[] Granite from making any false or misleading statements ████████████████████████ ████████████████████."  *Id.* at 18.  MetTel also seeks an award of compensatory damages "not to exceed $75,000."  *Id.*

4

**B. The Value of MetTel's Goodwill And Its Relationships With The Customers Granite Allegedly Contacted**

MetTel attributes substantial value to its goodwill and customer relationships.  For example, MetTel alleges that it "has spent more than twenty years building a reputation for reliability among its clients and in the marketplace." Compl., ¶ 12.  In addition, it is undisputed that MetTel successfully competes— including with Granite—for long-term contracts worth millions of dollars. Antonellis Aff. ¶ 6.  In fact, MetTel recently obtained two task orders under the General Services Administration's Enterprise Infrastructure Solutions program worth nearly $400 million combined.  Antonellis Aff. ¶ 7; A001-20.

Specifically, MetTel's relationships with the customers identified in the Complaint are extremely valuable.  Granite previously provided similar voice and data services to each of the three customers identified in MetTel's Complaint and still provides other services to each of them.  Antonellis Aff. ¶¶ 11-19.  Based on Granite's experiences providing similar voice and data services to those customers, Granite estimates that MetTel's combined annual revenue from those customers totals more than $6.5 million—over $600,000 from ████████████, nearly $1 million from ████████████, and over $5 million from ████████████. *Id.*

**C.** ████████████████████████████████████████s

Even before the current economic crisis, MetTel had started ████████ ████  In 2017, MetTel established a ████████████████████

5

███████████████████████████████████████. A021-48.  At the time, MetTel

affirmatively represented ████████████████████████. A038 ("MetTel

does not carry any funded debt.").  In 2019, MetTel █████████████████

████████████████████████████. A049-80.  Unlike the 2017 transaction,

in 2019 MetTel could no longer affirmatively represent that ██████████████

██████████ A066.

On April 9, 2020, Metropolitan Telecommunications Holding Company

("MetTel Holding")—a MetTel affiliate—███████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████ As part of its

████████████, MetTel Holding was required to certify that █████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████

MetTel would not be alone ███████████████. Several major

telecommunications providers have experienced ████████████████

██████████████████. Three prominent competitors ████████

██████████████████████████████████

██████████████████████████████████

████████████████████████████████████

██████████████████████████████████

████████████████████). Another large competitor, GTT

Communications, Inc., recently reported ████████████████████

████████████████████████████. A061-105.

## IV.   ARGUMENT

### A.  Legal Standard

This Court has jurisdiction over actions where complete diversity of

citizenship exists between the parties and the amount in controversy exceeds

$75,000.  28 U.S.C. § 1332(a).  A defendant may remove such an action initiated

in state court to this Court.  28 U.S.C. § 1441(a).

Although the amount in controversy is ordinarily determined from the

pleadings, "[t]here is, however, a broad good faith requirement in a plaintiff's

complaint with respect to the amount in controversy."  *Morgan v. Gay*, 471 F.3d

469, 474 (3d Cir. 2006).  Thus, "[e]ven if a plaintiff states that her claims fall

below the threshold, this Court must look to see if the plaintiff's actual monetary demands in the aggregate exceed the threshold, irrespective of whether the plaintiff states that the demands do not." *Id.* at 474-75. "[T]he plaintiff's pleadings are not dispositive," rather, the Court must "examine not just the dollar figure offered by the plaintiff but also her actual legal claims." *Id.* at 475.

Even when a plaintiff expressly limits its allegations with respect to money damages, "where a challenge to the amount in controversy had been raised in the pleadings or the notice of removal . . . . [w]e require the party alleging jurisdiction [to] justify his allegations by a preponderance of the evidence." *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 504 (3d Cir. 2014) (internal quotations omitted). Only after the court has "evaluated evidence and made factual findings" does the court determine whether the damages allegations satisfy the "legal certainty" test. *Id.* at 503.

The "legal certainty" test does not apply to determining the amount in controversy implicated by equitable relief. Instead, "the notice of removal may assert the amount in controversy if the initial pleading seeks . . . nonmonetary relief . . . and removal of the action is proper . . . if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)." 28 U.S.C. § 1446(c)(2). "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether

8

the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014) (*Dart Cherokee*).

