## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MANHATTAN TELECOMMUNICATIONS
CORP., D/B/A METROPOLITAN
TELECOMMUNICATIONS, A/K/A
METTEL,

        Plaintiff,

    v.

GRANITE TELECOMMUNICATIONS, LLC,

       Defendant.

C.A. No. 20-857-CFC

**█████████████████████████**

**PUBLIC VERSION FILED
AUGUST 5, 2020**

## PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

**K&L GATES LLP**
Steven L. Caponi (No. 3484)
Matthew B. Goeller (No. 6283)
600 N. King Street, Suite 901
Wilmington, DE 19801
(302) 416-7080
steven.caponi@klgates.com
matthew.goeller@klgates.com

*Attorneys for Plaintiff*

Dated: July 29, 2020

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................1

II.  FACTUAL BACKGROUND...............................................................2

    A.  Granite's Ongoing Campaign of Lies ........................................2

    B.  The Harm to MetTel ...................................................................6

III.  PROCEDURAL HISTORY ................................................................7

IV.  ARGUMENT......................................................................................8

    A.  Standard of Review ....................................................................8

    B.  Choice of Law Generally ...........................................................8

    C.  Defamation (Count One)...........................................................11

        1.  Choice of Law................................................................11

        2.  The Complaint asserts sufficient facts to state a claim for
            defamation.....................................................................12

    D.  Tortious Interference with Prospective Economic Advantage and
        Tortious Interference with Contract (Counts Two and Three) ..............16

        1.  Choice of Law................................................................16

        2.  The Complaint pleads a valid claim for tortious interference with
            prospective economic advantage. .................................16

        3.  The Complaint pleads a valid claim for tortious interference with
            existing contractual relations. ......................................17

    E.  Trade Libel (Count Four) .........................................................18

        1.  Choice of Law................................................................18

        2.  The Complaint asserts a valid claim for trade libel. ....................18

    F.  Delaware Deceptive Trade Practices Act..................................19

1.     Choice of Law .................................................................................. 19

2.     MetTel asserts a valid claim for violations of the DTPA. ........... 20

V.    CONCLUSION ................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen, Inc. v. Ariad Pharm, Inc.*,
    513 F. Supp. 2d 34 (D. Del. 2007) ...................................................................... 10

*Autodesk Canada v. Assimilate, Inc.*,
    2009 WL 3151026 (D. Del. Sept. 29, 2009) ........................................................ 10

*Axiom Inc. Advisors, LLC by & through Gildor Mgmt., LLC v. Deutsche
    Bank AG*,
    234 F. Supp. 3d 526 (S.D.N.Y. 2017) .................................................................. 19

*Bickling v. Kent General Hosp., Inc.*,
    872 F. Supp. 1299 (D. Del. 1994) ........................................................................ 12

*Carrick v. Zurich–American Ins. Group*,
    14 F.3d 907 (3d Cir. 1994) ..................................................................................... 8

*Conley v. Conley*,
    2015 WL 7747431 (Del. Super. Ct. Nov. 19, 2015) ............................................ 15

*David B. Lilly Co., Inc. v. Fisher*,
    18 F.3d 1112 (3d Cir. 1994) .................................................................................... 9

*Dillon v. City of New York*,
    261 A.D.2d 34 (N.Y. App. Div. 1999) ................................................................. 11

*Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC*,
    2010 WL 338219 (Del. Ch. Jan. 29, 2010) .......................................................... 11

*Guard-Life Corp. v. S. Parker Hardware Mfg.*,
    50 N.Y.2d 183 (1980) ........................................................................................... 15

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*,
    716 F.3d 764 (3d Cir. 2013) .................................................................................... 8

*Kanaga v. Gannett Co.*,
    687 A.2d 173 (Del. 1996) ............................................................................... 13, 14

*Manhattan Telecommunications Corp. v. Granite Telecommunications, LLC*,
C.A. 2020-0468-JRS (Del. Ch. June 15, 2020) ................................................... 7

*Ninespots, Inc. v. Jupai Holdings, Ltd.*,
2018 WL 3626325 (D. Del. July 30, 2018) ...................................................... 21

