IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MANHATTAN TELECOMMUNICATIONS CORP. D/B/A METROPOLITAN TELECOMMUNICATIONS, A/K/A METTEL<br><br>Plaintiff,<br><br>v.<br><br>GRANITE TELECOMMUNICATIONS, LLC<br><br>Defendant. | Civil Action No. 20-0857-CFC |

Steven L. Caponi, Matthew B. Goeller, K&L GATES LLP, Wilmington, Delaware; Dana B. Parker, Charles F. Rysavy, K&L GATES LLP, Newark, New Jersey

  *Counsel for Plaintiff*

Rudolph J. Scaggs, Jr., Zi-Xiang Shen, A. Gage Whirley, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; T. Christopher Donnelly, Joshua N. Ruby, DONNELLY, CONROY & GELHAAR, LLP, Boston, Massachusetts

  *Counsel for Defendant*

**MEMORANDUM OPINION**

November 13, 2020
Wilmington, Delaware

_____
COLM F. CONNOLLY
UNITED STATES DISTRICT JUDGE

Plaintiff Manhattan Telecommunications Corp. (MetTel) has moved pursuant to 28 U.S.C. § 1447(c) to remand this case to the Delaware Court of Chancery, from which it was removed by Defendant Granite Telecommunications, LLC on June 26, 2020. D.I. 2. MetTel alleges in the Complaint it filed in the Court of Chancery claims for defamation (Count One), tortious interference with prospective economic advantage and contractual relations (Counts Two and Three), trade libel (Count Four), and violation of the Delaware Deceptive Trade Practices Act (DTPA) (Count Five). D.I. 3, Ex. 2A ¶¶ 38–71. MetTel asks as an alternative to remand expedited jurisdictional discovery. D.I. 13 at 1.

Granite cited this Court's original diversity jurisdiction under § 1332(a) as the basis for removal of the Chancery Court action. MetTel argues that remand is mandated because it "expressly limited the value of the claimed damages and injunctive relief in the Complaint so as not to exceed the $75,000 amount[-]in[-]controversy requirement" of § 1332(a) and Granite has failed to provide competent evidence to prove to a legal certainty that the amount in controversy exceeds $75,000. D.I. 13 at 1.

Because Granite has established by a preponderance of the evidence that the amount in controversy is above $75,000, I will deny MetTel's request to remand

the action to the Court of Chancery. I will also deny its request for jurisdictional discovery.

I.

MetTel and Granite are competing commercial telecommunication service providers. MetTel is a Delaware corporation headquartered in New York City. Granite is a Delaware limited liability company with its principal place of business in Quincy, Massachusetts.

According to MetTel's Complaint, Granite has undertaken a campaign to damage MetTel's business by giving MetTel's clients and potential clients false information about MetTel. (The substance of the alleged false statements is currently sealed from public view.) MetTel alleges in the Complaint that its "reputation and goodwill in the [telecommunications] industry ha[ve] already been harmed" by Granite's campaign. D.I. 3, Ex. 2A ¶ 36. It also alleges that "[it] has hard evidence of only three customers" to whom Granite made "false, misleading, and defamatory statements about MetTel." D.I. 3, Ex. 2A ¶ 30. According to MetTel, "none of these three customers has (yet) cancelled its contract with MetTel," D.I. 13 at 2, but it alleges in the Complaint that it "has a reasonable basis to believe that Granite's efforts have extended, or will extend, beyond these customers," D.I. 3 ¶ 30. MetTel alleges specifically that "[o]ne of [its] clients had not returned MetTel's calls and has rejected efforts to set up a meeting with

2

MetTel since being contacted by Granite" and that MetTel "most likely lost th[is] client's future business due to Granite's campaign of misinformation." D.I. 3, Ex. 2A ¶ 28. MetTel further alleges that "[u]pon information and belief, one or more clients were prepared to enter into a business relationship with MetTel, but [those potential clients] were persuaded not to do by Granite's dissemination of false information." D.I. 3, Ex. 2A ¶ 45.