### B.  The Amount In Controversy Plainly Exceeds $75,000

MetTel alleges that Granite has engaged in a systematic campaign of false statements about MetTel and its business which has harmed its reputation and goodwill.  For relief, MetTel seeks both damages and a broad permanent injunction.  Not only does the combined value of MetTel's damages allegations and requested injunction exceed $75,000, but also the requested injunction and damages allegations each, standing alone, put more than $75,000 in controversy. Federal jurisdiction is therefore proper.

#### 1.  *The Combined Value Of MetTel's Alleged Damages And Requested Injunction Exceeds $75,000*

As discussed below, a critical evaluation of both MetTel's requested injunction and its damages allegations shows that both, separately and independently, put more than $75,000 in controversy.  But such an analysis is unnecessary because the combined value of the damages and injunctive relief sought in the Complaint is worth, on its face, at least $75,001.  The amount in controversy requirement is therefore satisfied.

MetTel pleads that "the combined value of the monetary and reputational harm it has suffered in connection with Counts One through Five does not exceed $75,000," Compl., ¶ 37, and seeks an award of "damages to compensate MetTel

9

not to exceed $75,000," *id.* at 18. MetTel therefore cannot, and does not, argue

that its damages allegations put any *less* than $75,000 in controversy.

*In addition to these compensatory damages*, MetTel demands an injunction

"[p]ermanently enjoining Granite from making any false or misleading statements

████████████████████████████████████████████████." *Id.*

Accordingly, "[u]nless the requested injunction would have only nominal value,

the amount in controversy requirement has been satisfied here." *Fetters v. United*

*Parcel Serv., Inc.*, 2006 WL 2375493, at *2 (S.D. Ind. Aug. 16, 2006); *see also*

*JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 639 (4th Cir. 2010) ("Even if the

$60,456.25 alleged in its summary judgment motion constitutes the sole money

damages sought by [the plaintiff], its requested injunctive relief need only have a

good faith worth of $14,543.76, i.e. the amount necessary to yield a combined

value in excess of $75,000."); *DSF Advanced Staffing, Inc. v. Advantage*

*Resourcing Am., Inc.*, 2010 WL 11530959, at *5 (E.D. Tex. Nov. 18, 2010)

("Here, [the plaintiff] pleads unspecified actual damages up to, but not including,

$75,000.00. Therefore, if it were to derive *any* value through injunctive or

declaratory relief, the amount in controversy would exceed the jurisdictional

threshold.") (emphasis in original).

Regardless of the actual value of MetTel's requested injunction—and its

value far exceeds $75,000—the injunction would be worth at least $1. MetTel

tellingly has submitted no proof and makes no argument that the requested injunction would be worth nothing. *See Dart Cherokee*, 574 U.S. at 88. Nor could MetTel submit such proof or make such an argument, for it has pleaded that "[t]he irreparable harm to MetTel's reputation and business will continue" without an injunction. *See* Compl., ¶ 35. And MetTel repeatedly asserted in the First Action that irreparable harm was ongoing and that a temporary restraining order was warranted. *See Manhattan Telecommunications Corp. v. Granite Telecommunications, LLC*, C.A. No. 2020-0380-JRS, June 3, 2020 Hearing Tr. at 22:21-23 ("We believe we have demonstrated even at this stage that the irreparable harm has happened."); *id.* at 58:14-16 ("And the irreparable harm is not imminent, it's already started and it continues."); *Manhattan Telecommunications Corp. v. Granite Telecommunications, LLC*, C.A. No. 1:20-cv-775-CFC, D.I. 2-1 at 145 (D. Del. June 9, 2020) ("Thus, the irreparable harm to MetTel's reputation and business will continue, most likely increasing substantially, if Granite is not brought to task and ordered to terminate its campaign immediately.").

The only way MetTel could maintain that an injunction against such allegedly irreparable harm is worth nothing would be to reverse its position and admit that no such harm has happened or could happen.[3] MetTel has not done so.