*Organovo Holdings, Inc. v. Dimitrov*,
162 A.3d 102 (Del. Ch. 2017).................................................................... 16, 18

*Preston Hollow Capital LLC v. Nuveen LLC*,
216 A.3d 1 (Del. Ch. 2019)........................................................................ 12, 18

*Ramunno v. Cawley*,
705 A.2d 1029 (Del. 1998) ........................................................................ 13, 14

*In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*,
311 F.3d 198 (3d Cir. 2002)................................................................................ 8

*Stephen G. Perlman, Rearden LLC v. Vox Media, Inc.*,
2015 WL 5724838 (Del. Ch. Sept. 30, 2015) .................................................... 9

*Sys. Operations, Inc. v. Scientific Games Dev. Corp.*,
555 F.2d 1131 (3d Cir. 1977)............................................................................ 18

*In re Teleglobe Commc'ns Corp.*,
493 F.3d 345 (3d Cir. 2007)................................................................................ 8

*Travelers Indemnity Co. v. Lake*,
594 A.2d 38 (Del. 1991) ..................................................................................... 9

*Waste Distillation Tech., Inc v. Blasland & Bouck Eng'rs, P.C.*,
136 A.D.2d 633 (2d Dep't 1988) ...................................................................... 18

*WaveDivision Holdings, LLC v. Highland Capital Mgmt., L.P.*,
49 A.3d 1168 (Del. 2012) ........................................................................... 15, 17

*Worldspan, L.P. v. Ultimate Living Grp., LLC*,
390 F. Supp. 2d 412 (D. Del. 2005)................................................................... 19

**Statutes**

6 *Del. C.* § 2532(a) ........................................................................................... 20

28 U.S.C. § 1332 ................................................................................................. 8

New York Consumer Protection Act, N.Y. Gen. Bus. Law § 349 ......................... 19

**Other Authorities**

Restatement (Second) of Conflicts § 149 .................................................................. 9

Restatement (Second) of Conflicts § 145 ............................................................... 10

Restatement (Second) of Torts .............................................................................. 15

Fed. R. Civ. Pro. 12(b)(6) ....................................................................................... 8

## I.      INTRODUCTION

During these unprecedented times, when Americans are being exhorted to join together, to use their resources to help one another and defeat a common enemy, Defendant Granite Telecommunications, LLC ("Granite") has taken the lowest of roads.  It is taking advantage of the legitimate fear and uncertainty gripping the nation by using an ongoing campaign to spread even more—*but completely false*— fear and uncertainty about a competitor, Plaintiff Manhattan Telecommunications Corp. ("MetTel").  Granite has orchestrated this campaign in order to steal MetTel's current and potential clients and irreparably harm the reputation of its services.

Evidence available to MetTel indicates that Granite has undertaken a coordinated effort to contact current and potential MetTel clients and tell them that ██████████████████████████████████████████████ To date, MetTel has hard evidence of only three customers to whom Granite has made these statements, but it has a reasonable basis to believe that Granite's efforts have extended, or will extend, beyond these customers.  What Granite is telling these customers is completely false without any legitimate basis in fact, and Granite either knows the statements are false or is recklessly indifferent to whether they are true or false.

The Complaint and attached exhibits lay out in detail how Granite's campaign gives rise to five causes of action under Delaware law: defamation, tortious

interference with contracts, tortious interference with prospective economic advantage, trade libel, and violations of Delaware's Deceptive Trade Practice's Act (the "DTPA"). Granite's Motion at best raises factual disputes that can only be resolved after full discovery. It does not provide a basis to dismiss the Complaint before MetTel has an opportunity to prosecute these claims, seek discovery to uncover the full extent of Granite's campaign, and ultimately enjoin Granite's improper conduct.

Notably, it is likely that this Court will never have to decide this Motion. As explained in MetTel's Motion to Stay, this Court must first rule on MetTel's Motion to Remand to resolve the threshold question of whether it has jurisdiction to adjudicate the case. Only if the Court denies MetTel's Motion to Stay, denies MetTel's Motion to Remand, and denies Granite's Motion to Transfer, will the Court need to consider the merits of Granite's Motion to Dismiss. Should all of those occur, the Motion to Dismiss must be denied for the reasons set forth below.