MetTel seeks by its Complaint both damages and a permanent injunction enjoining Granite from making false statements about MetTel. D.I. 3, Ex. 2A at Request for Relief ¶¶ A, G. In support of its request for an injunction, MetTel alleges that "there is a real risk that MetTel will be asked to bid on fewer and fewer contracts going forward as Granite's lies circulate throughout the marketplace." D.I. 3, Ex. 2A ¶ 32, and that "[w]ithout [the Chancery] Court's prompt intervention, there is a high probability that Granite's malicious campaign will succeed, and MetTel's business and its reputation will be irreparably damaged." D.I. 3, Ex. 2A ¶ 5; *see also* D.I. 3, Ex. 2A ¶ 35 (alleging that "irreparable harm to MetTel's reputation and business will continue if Granite is not brought to task and ordered to terminate its campaign against MetTel immediately."). MetTel claims to have "spent more than twenty years building a reputation for reliability among its clients and in the marketplace." D.I. 3, Ex. 2A ¶ 12. And it alleges that "[b]ecause it is so difficult to quantify the harm suffered by companies who are the

3

target of an insidious rumor campaign, the need for injunctive relief is heightened and is often the only viable form of justice." D.I. 3, Ex. 2A ¶ 34.

With respect to monetary relief, MetTel alleges that it seeks "damages to compensate [it] not to exceed $75,000." D.I. 3, Ex. 2A at Relief for Relief ¶ G. In paragraph 37 of the Complaint, MetTel alleges that, "[b]ased on information currently available to MetTel, the combined value of the monetary and reputational harm it has suffered in connection with the Counts One through Five . . . does not exceed $75,000." D.I. 3, Ex. 2A ¶ 37. MetTel openly admits that it added paragraph 37 to its Complaint and capped its demand for compensatory damages at $75,000 in order "to assure that the amount in controversy in this dispute falls below the monetary threshold for federal diversity jurisdiction." D.I. 13 at 5.

MeTel had good reason to believe that Granite would try to remove the Chancery Court action to this Court. MetTel had filed a previous complaint in the Court of Chancery that largely mirrors and alleges the same claims in the instant Complaint. The earlier complaint, however, did not specify or cap the amount of alleged damages. D.I. 3, Ex. B1, *Manhattan Telecomms. Corp. v. Granite Telecomms., LLC*, No. 20-0775 (D. Del. 2019). After Granite removed the earlier case to this Court in June 2020, D.I. 2, *Id.* (No. 20-0775), MetTel voluntarily

4

dismissed the case, D.I. 8, *Id.* (No. 20-0775). That same day, it filed in the Court of Chancery the Complaint now at issue.[1]

## II.

"[A] defendant seeking to remove a case to federal court must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal'" pursuant to 28 U.S.C. § 1446(a). *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 83 (2014) (quoting 28 U.S.C. § 1446(a)). Granite states in its removal notice that this Court has original diversity jurisdiction over this case under § 1332(a) and removal jurisdiction under § 1441 and § 1446 because the parties to the action are diverse and the amount in controversy exceeds $75,000. D.I. 2 ¶¶ 6, 8–9, MetTel concedes that diversity of citizenship exists here. D.I. 13 at 1.[2] But it argues that the Court lacks jurisdiction

---

[1] MetTel could not have avoided federal jurisdiction in the earlier case by amending the earlier complaint or otherwise trying to limit after removal the amount of damages it sought. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 291 (1938) (holding that attempts by a "plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, [to] reduce[ ]the claim below the requisite amount . . . does not deprive the district court of jurisdiction.").

[2] The parties are in fact "completely diverse," as required by § 1332(a). *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) ("Complete diversity requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant."). As a Delaware corporation with a primary place of business in New York City, MetTel is treated as being a citizen of both Delaware and New York City for the purposes of diversity jurisdiction. § 1332(c)(1). Granite is a limited liability corporation and is therefore treated as a citizen of each state where its members are citizens.