---

[3] Granite maintains this action should be dismissed because, among other reasons, MetTel has failed to allege causation damages. *See* D.I. 17 at 16-20. Whether

11

Nor could MetTel do so, for it would require MetTel to claim that stopping purportedly *irreparable* harm to its goodwill, reputation, and business interests is worth nothing to MetTel.

Moreover, MetTel's actions throughout this litigation confirm that it values the injunction at far more than $1.  MetTel engaged a team of at least five lawyers from one of the largest law firms in the world to try—unsuccessfully—to obtain an unconstitutional temporary restraining order in the First Action.  *See* A129, A134-35, A141 (identifying five separate lawyers appearing for MetTel in the First Action).  After Granite removed the First Action to this Court, MetTel dismissed it and filed this action in the Court of Chancery, purportedly to "make[] clear that the primary relief being sought at this time is injunctive[.]"  A138.  Sophisticated businesses like MetTel do not spend hundreds of thousands of dollars in legal fees and costs—including expensive TRO proceedings and dismissal and refiling of the case in state court—pursuing the "primary relief" of a worthless injunction.

It follows that the combined value of MetTel's damages allegations and requested injunction facially put more than $75,000 in controversy.

---

MetTel's claims are adequately pleaded and survive Granite's motion to dismiss is irrelevant for purposes of determining the amount in controversy.  *See* Section IV.C, *infra*.

### 2.   *The Value Of MetTel's Requested Injunction Alone Exceeds $75,000*

Even leaving aside MetTel's damages allegations, MetTel alleges that the injunction it seeks here is necessary to prevent irreparable harm to its substantial goodwill and to its customer relationships worth millions of dollars in revenue each year.  The amount in controversy is satisfied on this basis alone.

"In injunctive actions, it is settled that the amount in controversy is measured by the value of the right sought to be protected by the equitable relief. . . . In other words, it is the value to plaintiff to conduct his business or personal affairs free from the activity sought to be enjoined that is the yardstick for measuring the amount in controversy."  *In re Corestates Tr. Fee Litig.*, 39 F.3d 61, 65 (3d Cir. 1994) (internal citations and quotations omitted).  Under this standard, the value of MetTel's requested injunction exceeds $75,000 on at least two theories.

*First*, where a plaintiff alleges unfair competition adversely affecting its goodwill, the appropriate measure of the amount in controversy is the entire value of the plaintiff's goodwill.  *See Schering Corp. v. Sun Ray Drug Co.*, 320 F.2d 72, 75 (3d Cir. 1963).  Here, Granite alleged specific facts in its Notice of Removal showing that the total value of MetTel's goodwill exceeds $75,000.  D.I. 2, ¶¶ 30-32; *see also* A001-20 (evidence of recent task orders under the General Services Administration's Enterprise Infrastructure Solutions program awarded to MetTel).

13

MetTel has offered neither argument nor evidence to the contrary.  *See generally* D.I. 13; *see also Dart Cherokee*, 574 U.S. at 88.  Accordingly, this Court may take it as established that the value of MetTel's goodwill exceeds $75,000 and that the amount in controversy is satisfied.

*Second*, even if the amount in controversy is limited strictly to the value to MetTel of the current and prospective customer relationships allegedly affected by Granite's conduct, the amount in controversy still well exceeds the jurisdictional threshold.  MetTel's combined revenue[4] from the three customers identified in the Complaint exceeds $6.5 million annually.[5]  Antonellis Aff. ¶¶ 11-19.  Moreover, a typical customer contract for businesses like these three customers lasts for three years or more, bringing the total value of just these three relationships to MetTel to nearly $20 million.  *See id.* ¶ 22.

MetTel also alleges that Granite's conduct extends further to its "countless" customers nationwide.  MetTel pleads that "[i]t has hard evidence of only three customers, but MetTel has a reasonable basis to believe that Granite's efforts have

---

[4] Revenue is an appropriate measure of the "business to be protected" by an injunction for purposes of calculating the amount in controversy.  *See Remede Consulting Grp. Inc. v. Hamer*, 2020 WL 1062963, at *4 (E.D.N.Y. Mar. 5, 2020); *see also Dynahealth, LLC. v. Altapoint Data Sys., LLC.*, 2003 WL 22097787, at *1 (E.D. Pa. Aug. 14, 2003) (using revenue to determine "the value of the right sought to be protected" by the requested injunction).