## II.     FACTUAL BACKGROUND

### A.     Granite's Ongoing Campaign of Lies

The COVID-19 pandemic has had a devastating human and economic impact globally that need not be explained to this Court. Granite sees this grim reality as a shameful opportunity to enrich itself by capitalizing on the public's fears by using

misinformation to raise unfounded concerns about MetTel's ability to provide vital telecommunications services to its customers.

Granite has begun telling MetTel's current and, it appears, potential clients—

███████████████████████████████████████████████████████

███████████████████████████████ Compl. D.I. 3 at ¶¶ 3, 17, 19, 20 22, 25.  The purpose of these lies is to convince MetTel's clients and potential clients that MetTel

███████████████████████████████████████████████████████

███████████████████████████ *Id.*, ¶ 17.  Granite has spread these lies for the specific purpose of damaging MetTel's business and harming its reputation.  *Id.*, ¶ 18.

In April 2020, MetTel learned for the first time that Granite might be spreading false information about MetTel.  *Id.*, ¶ 19.  MetTel received an email from one of its clients that was concerned and confused about a voicemail message it received on April 24, 2020, from a client relations professional at Granite.  *Id.*  The caller indicated he had some unsettling information about MetTel that he would share when the client returned the call.  *Id.* ██████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████

On May 12, 2020, MetTel learned that Granite had contacted another MetTel client, this one an operator of assisted living and memory care retirement

3

communities.  *Id.*, ¶ 20.  The client forwarded to MetTel a May 11 email by the Senior Director of Healthcare at Granite, who was attempting to schedule a call between Granite's Chief Executive Officer and the Chairman of the Board and CEO of the client.  *Id.*  In a follow-up email of the same date explaining the purpose for the call, the Senior Director made it clear that Granite wanted to take the client's business away from MetTel.  *Id.*  As a rationale for why the client would be interested doing so, he said that ████████████████████████████████ ████████████████████████████████████ ██.  The client was understandably confused and concerned about this information and sought reassurances from MetTel.  *Id.*, ¶ 21.

The Chief Information Officer of the same client informed MetTel that Granite personnel had also called the CEO's assistant with the message ██████████ ████████████████████  *Id.*, ¶ 25.  The CEO was very concerned by this information and the news spread very quickly within the client's organization.  *Id.* Again, this information was false.

Finally, in his May 11, 2020, email, the Granite Senior Director stated that Granite had made presentations to some of MetTel's other clients, all of whom were in the healthcare field.  *Id.*, ¶ 27.  Upon information and belief, Granite made the same misrepresentations about ███████████████████ to those clients.  *Id.*  One of these clients has not returned MetTel's calls and has rejected efforts to set up a

meeting with MetTel since being contacted by Granite.  *Id.*, ¶ 28.  MetTel has concluded that it most likely lost that client's future business due to Granite's campaign of misinformation.  *Id.*

On June 2, 2020, MetTel received a call from one of its largest customers asking if MetTel ███████████████████████████ *Id.*, ¶ 22.  Personnel from the customer have since confirmed that the inquiry was prompted by someone from Granite having contacted the customer making the same assertion that MetTel ███████████████████████████████████████*Id.*

The statements made by Granite about MetTel are blatantly false.[1] ████████ ██████████████████████████████████████████████████ ███████████████████████████████., ¶ 23.  Moreover, there is no legitimate way that Granite had actual███████████ upon which to base these statements.  *Id.*, ¶ 24.  ██████████████████████████████ █████████████████████████████████ ██  Nor could Granite be basing its statements on information provided by MetTel as part of the

---

[1] Granite devotes a significant portion of its brief to misrepresenting ████████ ████████████ just as it has done to MetTel's customers.  Opening Br. at 2-5. Granite's purpose in doing so is unclear, since it nowhere argues that the defamatory statements it has made about ███████████ are *true*.  Granite presumably chose not to make that argument because it would plainly raise a disputed issue of fact not appropriate for resolution on a motion to dismiss.  For that reason, MetTel will not respond to those allegations herein, and will wait instead for summary judgment motions or trial to prove that Granite's statements are false.

parties' business dealings, because that information is protected by a confidentiality agreement.  *Id.*  As such, this is not a case in which Granite's statements were based ███████████████████████████████████████████████████████ Granite has been spreading harmful "facts" about MetTel with a gross indifference to whether those "facts" are true or false.  *Id.*

These incidents cannot be excused as the actions of one or two rogue employees.  The Granite Senior Director was attempting to set up a call between the client's CEO and the CEO of Granite.  Thus, the ongoing attack against MetTel apparently is being orchestrated with the knowledge, approval, and participation of the highest level executives at Granite.