5

because the Complaint expressly limited the value of its claimed damages and injunctive relief to no more than $75,000 and Granite has failed to prove to a legal certainty that the amount-in-controversy exceeds $75,000. I address these arguments in turn.

A.

The amount in controversy is determined from the complaint. *Horton v. Liberty Mutual Ins. Co.*, 367 U.S. 348, 351 (1961). As the master of its complaint, a plaintiff can limit its claims to avoid subject matter jurisdiction. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938); *see also Morgan v. Gay*, 471 F.3d 469, 474 (3d Cir. 2006) ("[A]s master of the case, the plaintiff may limit his claims (either substantive or financial) to keep the amount in controversy below the threshold."). MetTel says that its Complaint expressly limited the amount in controversy to $75,000. But the Complaint itself tells a different story.

It is true that MetTel alleges in paragraph 37 of the Complaint that "the combined value of the monetary and reputational harm it has suffered . . . does not exceed $75,000" and that it asks in the "Request for Relief" section of the Complaint for a judgment "[a]warding damages to compensate MetTel not to exceed $75,000." D.I. 3, Ex. 2A ¶ 37, Request for Relief ¶ G. But MetTel did not

---

*Zambelli*, 592 F.3d at 418 ("[T]he citizenship of an LLC is determined by the citizenship of each of its members."). The members of Granite are citizens of Florida, Massachusetts, and New Hampshire. D.I. 2 at ¶ 18; D.I. 2, Ex. 4.

6

limit the relief it seeks to compensatory damages. It requests in the Complaint that the judgment also include a "finding that Granite violated [the DTPA]" and "other and further relief as [the Chancery] Court deems just and proper." D.I. 3, Ex. 2A at Request for Relief ¶¶ F, I. The DTPA allows for an award of reasonable attorney's fees in exceptional cases, 6 Del. C. § 2533(b), and for an award of "treble the amount of actual damages proved," § 2533(c). MetTel did not put a monetary value on, let alone limit, potential attorney fees or the treble damages award available under § 2533. Those fees and the treble damages award, however, count towards the amount in controversy. *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997).

MetTel argues in its reply brief filed in support of its motion that "it was not [its] intent that its request for damages 'not to exceed $75,000' be thereafter trebled, and there is nothing in the Complaint indicating a different meaning." D.I. 44 at 2–3. The language of the Complaint, however, does "indicat[e] a different meaning," and it is the Complaint, not MetTel's representations in its briefing, that controls. *Cf. Red Cab*, 303 U.S. at 291 (1938) ("[T]he status of the case as disclosed by the plaintiff's complaint is controlling in the case of a removal . . . . And though . . . the plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction."). MetTel alleges in paragraph

7

37 that the value of "the monetary and reputational *harm*" it suffered does not exceed $75,000; and it asks for a judgment that awards it "damages *to compensate* [it] not to exceed $75,000. D.I. 3, Ex. 2A ¶ 37, request for Relief ¶ G (emphasis added). But, it also expressly asks for "other and further relief." D.I. 3, Ex. 2A at Request for Relief ¶ I. Damages for compensation of harm suffered by a plaintiff are actual damages. *See Actual damages*, *Blacks' Law Dictionary* (11th ed. 2019) ("An amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses. — Also termed compensatory damages; tangible damages; real damages."). They are distinct from the award available to a plaintiff under § 2533(c) of the DTPA for "treble the amount of actual damages proved." Actual damages are also distinct from attorney's fees, available under § 2533(b) of the DTPA. Because MetTel seeks relief under the DTPA and did not plead that it would forgo a recovery of treble damages or potential attorney fees, MetTel's Complaint did not limit the amount in controversy to $75,000.

B.

The question remains whether the amount in controversy exceeds $75,000. I consider first the evidentiary standard that governs that determination and then apply that standard.

1.