[5] MetTel has not submitted *any* evidence regarding the value of the injunctive relief it seeks, let alone any competent evidence suggesting that it is worth less than $75,000.  *See Dart Cherokee*, 574 U.S. at 88.

extended, or will extend, beyond these customers."  Compl., ¶ 30.  And MetTel

alleges that each allegedly false statement to a customer or potential customer

threatens MetTel's existing or potential future relationships with that customer.

*Id.*, ¶¶ 31-36.  Each such customer relationship is worth hundreds of thousands—if

not millions—of dollars to MetTel over the life of the relevant contract.

The interests MetTel seeks to protect with the injunction therefore have a

value in the many millions of dollars to MetTel.  It follows that the amount in

controversy requirement is met, and MetTel's motion to remand should be denied.

### 3.  *The Value Of MetTel's Damages Claims Exceeds $75,000*

Finally, even leaving aside MetTel's request for an injunction, its damages

claims *alone* still put more than $75,000 in controversy.  MetTel has alleged that

its compensatory damages on its common law tort claims are up to $75,000 and

has pleaded a claim under the DTPA, which would automatically treble any

compensatory damages MetTel recovers on its common law claims.  MetTel has

not disclaimed any right to treble damages, so the amount in controversy on

MetTel's damages claims is $225,000.

MetTel contends that it has expressly limited the amount in controversy to

less than $75,000.  D.I. 13 at 10.  But in fact, MetTel alleges only that "the

combined value of the monetary and reputational *harm* it has suffered . . . does not

exceed $75,000."  Compl., ¶ 37 (emphasis added).  Such allegations of "monetary

15

and reputational harm" constitute the compensatory damages that MetTel claims to be entitled to on its common law claims.[6]

MetTel also pleads a claim under the DTPA,[7] which provides for mandatory treble damages "[i]f damages are awarded to the aggrieved party under the common law."  6 *Del. C.* § 2533(c).  Because MetTel seeks up to $75,000 on its common law claims, it necessarily seeks up to three times that amount— $225,000—on its DTPA claim.  *See id.*  This larger amount—$225,000—is therefore the amount in controversy for purposes of federal jurisdiction.  *See, e.g.*, *Suber v. Chrysler Corp.*, 104 F.3d 578, 587 (3d Cir. 1997).

MetTel now contends that it did not intend that its request for damages be trebled.  *See* D.I. 13 at 12.  This new position runs counter to MetTel's Complaint, which only limits its *compensatory* damages to $75,000.  *See* Compl., ¶ 37 (valuing "the monetary and reputational harm it has suffered" at less than $75,000); *id.* at 18 (praying for an "[a]ward[] [of] damages *to compensate MetTel* not to exceed $75,000) (emphasis added).  Given the DTPA's mandatory trebling

---

[6] MetTel pointedly never moved to remand the First Action or otherwise argued that this Court lacked jurisdiction over the First Action, which asserted materially identical claims based on materially identical facts.

[7] As with MetTel's other inadequately pleaded claims, Granite maintains that the DTPA does not apply here and that this claim should be dismissed.  *See* D.I. 17 at 20-21.  Whether this claim survives Granite's motion to dismiss has no bearing on the amount in controversy analysis.  *See* Section IV.C, *infra*.

provision, the amount at stake on MetTel's damages claims is therefore three times its alleged compensatory damages: $225,000.

Moreover, MetTel did not disclaim treble damages in its Complaint. Instead, MetTel attempted to hide the ball, purporting to state a claim under the DTPA—which provides for *mandatory* trebling of compensatory damages awarded on common law claims—but omitting any reference to treble damages in its prayer for relief.  MetTel's attempt fails nonetheless because the Complaint still invokes *all* the provisions of the DTPA—including mandatory trebling—and binds MetTel to the DTPA's trebling provision.  *See Judon*, 773 F.3d at 502 n.6.