### B.      The Harm to MetTel

Granite is fully aware that MetTel's customers specifically—and the industry in general—place great importance on ████████████████████████ ███████  *Id.*, ¶ 33.  Once confidence ████████████████████████ called into question, customers and potential customers may simply select a different vendor, never telling the slandered provider of their concerns.  *Id.*  As a result, the provider is not afforded the opportunity to repair its reputation, set the record straight or reclaim its customer—and may never know which customers or opportunities were lost as a result of the lies.  *Id.*

MetTel does not know the total number of its customers and potential customers Granite personnel have contacted with the same or similar false, misleading, and defamatory statements about MetTel. *Id.*, ¶ 30. It has hard evidence of only three such customers, but MetTel has a reasonable basis to believe that Granite's efforts have extended, or will extend, well beyond these customers. *Id.* Whatever the number, MetTel has suffered harm to its business reputation and the reputation of its services that justify monetary damages and injunctive relief.

## III.   PROCEDURAL HISTORY

MetTel originally filed this action in the Court of Chancery seeking an injunction and economic damages. *See* Compl., *Manhattan Telecommunications Corp. v. Granite Telecommunications, LLC*, C.A. 2020-0468-JRS (Del. Ch. June 15, 2020) (Trans. ID 65699162). MetTel specifically pled that, based on information currently available to it, the value of the monetary and reputational harm it has suffered in connection with all of the counts in the Complaint combined does not exceed $75,000. *Id.*, ¶ 37.

On June 26, 2020, Granite removed the case to this Court. D.I. 2. On July 10, 2020, MetTel moved to remand the case to the Court of Chancery because the amount in controversy is below the jurisdictional threshold for diversity cases.

Despite a pending Motion to Remand that will determine whether this Court has jurisdiction to decide *any* issues in this case, Granite filed several substantive

motions, including: a Motion to Transfer, D.I. 19; a Motion for Costs, D.I. 24; and this Motion to Dismiss, D.I. 16.  MetTel was therefore forced to file a Motion to Stay the resolution of Granite's Motions pending the resolution of MetTel's Motion to Remand.  D.I. 30.

## IV.   ARGUMENT

### A.   Standard of Review

A motion to dismiss for failure to state a claim under Rule 12(b)(6) must be denied if, under any "plausible" reading of the pleadings, the plaintiff would be entitled to relief.  *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013).  Courts must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002).

### B.   Choice of Law Generally

Because jurisdiction in this case is predicated on 28 U.S.C. § 1332, this Court must apply Delaware choice of law rules to determine the substantive law that governs this dispute.  *Carrick v. Zurich–American Ins. Group*, 14 F.3d 907, 909 (3d Cir. 1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487, 496 (1941)).

Granite makes the blanket assertion that New York law applies to all of MetTel's claims in this action.  Opening Br. at 10.  But that argument misses the first step in the conflict of law analysis.  The Court must first compare the substantive

8

laws of the competing jurisdictions to determine whether the laws actually conflict on a particular issue. *See In re Teleglobe Commc'ns Corp*., 493 F.3d 345, 358 (3d Cir. 2007). If no conflict exists, the Court applies the law of the forum state. *Id.* If an actual conflict exists, Delaware employs the "most significant relationship" test set forth in the Restatement (Second) of Conflict of Laws to determine which state's laws should apply. *Travelers Indemnity Co. v. Lake,* 594 A.2d 38, 47 (Del. 1991); *David B. Lilly Co., Inc. v. Fisher*, 18 F.3d 1112, 1117 (3d Cir. 1994).