The parties agree that "the party asserting federal jurisdiction in a removal

8

case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007). D.I. 13 at 6; D.I. 33 at 20. The parties dispute, however, what that burden is. MetTel argues that the burden is proof by a legal certainty. Granite argues it is proof by a preponderance of the evidence.

The Third Circuit recognized in *Frederico* that "the quantum of proof to be used in ascertaining the requisite amount in removal cases sounding in diversity has caused some disagreement among the district courts of this circuit." 507 F.3d at 193. That disagreement traces its roots to perceived inconsistencies between two Supreme Court cases: *Red Cab,* 303 U.S. 283, and *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178 (1936). *See Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 397 (3d Cir. 2004) (noting that "courts have found inconsistencies between *Red Cab* and *McNutt*"). In *Red Cab*, the Supreme Court held that the test for determining whether a removed case sounding in diversity should be remanded for failure to satisfy the amount-in-controversy requirement is whether "from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount." 303 U.S. at 289. In *McNutt*, the Court held that when removal jurisdiction is challenged based on the amount-in-controversy, "the party alleging

9

jurisdiction [must] justify his allegations by a preponderance of the evidence." *McNutt*, 298 U.S. at 189.

Congress put to rest the quantum of proof question when it enacted 28 U.S.C. §1446(c)(2) as part of the Federal Courts Jurisdiction and Venue Clarification Act of 2011. Section 1446(c)(2) provides in relevant part:

> [i]f removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that—
>
> (A) the notice of removal may assert the amount in controversy if the initial pleading seeks—
>    (i) nonmonetary relief; or
>    (ii) A money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded;
>
> and
>
> (B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

28 U.S.C. § 1446(c)(2). Thus, under § 1446(c)(2), two evidentiary standards govern the determination of the amount-in-controversy. If the complaint demands relief solely in the form of a specific sum and the case was removed from a state court that permits such a demand and does not allow for a recovery greater than the

10

sum demanded, then the demanded sum in the complaint constitutes the amount in controversy unless the removing defendant shows the demand was made in bad faith. To make that showing, the defendant must establish "to a legal certainty that the claim is really for less than the jurisdictional amount." *Horton*, 367 U.S. at 353. *See also Morgan*, 471 F.3d at 474 ("Good faith in this context is entwined with the "legal certainty" test, so that a defendant will be able to remove the case to federal court by "show[ing] to a legal certainty that the amount in controversy exceeds the statutory minimum[.]" (quoting *Samuel–Bassett*, 357 F.3d at 398) (alterations in original)).

But under § 1446(c)(2)(B), if the complaint meets either of the two conditions set forth in § 1446(c)(2)(A)—that is, either (1) its seeks nonmonetary relief or (2) it was filed in a state court that does not allow for a demand of a specific sum or allows for a recovery in excess of a demanded sum—then a dispute over the amount in controversy is resolved using a preponderance-of-the-evidence standard. The Supreme Court confirmed in *Dart* that § 1446(c)(2)(B) jettisoned the "legal certainty" test for these circumstances. In the Court's words: § 1446(c)(2)(B) "clarifies the procedure in order when a defendant's assertion of the amount in controversy is challenged. In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." 574 U.S. at 88. Thus, when either of

11

the two conditions identified in § 1446(c)(2)(A) are present, "defendants *do not need to prove to a legal certainty* that the amount in controversy requirement has been met." *Id.* at 88–89. (citation and quotation marks omitted) (emphasis added).[3]

In this case, both conditions of § 1446(c)(2)(A) are met. MetTel is seeking nonmonetary relief and the practice of the Court of Chancery permits recovery of damages in excess of the amount demanded in the Complaint. *See* Del. Ch. Ct. R. 54(c) ("[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings."); *see also* Wright & Miller, 10 *Federal Practice & Procedure.* § 2664 (4th ed.) ("The courts may award damages in excess of those the claimant asked for in the pleadings[.]") (discussing Fed. R. Civ. P. 54(c)). Accordingly, the parties' dispute over the amount in controversy in this case must be decided using the preponderance-of-the-evidence standard.