Accordingly, MetTel's damages allegations alone—without considering injunctive relief—place more than $75,000 in controversy here.  MetTel's motion to remand should be denied on this basis as well.

### C.  MetTel Confuses The Validity Of Its Claims With The Value Of Its Claims

MetTel has come forward with no evidence suggesting that the amount in controversy here is below $75,000.  Instead, MetTel relies solely on the claim that Granite previously argued—and the Court of Chancery Court agreed—that MetTel has failed to allege that it suffered harm.  D.I. 13 at 6-8.  This argument fails because it confuses two separate issues: the validity of MetTel's claims—*i.e.*, whether the elements of each claim are adequately pleaded—and the amount in controversy— *i.e.*, the value of MetTel's claims *to MetTel*.

17

"The court should not consider in its jurisdictional inquiry the legal sufficiency of [the plaintiff's] claims or whether the legal theory advanced by the plaintiffs is probably unsound. . . ." *Suber*, 104 F.3d at 583; *accord S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014) (explaining that the amount in controversy "is less a prediction of 'how much the plaintiffs are ultimately likely to recover,' than it is an estimate of how much will be put at issue during the litigation[.]"); *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("To establish the jurisdictional amount, [a defendant] need not concede liability."). Accordingly, "the value of a claim and the validity of a claim are separate issues." *See, e.g.*, *Gonzalez v. State Farm Mut. Auto. Ins. Co.*, 2006 WL 8433552, at *4 (S.D. Fla. Aug. 21, 2006); *Archer v. Kelly*, 271 F. Supp. 2d 1320, 1323 (N.D. Okla. 2003).

As a result, courts routinely dismiss cases pursuant to Rule 12(b)(6) for failure to adequately allege damages, while at the same time finding that the amount in controversy requirement is satisfied. *See, e.g.*, *Ferrante v. Amgen, Inc.*, 2014 WL 1092555, at *1 n.1 & *4-5 (D.N.J. Mar. 18, 2014); *Cordero v. Bank of Am.*, 2013 WL 4590826, at *2 (C.D. Cal. Aug. 28, 2013). Indeed, it is well settled that a plaintiff's failure to establish damages does not mean that the federal court lacked jurisdiction. *See, e.g.*, *Huber v. Taylor*, 532 F.3d 237, 246 (3d Cir. 2008).

18

It follows that whether MetTel has pleaded the material elements of causation and damages—and it has not, *see* D.I. 17 at 16-20—has nothing to do with whether MetTel's allegations have placed more than $75,000 at issue. And viewing the allegations in the Complaint from MetTel's perspective—as the Court must, *see In re Corestates Tr. Fee Litig.*, 39 F.3d at 65—the value of the relief MetTel seeks in this lawsuit far exceeds $75,000. *See* Section IV.B.1-3, *supra*. The amount in controversy is therefore satisfied here notwithstanding that MetTel's claims are subject to dismissal for inadequate pleading.

### D. MetTel Misstates Granite's Burden And Fails To Offer Any Competent Evidence Regarding The Amount In Controversy

MetTel also contends that Granite has failed to meet its burden of establishing, to a "legal certainty," that the amount in controversy exceeds $75,000. D.I. 13 at 10-14. MetTel flatly misstates the applicable burden here, both with respect to its requested injunction and with respect to its damages allegations.

*First*, the "legal certainty" test does not apply where, as here, the "initial pleading" seeks "nonmonetary relief." *See* 28 U.S.C. § 1446(c)(2)(A)(i). In such a case, "removal of the action is proper . . . if the district court finds, *by the preponderance of the evidence*, that the amount in controversy exceeds [$75,000]." 28 U.S.C. § 1446(c)(2)(B) (emphasis added). It follows that the preponderance of the evidence standard—and not the legal certainty standard—applies here.

19

Moreover, Granite complied with § 1446(c)(2) by including "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" in its notice of removal. *See Dart Cherokee*, 574 U.S. at 89. And Granite has come forward with evidence supporting its plausible allegations in the notice of removal. *See* Antonellis Aff., ¶¶ 11-22; A001-20, A126-38. MetTel has come forward with no evidence to the contrary. Accordingly, Granite has met its burden to show the amount in controversy implicated by MetTel's claims for "nonmonetary relief" by a preponderance of the evidence. *See* 28 U.S.C. § 1446(c)(2).