In determining the "most significant relationship," Delaware courts evaluate the following factors: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. *Stephen G. Perlman, Rearden LLC v. Vox Media, Inc.*, 2015 WL 5724838, at *10 (Del. Ch. Sept. 30, 2015) (citing Restatement 2d of Conflicts § 145). Considering these factors, Delaware has the most significant relationship to MetTel's claims in this action.

*Place where the injury occurred*. The Comments to Restatement 2d of Conflicts § 149 note that, when the defendant has made defamatory statements about the plaintiff, "[t]he place of injury is the place where the defamatory communication is published" (*i.e.*, received). *Id.*, Comment c. Here, none of the actionable statements that form the basis of MetTel's defamation claim were received in New

9

York.  Compl. ¶¶ 19, 20, 22.  Rather, they were received by customers located in New Jersey, Kentucky, and Indiana.  *Id.*; *see also* D.I. 17 at 2–3 (noting that ████ ████████████ is headquartered in Indiana, ████████████████ is headquartered in Kentucky); D.I. 20 at 5 (noting that ████████████ is headquartered in New Jersey).  In such cases, where defamatory statements are published in multiple states, "the place of injury will not play an important role in the selection of the state of the applicable law."  Restatement 2d of Conflicts § 145, Comment e.

*Place where the conduct causing the injury occurred.*  The places where the conduct causing the injuries to MetTel occurred are completely fortuitous and essentially irrelevant for choice-of-law purposes.  In each instance, the defamatory statements were made by a different Granite employee who happened to be sitting in an office in New York (first client), Florida (second client), or a third as-yet determined state (third client).  Compl., ¶¶ 19, 20, 22.  The statements were made by phone or by email, never actually in the state in which they were received.  *Id.*  Thus, it cannot be said that any of those states has the most significant relationship to this dispute.

*Domicile, residence, nationality, place of incorporation and place of business of the parties.*  Both MetTel and Granite are incorporated in Delaware.  Granite's principal place of business is in Massachusetts, MetTel's is in New York.  Of those three states, Delaware has the most well-recognized and legitimate interest in

10

resolving disputes between its corporate citizens. *Autodesk Canada v. Assimilate, Inc.*, 2009 WL 3151026, at *9 (D. Del. Sept. 29, 2009); *Amgen, Inc. v. Ariad Pharm, Inc.*, 513 F. Supp. 2d 34, 46 (D. Del. 2007).

*Place where the relationship, if any, between the parties is centered*. MetTel and Granite are direct competitors in the telecommunications industry nationwide. Compl. ¶ 65. Therefore, their relationship is not "centered" anywhere.

Based on the foregoing, to the extent that any state has the most significant relationship to this dispute, it is Delaware.

### C.   Defamation (Count One)

#### 1.   Choice of Law

Delaware law applies to MetTel's defamation claim because the laws of New York and Delaware are substantively the same. The elements of the tort of defamation under New York law are: (1) a false statement; (2) published without privilege or authorization to a third party; (3) constituting fault as judged by, at a minimum, a negligence standard; and (4) causing special harm or constituting defamation *per se*. *Dillon v. City of New York*, 261 A.D.2d 34, 38 (N.Y. App. Div. 1999). The elements of a defamation claim in Delaware are: (1) a false and defamatory communication concerning the plaintiff, (2) publication of the communication to third parties, (3) understanding of the defamatory nature of the communication by the third party, (4) fault on the part of the publisher, and (5) injury

11

to the plaintiff.  Because there is no real conflict, a choice of law analysis would be superfluous, and Delaware law applies.  *See Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC,* 2010 WL 338219, at *8 (Del. Ch. Jan. 29, 2010).

Even if there were a conflict, Delaware law would still apply.  Under the Restatement, "the state of the location of publication supplies the substantive law governing a defamation action, unless some other state has a more significant relationship to the occurrence and the parties than the state in which the publication occurred."  *Bickling v. Kent General Hosp., Inc.*, 872 F. Supp. 1299, 1305 (D. Del. 1994) (citing Restatement (Second) of Conflict of Laws § 149).  As noted above, none of the actionable statements that form the basis of MetTel's defamation claim was published in New York.  Compl. ¶¶ 19, 20, 22.  The result of a "most significant relationship" analysis indicates that the law of Delaware governs.