2.

MetTel seeks both monetary and nonmonetary relief. It seeks monetary

---

[3] MetTel cited six cases it says required application of the "legal certainty" standard. D.I. 13 at 10–12 (citing *Morgan,* 471 F.3d at 474; *Frederico,* 507 F.3d at 96–197; *Judon v. Travelers Prop. Cas. Co. of Am.,* 773 F.3d 495, 504 n.8 (3d Cir. 2014); *McNutt,* 298 U.S. at 189); D.I. 44 at 1–4 (citing the same and *In re Corestates Tr. Fee Litig.,* 39 F.3d 61, 66 (3d Cir. 1994); *Healthcare Servs. Grp., Inc. v. Fay,* 597 F. App'x. 102, 103 (3d Cir. 2015)). Except for *Healthcare Services,* all these cases were decided before *Dart. Healthcare Services* did not involve removal to federal court and therefore is inapposite. 597 F. App'x. at 103.

12

relief to compensate it for the loss of at least one contract and the harms to its reputation and goodwill suffered to date. D.I. 3, Ex. 2A ¶¶ 36, 37, 45. It seeks an injunction to prevent continued harms to its reputation and goodwill and loss of future business opportunities (i.e., contracts) with existing and new clients. D.I. 3, Ex. 2A ¶¶ 5, 32, 42. Where the plaintiff in a diversity action seeks injunctive relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977). In this case the object of the injunction sought by MetTel is to prevent it from losing contracts and to preserve its reputation and goodwill. *See Ambassador E., Inc. v. Orsatti, Inc.*, 257 F.2d 79, 82 (3d Cir. 1958) (looking at value of plaintiff's reputation and goodwill to ascertain amount in controversy where injunction sought based on unfair competition). Thus, in determining the amount in controversy here, I consider the Complaint's allegations and the parties' competing evidence to assess the value of the contract and the reputational and goodwill harms MetTel alleges it has lost to date, as well as the value of the contracts MetTel alleges it will lose and the reputation and goodwill harms it alleges it will suffer in the absence of the injunction it seeks.

The evidentiary record consists of data from the website of the General Services Administration (GSA) and an affidavit submitted by Granite. The GSA data shows that the combined value of two contracts MetTel recently won exceeds

$380 million. D.I. 34 ¶ 7. The affidavit establishes that MetTel "successfully competes with Granite for long-term contracts worth hundreds of thousands—or millions—of dollars." D.I. 34 ¶ 6; *see also* D.I. 34 ¶¶ 7–22. The affiant avers more particularly that between 2015 and 2019 three clients of Granite switched to MetTel for time-division multiplexing (TDM) voice telephone lines. D.I. 34 ¶¶ 12, 14, 18. Based on the usual price Granite charges customers for TDM lines, the affiant estimates that MetTel gained a yearly revenue stream of more than $2 million from its contracts with these three clients. D.I. 34 ¶¶ 9-19.

MetTel does not challenge the accuracy of the GSA data or the averments in the affidavit. The magnitude of the two contracts with GSA and the three contracts with Granite's former clients and the unrebutted affidavit establish that it is more likely than not that the value of the contract and the reputation and goodwill harms MetTel claims to have lost to date exceeds $75,000. They also establish by a preponderance of the evidence that the value of the reputation and goodwill MetTel seeks to preserve by an injunction and the value of the contracts MetTel risks losing absent an injunction well exceed $75,000.