*Second*, even as to MetTel's damages allegations, MetTel misstates the relevant standard. The "legal certainty" standard only applies when there are "undisputed" jurisdictional facts. *Judon*, 773 F.3d at 502-503. But where there are disputes about the jurisdictional facts, the court must resolve those disputes according to the preponderance of the evidence standard. *See id.* at 503-504.

Here, there are disputed jurisdictional facts about MetTel's damages allegations. In its notice of removal, Granite pleaded that MetTel's attempt to limit its money damages *does not* cover treble damages. D.I. 2, ¶¶ 23-26. MetTel claims the opposite, asserting that its damages limitations *do* cover treble damages. D.I. 13 at 11-12. A dispute over the jurisdictional facts therefore exists, so the preponderance of the evidence standard applies. *See Judon*, 773 F.3d at 503-504. Moreover, Granite has shown by a preponderance of the evidence that MetTel's

damages allegations do not exclude treble damages, and MetTel has come forward with no evidence to the contrary. *See* Section IV.B.3, *supra*.

Accordingly, Granite has established, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold. MetTel's motion for remand should be denied.

### E. Expedited Jurisdictional Discovery Is Not Warranted Because The Relevant Evidence About MetTel's Damages Is In MetTel's Possession

Finally, MetTel requests expedited jurisdictional discovery concerning the amount in controversy. The request is baseless. MetTel does not seek discovery to determine jurisdictional facts that are outside of its possession, such as the true citizenship of the defendant. *See, e.g.*, *Mithril GP Employee Feeder LLC v. McKellar*, 2020 WL 3206555, at *2 (D. Del. June 15, 2020). Rather, MetTel seeks discovery here to determine the amount in controversy, meaning the amount of *its own damages*.

Such information is plainly within MetTel's possession. As one court put it:

> Who better to know the amount of damages she has suffered than Plaintiff herself? The court is not sure how further discovery will assist Plaintiff in ascertaining the amount of her own damages, and Plaintiff has provided the court with no guidance to solve that riddle. Thus, the court fears her professed ignorance of the actual amount in controversy is simply part of her attempt to play hide the ball and avoid federal jurisdiction. The court is not amused.

*Murchison v. Progressive N. Ins. Co.*, 564 F. Supp. 2d 1311, 1316 (E.D. Okla. 2008).

Here, MetTel has possession of any relevant information about the value of its goodwill and its relationships with the customers identified in the Complaint. No discovery from Granite will shed any more light on those issues than what MetTel already has in its possession,

Accordingly, there is no reason for jurisdictional discovery here, and MetTel's request should be denied.

## V.   CONCLUSION

For all these reasons, Granite respectfully requests that the Court deny MetTel's Motion to Remand, or Alternatively, for Expedited Jurisdictional Discovery.

<table>
<tr><td></td><td>MORRIS, NICHOLS, ARSHT & TUNNELL LLP</td></tr>
<tr><td>OF COUNSEL:</td><td></td></tr>
<tr><td>DONNELLY, CONROY &<br>GELHAAR, LLP<br>T. Christopher Donnelly<br>  (admitted *pro hac vice*)<br>Joshua N. Ruby<br>  (admitted *pro hac vice*)<br>260 Franklin Street, Suite 1600<br>Boston, MA 02110<br>(617) 720-2880</td><td>*/s/ R. Judson Scaggs, Jr.*<br>R. Judson Scaggs, Jr. (#2676)<br>Barnaby Grzaslewicz (#6037)<br>A. Gage Whirley (#6707)<br>1201 N. Market Street<br>Wilmington, DE 19801<br>(302) 658-9200<br>  *Attorneys for Defendant*<br>  *Granite Telecommunications, LLC*</td></tr>
</table>

Dated:      July 31, 2020

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 31, 2020.


                          */s/ Barnaby Grzaslewicz*
                          Barnaby Grzaslewicz (#6037)