### 2.    The Complaint pleads a valid claim for defamation.

The elements of defamation are:  (1) defamatory communication;  (2) publication;  (3) reference to the plaintiff;  (4) third party's understanding of the communication's defamatory character; and (5) injury.  *Preston Hollow Capital LLC v. Nuveen LLC*, 216 A.3d 1, 9 (Del. Ch. 2019).  The Complaint pleads all of these elements.

Granite published and continues to publish false and defamatory statements about MetTel to third persons.  Compl., ¶¶ 23, 38-43.  Those third persons have

understood that the statements refer to MetTel and are damaging to its reputation. *Id.*, ¶¶ 5, 18, 33, 35-37, 40.  The statements also constitute defamation *per se* in that they have been made with actual malice and contain false and defamatory information about MetTel's business.  *Id.*, ¶ 41.  As a direct and proximate result of Granite's defamation and defamation *per se*, MetTel has suffered damages, including the loss of future business from current clients and prospective clients, and irreparable harm to its reputation.  *Id.*, ¶ 42.

Granite incorrectly argues that the statements it has made about MetTel are not defamatory as a matter of law because they are only statements of opinion or paraphrases.  Opening Br., D.I. 17 at 12, 14–15.  While expressions of pure opinion are not actionable as defamatory, this does not provide a "'wholesale defamation exemption for anything that might be labeled opinion.'"  *Kanaga v. Gannett Co.*, 687 A.2d 173, 177 (Del. 1996) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990)).  "A statement is not a protected opinion simply because it contains 'colorful language, catchy phrases or hyperbole.'"  *Ramunno v. Cawley*, 705 A.2d 1029, 1038 n.34 (Del. 1998) (citation omitted).

Moreover, when an opinion is accompanied by "'the facts upon which [the declarant] bases his opinion, and those facts are either incorrect or incomplete, or [the declarant's] assessment of them is erroneous, the statement may still imply a false assertion of fact.  Simply couching such statements in terms of opinion does

13

not dispel these implications.'"  *Kanaga*, 687 A.2d at 177–78 (quoting *Milkovich*, 497 U.S. at 17).  Thus, a "speaker may not insulate himself or herself from liability simply by phrasing defamatory statements as opinions where an imbedded defamatory fact may be inferred."  *Ramunno*, 705 A.2d at 1036.  Whether a statement implies a false assertion of fact is examined from the entire context of the published statements and considered from the viewpoint of the average reader. *Kanaga*, 687 A.2d at 179.

At no point did Granite personnel use phrases such as "I believe" or "in my opinion," which, although insufficient to prove opinion by themselves, may have suggested that the declarant was stating his personal opinion.  The May 12, 2020, email contains declarative statements that ███████████████████████████ ███████████████████████████████████████ The May 12, 2020, voice mail message likewise stated as fact ████████████████████ And the statement to one of MetTel's largest customers that ████████████████ ██████████████████████████ was presented as a statement of fact.  The average reader would not conclude that any of these statements are "opinions."

These statements also imply that Granite personnel have access to facts ███ ████████████████that the customer does not.  *See Ramunno*, 705 A.2d at 1036 (statement defamatory where factual basis for statement is not disclosed by

declarant).  The customer here was left to speculate as to the facts upon which the statements were made.  Granite knows that a customer receiving such information during the current crisis is even more likely to assume it is based on facts and believe it, when so many businesses █████████████████████████████████████

Granite also incorrectly argues that the statements that █████████████████ █████████████████████████████████████████████████████ are not actionable defamations because they are paraphrases.  Opening Br., at 14–15. Delaware law only requires a plaintiff to allege "the substance of the defamatory statements," not the exact words used.  *See, e.g.*, *Conley v. Conley*, 2015 WL 7747431, at *1 (Del. Super. Ct. Nov. 19, 2015).  MetTel's allegations provide the substance of the defamatory statements, identifies when the conversations took place, and the entities involved.  Granite personnel told the customers something that they reasonably understood to mean █████████████████████████ █████████████████████████ Accordingly, even if these are paraphrases of what Granite communicated to the customer, they still form the basis for a valid defamation claim.