MetTel argues that the affidavit "is not competent evidence" and it criticizes Granite's revenue estimates for MetTel's contracts for being "back-of-the envelope." D.I. 44 at 6. But I am permitted to consider affidavits offered by the defendant in support of removal. *See Dart*, 574 U.S. at 88 (noting that a court may

14

resolve a jurisdictional dispute on the offered proof); *Metcalfe v. Renaissance Marine, Inc.*, 556 F.3d 324, 331 (3d Cir. 2009) (endorsing the use of affidavits to resolve jurisdictional disputes). And the fact that Granite's estimates were derived from simple, "back-of-the-envelope" calculations does not make them unreliable. MetTel does not challenge the assumptions underlying the calculations, and those assumptions make sense. It is reasonable to use the average value of a commercial telecommunications contract, the value of MetTel's GSA contracts, and the usual price for TDM lines charged by Granite as appropriate measures by which to estimate the value of MetTel's contracts that have been lost or could be lost without the injunction sought by MetTel. It is likewise reasonable to infer that a company that has numerous contracts worth hundreds of thousands and millions of dollars has a reputation and goodwill that collectively exceed $75,000 in value.

MetTel insists that "[u]nless and until Granite presents proof that its campaign extended beyond [the] three customers [referenced in the Complaint] and continues, MetTel's allegations of actual but limited monetary and reputational harm—based on the facts currently known to it—stand unrefuted." D.I. 44 at 7. But MetTel itself alleges that Granite's campaign extends beyond these three existing customers. It specifically alleges that it lost a contract with "one or more [potential] clients [that] were prepared to enter into a business relationship with

15

MetTel, but were persuaded not to do so by Granite's dissemination of false information." D.I. 3, Ex. 2A ¶ 45.

Finally, MetTel faults Granite for "taking inconsistent positions on the asserted value of MetTel's claims." D.I. 44 at 8. MetTel notes in this regard that Granite told the Court of Chancery before removal in a hearing on MetTel's motion for a temporary restraining order that "[t]here isn't any allegation in the complaint that MetTel has lost or will lose a single dollar as a result of anything that Granite allegedly did." D.I. 44 at 9 (citation and quotation marks omitted). But MetTel does not explain the legal ramifications that flow from Granite having taken an inconsistent position before the Court of Chancery. It does not argue, for example, that Granite is judicially estopped from now asserting that the amount in controversy exceeds $75,000. Of course, one can envision a day in this case when MetTel itself takes an inconsistent position and argues that its damages are much greater than $75,000. So, MetTel's silence about the legal ramifications of Granite's arguments before the Chancery Court is understandable. In any event, I chalk up whatever inconsistencies there are in Granite's legal arguments before this Court and the Court of Chancery to the "bizarre situation[]" created by placing the burden on the defendant to prove that "the amount in controversy exceeds the statutory minimum." *Samuel-Bassett*, 357 F.3d at 398 (3d Cir. 2004). To borrow the words of the Court in *Samuel-Bassett*, "[i]t would not be a surprise that when

16

the time c[omes] for assessment of damages the parties w[ill] once again switch their views by some 180 degrees." *Id.*

In sum, the GSA data and unrebutted affidavit submitted by Granite establish by a preponderance of the evidence that the value of MetTel's requested relief far exceeds $75,000. Accordingly, I will deny MetTel's request for a remand of the action to the Court of Chancery.

### III.

MetTel asks in the alternative for expedited jurisdictional discovery to resolve any questions about the amount in controversy. D.I. 12 at 1; D.I. 13 at 14–15. Further discovery, however, is not necessary. Granite's unrebutted evidentiary submission established by a preponderance of the evidence that the amount in controversy exceeds $75,000. MetTel ignored at its peril the procedure expressly adopted by the Supreme Court in *Dart* to resolve disputes over the amount in controversy in removal cases that present, as this case does, either of the two conditions identified in § 1446(c)(2)(A). "In such a case, *both* sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart*, 574 U.S. at 88 (emphasis added). MetTel has not demonstrated that it had good cause to forgo the submission of competing evidence; nor has it demonstrated a likelihood that expedited discovery would establish that the amount in controversy is no more

17

than $75,000. Accordingly, I will deny MetTel's request for expedited jurisdictional discovery.

## IV.

For the foregoing reasons, I will deny MetTel's motion to remand. The Court will issue an order consistent with this Memorandum Opinion.