15

### D. Tortious Interference with Prospective Economic Advantage and Tortious Interference with Contract (Counts Two and Three)

#### 1. Choice of Law

Both Delaware and New York have adopted and apply the Restatement (Second) of Torts with respect to tortious interference claims. *See WaveDivision Holdings, LLC v. Highland Capital Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012) ("Delaware courts follow Section 766 of the Restatement (Second) of Torts in assessing a tortious interference claim."); *Guard-Life Corp. v. S. Parker Hardware Mfg.*, 50 N.Y.2d 183 (1980) (adopting Restatement (Second) of Torts regarding tortious interference with contract). Because the laws of Delaware and New York would produce the same decision no matter which state's law is applied, Delaware law applies to this claim. *See* Part IV(B) *supra*.

#### 2. The Complaint pleads a valid claim for tortious interference with prospective economic advantage.

A claim for tortious interference with prospective economic advantage requires "(a) the reasonable probability of a business opportunity, (b) the intentional interference by the defendant with that opportunity, (c) proximate causation, and (d) damages." *Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 122 (Del. Ch. 2017).

The Complaint explains how Granite's false and misleading statements have interfered with MetTel's prospective economic advantage. Compl. ¶ 45-46. Upon

information and belief, one or more current clients and prospective clients were prepared to enter into business relationships with, or purchase additional products or services from, MetTel but were persuaded not to do so by Granite's dissemination of false information, thus causing MetTel economic and reputational injury. *Id.* Granite's actions were intentional and without justification, leveraging a national emergency for personal gain. *Id.* ¶ 47.

### 3. The Complaint pleads a valid claim for tortious interference with existing contractual relations.

A claim for tortious interference with contractual relations requires proof that: "(1) there was a contract, (2) about which the particular defendant knew, (3) an intentional act that was a significant factor in causing the breach of contract, (4) the act was without justification, and (5) it caused injury." *WaveDivision Holdings, LLC v. Highland Capital Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012).

MetTel has existing contractual relations with its customers and clients. Compl., ¶ 50. Granite is aware of these contractual relationships. *Id.* MetTel has a reasonable expectation that its business and contractual relationships with its clients will continue and expand. *Id.*, ¶¶ 31, 51. Granite's intentional interference with MetTel's rights has deprived, and continues to deprive, MetTel of the benefit of its contracts and impaired the value of its contractual relationships with its clients. *Id.*, ¶¶ 28, 30, 52. Granite's ongoing campaign is designed for an improper purpose, uses improper means, and is not legally justified. *Id.*, ¶¶ 26, 53. This has directly

17

and proximately caused, and will in the future directly and proximately cause, harm to MetTel.  *Id.*, ¶ 55.

### E.   Trade Libel (Count Four)

#### 1.   Choice of Law

A conflict exists between New York and Delaware law on the elements of a trade libel claim because New York, unlike Delaware, requires a trade libel plaintiff to plead special damages."  *Waste Distillation Tech., Inc v. Blasland & Bouck Eng'rs, P.C.*, 136 A.D.2d 633, 634 (2d Dep't 1988).   The choice-of-law rules involving injurious falsehood, including trade libel, are the same as those involving defamation.  *Sys. Operations, Inc. v. Scientific Games Dev. Corp.*, 555 F.2d 1131, 1138 n.6 (3d Cir. 1977).   Because Delaware law applies to MetTel's defamation claim, it also applies to its trade libel claim.

#### 2.   The Complaint pleads a valid claim for trade libel.

Trade libel is "a libelous statement to consumers that falsely disparages a plaintiff's goods or services."  *Preston Hollow Capital LLC*, 216 A.3d at 13.  Plaintiffs are entitled to relief for trade libel causing "any injury to economic advantage arising from false derogatory statements."  *Organovo Holdings, Inc.*, 162 A.3d at 120.

Granite has published statements directed to MetTel's existing clients and, upon information and belief, to MetTel's potential clients.   Granite knows these statements are false or made with reckless disregard for their truth or falsity, and

they were intended to, and did, prejudice MetTel in the conduct of its business and cause it monetary and reputational harm that may not be adequately compensable with monetary damages. *Id.*, ¶¶ 57-62.

Granite's arguments on this claim—that there is no evidence of MetTel having sustained any harm, and that the statements at issue are non-actionable opinions (Opening Br. at 19-20)—have been addressed and refuted above.

## F.   Delaware Deceptive Trade Practices Act

### 1.   Choice of Law

A conflict exists between the laws of New York and Delaware because New York does not have a statutory equivalent to the DTPA. *Worldspan, L.P. v. Ultimate Living Grp., LLC*, 390 F. Supp. 2d 412, 415 (D. Del. 2005). Specifically, "the DTPA is limited to redressing unreasonable or unfair interference with the 'horizontal' relationship between businesses." *Id.* (internal citations omitted). In contrast, relief for deceptive business acts under New York law is limited to conduct that is consumer oriented, rather than business oriented. *See* New York Consumer Protection Act, N.Y. Gen. Bus. Law § 349; *Axiom Inc. Advisors, LLC by & through Gildor Mgmt., LLC v. Deutsche Bank AG*, 234 F. Supp. 3d 526, 537 (S.D.N.Y. 2017). Since the conflict of law analysis applicable to MetTel's DTPA claim follows the "most significant relationship" test discussed above, Delaware law governs this claim.

19

**2.    The Complaint pleads a valid claim for violations of the Delaware DTPA.**

The DTPA provides, in relevant part:

> (a) A person engages in a deceptive trade practice when, in the course of a business, vocation, or occupation, that person:
>
> * * *
>
> (8) Disparages the goods, services, or business of another by false or misleading representation of fact;
>
> * * *
>
> (12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

6 *Del. C.* § 2532(a).

Granite and MetTel are in commercial competition in the market for telecommunications solutions.  As part of an ongoing campaign to influence MetTel's clients to purchase Granite's services, Granite has disparaged MetTel through false and misleading statements to MetTel's existing clients, and upon information and belief, to its prospective clients, regarding ███████████

███████   Granite's false and misleading statements have violated 6 *Del. C.* §§ 2532(a)(8) and (a)(12) by misrepresenting and disparaging MetTel's business operations.

Granite's false and misleading statements have deceived and have the tendency to deceive MetTel's clients and prospective clients and the public in general regarding the characteristics and qualities of MetTel's services and commercial activities.  These statements are material because they are likely to

influence the decisions of potential purchasers of MetTel's services, and have the tendency to deceive potential purchasers and the public in general regarding the critical issue ███████████████████████████████████████████

███████████████████████ Granite's actions have been intentionally and deliberately undertaken for the purpose of causing confusion, mistake and deception, and for the purpose of enabling Granite to profit unfairly at the expense of MetTel. As a direct and proximate result, MetTel has suffered, and will continue to suffer, harm.

Granite incorrectly asserts: "[T]he [DTPA] is not available to litigants who cannot show any evidence of wrongful conduct or injury taking place in Delaware." Opening Br. at 20-21 (quoting *Ninespots, Inc. v. Jupai Holdings, Ltd.*, 2018 WL 3626325, at *13 (D. Del. July 30, 2018)). This is an inaccurate statement of Delaware law. The *Ninespots* court cited solely to a District of New Mexico case as support because "there is a lack of Delaware case law regarding this specific issue." *Ninespots,* 2018 WL 3626325, at *13. Moreover, this was pure dicta; the court did not actually address the issue, nor confirm that New Mexico law is consistent with existing Delaware law on this point. *Id.*

Granite's other arguments—that the DTPA does not apply because this case involves only three unconnected statements, and because MetTel's common law tort claims are not colorable (Opening Br. at 21)—have been addressed above.

21

## V.     CONCLUSION

MetTel has adequately pled valid claims for defamation, tortious interference, trade libel, and violations of the DTPA.  MetTel must not be denied the ability to prosecute these claims against Granite.  For these reasons, Granite's Motion to Dismiss must be denied.

Dated:  July 29, 2020                        **K&L GATES LLP**

_/s/ Steven L. Caponi_
Steven L. Caponi (No. 3484)
Matthew B. Goeller (No. 6283)
600 N. King St., Suite 901
Wilmington, DE 19801
Tel: (302) 416-7000
steven.caponi@klgates.com
matthew.goeller@klgates.com

_Attorneys for Plaintiff_